**Blackhawk Network, Inc.**
**v.**
**SL Card Company Inc., et al.**

**CV -21-00813-PHX-MTL**


**DEFENDANTS' SL CARD COMPANY INC., LINQ3 TECHNOLOGIES LLC, AND L3
INNOVATIONS LLC MOTION TO DISMISS SECOND AMENDED COMPLAINT
UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1), 12(b)(2), AND 12(b)(6)**

**INDEX TO EXHIBITS**

**Exhibit A – Declaration of John F. Houseal**

**Exhibit B – Declaration of Robin L. McGrath**

2089205

# EXHIBIT A

David B. Rosenbaum, 009819
Eric M. Fraser, 027241
William D. Furnish, 028725
OSBORN MALEDON, P.A.
2929 North Central Ave., Suite 2100
Phoenix, Arizona 85012-2793
(602) 640-9000
drosenbaum@omlaw.com
efraser@omlaw.com
wfurnish@omlaw.com

Robin L. McGrath *(pro hac vice)*
DUANE MORRIS LLP
1075 Peachtree Street NE, Suite 1700
Atlanta, Georgia 30309-3929
(404) 253-6900
rlmcgrath@duanemorris.com

Jarrad M. Gunther *(pro hac vice)*
Kendra C. Oxholm *(pro hac vice)*
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, Pennsylvania 19103-4196
(215) 979-1000
jmgunther@duanemorris.com
kcoxholm@duanemorris.com

Gregory S. Bombard *(pro hac vice)*
DUANE MORRIS LLP
100 High Street, Suite 2400
Boston, Massachusetts 02110-1724
(857) 488-4200
gbombard@duanemorris.com

Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

Blackhawk Network, Inc. an Arizona corporation,

Plaintiff,

vs.

SL Card Company Inc., an Arizona corporation; L3 Innovations LLC f/k/a Linq3 Technologies, LLC, a Delaware corporation; Linq3 Technologies, LLC, a Florida corporation; Interactive Communications International, Inc., a Florida corporation; and e2Interactive, Inc., a Georgia corporation,

Defendants.

No. CV-21-00813-PHX-MTL

**DECLARATION OF JOHN F. HOUSEAL IN SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS SECOND AMENDED COMPLAINT UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1), 12(b)(2) AND 12(b)(6)**

I, John F. Houseal, declare:

1.      I am currently Vice President of Product Development at Interactive Communications International, Inc. ("ICI").  I have personal knowledge of the facts set forth in this declaration and if called to testify, I could and would testify competently thereto.

2.      ICI is a Florida corporation that is a wholly-owned subsidiary of HI Technology Corp, a Georgia corporation ("HITC"). HITC was formerly known as InComm Holdings, Inc.

3.      e2Interactive, Inc. ("e2") is a Georgia corporation and is also a wholly owned subsidiary of HITC.

4.      HITC, ICI, and e2 are all headquartered in Atlanta, Georgia.

5.      The HITC umbrella includes dozens of entities, both direct and indirect subsidiaries, that are generally referred to by the trade name "InComm" (the "InComm Family"). The use of the "InComm" trade name does not refer specifically to ICI, e2, or any one particular subsidiary of HITC.

6.      ICI is a leading provider of prepaid and stored-value products and payment system solutions in the U.S.

7.      ICI's products, which include gift cards, financial services cards, and other pre-paid and stored value cards, are sold through ICI's retail partners at locations in every U.S. state.

8.      ICI is registered to do business in and has registered agents in all 50 states.

9.      ICI's product sales in Arizona are less than 2% of ICI's total revenues.

10.     e2 was formed to hold the intellectual property used by the InComm Family of entities.

11.     L3 is a Delaware entity headquartered in Atlanta, Georgia.

12.     Before March 2019, L3 operated under the name Linq3 Technologies LLC and was engaged in the business of managing lottery programs and services, and

1

1  developing, designing, and building gameplay lottery solutions.  At that time, I was
2  Chief Product Officer at L3.

3          13.     Prior to March 2019, L3 owned all outstanding shares of stock of
4  Defendant SL Card Company, Inc. ("SL Card"), an Arizona corporation.  At that time,
5  L3 had (and has) no relationship with the InComm Family.

6          14.     In February of 2019, Linq3 was formed in Florida under the name Linq3
7  Acquisition LLC for the purpose of acquiring certain assets of Defendant L3.  Linq3
8  was and remains a direct subsidiary of PRE Solutions, Inc. ("PRE"), a Florida company
9  headquartered in Atlanta and an indirect subsidiary of HITC.

10         15.     On March 1, 2019, Linq3 acquired certain assets of L3, including (i) L3's
11  patents and patent applications; and (ii) L3's ownership interest in Defendant SL Card.
12  Linq3 did not acquire any employees from L3.

13         16.     After the acquisition, L3 changed its name from Linq3 Technologies LLC
14  to L3 Innovations LLC, and shortly thereafter, L3 ceased its business operations.

15         17.     After the acquisition, ICI hired certain former L3 employees, including
16  myself.

17         18.     Also after the acquisition, Linq3 Acquisition LLC changed its name to
18  Linq3 Technologies LLC and assigned the patent applications it acquired from L3 to e2.

19         19.     ICI was not a party to the transaction between Linq3 and L3, and ICI did
20  not acquire any of L3's assets. ICI was also not a party to the transfer of intellectual
21  property from Linq3 to e2.

22         20.     ICI owns no equity in Linq3, and Linq3 owns no equity in ICI.

23         21.     On January 1, 2017, SL Card and L3 entered into a Product Distribution
24  Agreement ("PDA") with Blackhawk Network, Inc. ("Blackhawk") to distribute the
25  lottery products of L3 and SL Card to Blackhawk's U.S. retailers.

26         22.     L3 and SL Card negotiated the PDA with Blackhawk from Atlanta,
27  Georgia. The PDA was neither signed nor performed in Arizona. In fact, at no time did

28

1    L3 or SL Card travel to Arizona or deal with any Blackhawk employees located in

2    Arizona in connection with its performance under the PDA.

3         23.    The principal focus of the PDA was an L3-developed lottery product

4    called "Play Now," which the PDA described as a "consumer solution" for "ticketless

5    lottery transactions."

6         24.    The PDA specified that the parties "may be requested to modify" the Play

7    Now product "in order to obtain the Required Lottery Approvals."

8         25.    One such "request to modify" came from the Texas Lottery Commission

9    because it did not permit lottery play on mobile devices.

10        26.    L3 modified the product to use ticket stock paper that included security

11   features that L3 developed, and lottery numbers concealed behind a scratch-off coating.

12        27.    In June 2018, L3 filed a U.S. trademark application for QUICKTICKET,

13   which was registered on February 18, 2020.  L3 worked with counsel in Texas from its

14   headquarters in Atlanta, Georgia to prepare the trademark application.

15        28.    In June 2018, L3 filed U.S. Patent Application No. 16/010,398 (the "398

16   App"), which issued on March 12, 2019 as U.S. Patent No. 10,229,561 (the "561

17   Patent").

18        29.    In August 2018, L3 filed U.S. App. No. 29/660,720 (the "720 App") as a

19   continuation of the 561 Patent.  The 720 App issued as design patent No. D877,812 (the

20   "812 Patent") on March 10, 2020.

21        30.    L3 worked with counsel in Texas from its headquarters in Atlanta,

22   Georgia to prepare the 398 App and the 720 App.  The issued patents were assigned to

23   e2 in Georgia.

24

25

26

27

28

1    I declare under penalty of perjury that the foregoing is true and correct to the best
2  of my knowledge.
3    Executed this 18th day of August, 2021.

4                                               /s/ John F. Houseal
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT B

David B. Rosenbaum, 009819
Eric M. Fraser, 027241
William D. Furnish, 028725
OSBORN MALEDON, P.A.
2929 North Central Ave., Suite 2100
Phoenix, Arizona  85012-2793
(602) 640-9000
drosenbaum@omlaw.com
efraser@omlaw.com
wfurnish@omlaw.com

Robin L. McGrath *(pro hac vice forthcoming)*
DUANE MORRIS LLP
1075 Peachtree Street NE, Suite 1700
Atlanta, Georgia  30309-3929
(404) 253-6900
rlmcgrath@duanemorris.com

Jarrad M. Gunther *(pro hac vice forthcoming)*
Kendra C. Oxholm *(pro hac vice forthcoming)*
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, Pennsylvania  19103-4196
(215) 979-1000
jmgunther@duanemorris.com
kcoxholm@duanemorris.com

Gregory S. Bombard *(pro hac vice forthcoming)*
DUANE MORRIS LLP
100 High Street, Suite 2400
Boston, Massachusetts  02110-1724
(857) 488-4200
gbombard@duanemorris.com

Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Blackhawk Network, Inc. an Arizona corporation,

      Plaintiff,

vs.

SL Card Company Inc., an Arizona corporation; L3 Innovations LLC f/k/a Linq3 Technologies, LLC, a Delaware corporation; Linq3 Technologies, LLC, a Florida corporation; Interactive Communications International, Inc., a Florida corporation; and e2Interactive, Inc., a Georgia corporation,

      Defendants.

No. CV-21-00813-PHX-MTL

**DECLARATION OF ROBIN L. MCGRATH IN SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS SECOND AMENDED COMPLAINT UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1), 12(b)(2) AND 12(b)6)**

I, Robin L. McGrath, declare:

1. I am a partner with the law firm Duane Morris, LLC. I have personal knowledge of the facts set forth in this declaration and if called to testify, I could and would testify competently thereto.

2. Attached hereto as Exhibit 1 is a true and correct copy of Canadian Patent No. 2,855,434, referenced in ¶ 65 of Plaintiff's Second Amended Complaint ("SAC").

3. Attached hereto as Exhibit 2 is a true and correct copy of U.S. Patent No. 9,865,135 (the "135 Patent"), referenced in ¶¶ 65-72, 84, 131, 165, 186, 187, 195, and 196 of the SAC.

4. Attached hereto as Exhibit 3 is a true and correct copy of U.S. Patent No. 10,769,894 (the "894 Patent"), referenced in ¶¶ 66-68, 70-74, 84, 161, 165, 182, and 186 of the SAC.

5. Attached hereto as Exhibit 4 is a true and correct copy of U.S. Patent No. 10,229,561 (the "561 Patent"), referenced in ¶¶ 52, 53, 118, 122, 123, 149, 150, 154, 156-159, 163, 165, 168, 169, 171, 173, 176, 179, and 180 of the SAC.

6. Attached hereto as Exhibit 5 is a true and correct copy of U.S. Patent No. D877,812 (the 812 Patent), referenced in ¶¶116, 117, 160, 175-178, 181, 184, 186, and 189-193 of the SAC.

7. Attached as Exhibit 6 is a true and correct copy of the assignment agreement between Gino Giunti and Blackhawk Network, Inc., in which Mr. Giunti assigned to Blackhawk U.S. Patent Application No. 14/679,028, which issued as the 135 Patent, U.S. Provisional Application No.. 62/104,844, and all patents that issue from or claim priority to such patent application and all continuations, continuations in part, divisionals, extensions, substitutions, reissues, reexaminations, foreign equivalents, and renewals of any of the foregoing, and any patents or patent applications from which any of them claim priority or that claim priority to any of them.

1

8.      Attached as Exhibit 7 is a true and correct copy of the Ontario Lottery & Gaming Corporation's ("Ontario Lottery") Canadian Trademark Registration for the trademark QUICKTICKET.

9.      Attached as Exhibit 8 is a true and correct copy of the Ontario Lottery Canadian Patent Application that issued as the 434 Patent.

Executed this 18th day of August, 2021.

/s/ Robin L. McGrath

# EXHIBIT 1

Innovation, Sciences et
Développement économique Canada

Office de la Propriété Intellectuelle du Canada

Innovation, Science and
Economic Development Canada

Canadian Intellectual Property Office

CA 2855434 C 2020/10/06

(11)(21) **2 855 434**

(12) **BREVET CANADIEN**
**CANADIAN PATENT**

(13) **C**

(22) Date de dépôt/Filing Date: 2014/07/03

(41) Mise à la disp. pub./Open to Public Insp.: 2016/01/03

(45) Date de délivrance/Issue Date: 2020/10/06

(51) Cl.Int./Int.Cl. *G07C 15/00* (2006.01),
*A63F 3/06* (2006.01), *B42D 25/27* (2014.01)

(72) Inventeur/Inventor:
GIUNTI, GINO, CA

(73) Propriétaire/Owner:
BLACKHAWK NETWORK (CANADA) LTD., CA

(74) Agent: DEETH WILLIAMS WALL LLP

(54) Titre : SYSTEMES DE BILLETS DE LOTERIE PREIMPRIMES ET METHODES
(54) Title: PRE-PRINTED LOTTERY TICKETS SYSTEMS AND METHODS





(57) Abrégé/Abstract:
Pre-printed lottery tickets allow a consumer to purchase a lottery ticket for a subsequently occurring draw. The pre-printed lottery ticket may be purchased as any other product and the point of sale terminal does not require specialized hardware such as a lottery ticket terminal.

50 rue Victoria    •    Place du Portage 1    •    Gatineau, (Québec)   K1A 0C9    •    www.opic.ic.gc.ca
50 Victoria Street   •   Place du Portage 1    •    Gatineau, Quebec   K1A 0C9    •    www.cipo.ic.gc.ca



## PRE-PRINTED LOTTERY TICKETS SYSTEMS AND METHODS

**TECHNICAL FIELD**

The current disclosure relates to lottery systems and in particular to the use of pre-printed lottery tickets in random draw lotteries.

5    **BACKGROUND**

Broadly there are two types of lotteries. The first is instant win lotteries where a printed ticket provides all of the lottery information. This tickets typically have a play area covered by scratch off material. The tickets can be purchased from a retailer, and the scratch off material removed to reveal whether the ticket is a winner. The second type

10   of lottery is a draw-based lottery, where a player makes a wager on a subsequently occurring event. For example, a player may guess at numbers that will be drawn. The selected numbers, or randomly selected numbers if the player does not have a preference for the numbers, are printed on a ticket and provided to the player. Once the event occurs, for example the numbers are drawn or generated, the ticket may be a

15   winner depending on if one or more of the selected numbers were drawn or generated.

Tickets for future draws are typically printed on special ticket paper by a printing device approved by the lottery administering body. The use of specialized hardware increases the cost for deploying purchasing locations. Further, the use of specialized hardware can complicate the purchase process. For example, a player at a grocery store may

20   need to make two purchases, one for their groceries and one for the lottery draw ticket.

It would be desirable to have an additional and/or alternative method of purchasing a lottery ticket for a draw.

**BRIEF DESCRIPTION OF THE DRAWINGS**

Embodiments are described herein with references to the appended drawings, in which:

25       Figure 1 depicts a pre-printed lottery ticket and purchase receipt;
         Figure 2 depicts components of a lottery system; and
         Figure 3 depicts a process for providing a ticket for a random draw;

1

Figure 4 depicts a further process for providing a ticket for a random draw; and

Figure 5 depicts additional or alternative pre-printed lottery tickets.

## DETAILED DESCRIPTION

Currently, online lottery products are purchased at a lottery terminal or similar hardware.
5    When an online lottery ticket, such as a ticket to a draw taking place at a later time, is
purchased, a ticket is generated and printed.  A system is described further herein that
provides the ability to include online lottery products that can be placed in a customer's
shopping cart and paid for during the normal checkout process without the use of
specialized hardware, such as lottery terminals, ticket printer or customized payment
10   devices, at the point of purchase.  Since no specialized hardware is required, it is
possible to purchase the online lottery products at any point of purchase. For example,
at a grocery store, the online lottery tickets may be purchased at each check-out lane
without requiring lottery terminals at each lane and as such, the incorporation of the
purchasing into multiple lanes may be cost effective. In addition to the ability to
15   purchase online lottery tickets at a point of sale without additional specialized lottery
terminals, the systems and methods allow the online lottery ticket to be displayed and
purchased as a regular in-store product providing additional opportunities for purchasing
an online lottery ticket.

The online lottery ticket is manufactured and distributed as pre-printed lottery tickets
20   that do not have a draw date or wager (i.e. lottery numbers) assigned or associated to
the pre-printed ticket.  The pre-printed tickets would each have a unique bar code that
identifies the particular pre-printed ticket and may also have a generic UPC bar code
that would identify the lottery product.  One bar code could contain both pieces of
information. The pre-printed tickets are provided to retailers and are displayed to the
25   consumer.

Until purchased and activated, the pre-printed tickets have no value, nor do they have
any wager or draw date assigned.  They cannot be used for validation or redemption
purposes prior to purchase.  Once scanned by the retailer's POS and paid for by the
customer,  the lottery system will generate wagers for the pre-printed ticket and assign

2

the next available draw date. This information is printed on the customers shopping receipt. Although the draw information is printed on the customer's receipt, it is only information and the pre-printed lottery ticket is the legal instrument for validation and prize redemption.

5    Secure communications between the retailers POS system and the lottery system facilitate the successful completion of the above transaction and activation of the pre-printed ticket. As well, there may be a series of acknowledgments between systems to ensure the generation of the draw information and association of the draw information with the pre-printed ticket is performed as well as to handle any technical or other

10   issues that may arise. Once activated, the pre-printed ticket may be subject to the same policies and procedures as standard online lottery tickets generated from specialized lottery terminals.

Since the wager and draw date information is not printed on the pre-printed ticket, these details may be made available through other means including but not limited to the

15   printed receipt, existing lottery terminals or self-serve ticket checkers, online websites or mobile applications.

A variation of the above is to produce pre-printed tickets with pre-printed wagers on the ticket. In such a case, when the pre-printed ticket is purchased the lottery system may simply assign the pre-printed ticket and associated wager information to the next draw

20   date only and activated.

Further, the pre-printed tickets may include different number of wagers. For example, a single pre-printed lottery ticket may be associated with purchasing 1, 2, 3 or more wagers. When the pre-printed tickets are associated with a plurality of wagers, each wager may be for the same or different online lottery games.

25   The ability to purchase an online lottery ticket at a point of sale check-out, as described herein, requires no additional hardware in lane and no special thermal or lottery paper or printer. The legal ticket, namely the pre-printed ticket, does not contain the draw date and is only associated with a draw when activated by purchasing. Given there is no

3

value to the pre-printed ticket before activation, they can be distributed in locations that provide the most visibility and convenience for the customer with limited risk that the pre-printed ticket will be stolen. The pre-printed ticket is treated like an off the shelf commodity when checking out and should not impede the speed at checkout. The

5 solution is extremely convenient for the customer with no additional interaction with the cashier required. Further, limited knowledge or expertise is required by the cashier and no additional point of sale hardware is required. The solution may be easily scalable and can provide a cost effective solution to enable all checkout locations in all retail locations to sell online lottery tickets. The Store POS terminal may need little or no

10 scrutiny by lottery regulators as it does not carry sensitive transaction information and is not involved in the generation of the lottery transaction, and instead simply provides information of the pre-printed lottery ticket to the lottery system for activation.

The pre-printed tickets may be manufactured and shipped to retail locations. Retailers may manage inventory and display the pre-printed tickets in, for example, checkout

15 lanes, at counters and throughout the store where the product is most visible to customers. Customers can select a lottery product at any time with no additional interaction with a lottery retailer and drop the pre-printed lottery ticket(s) into their shopping cart. During the checkout process, the pre-printed ticket is scanned by the cashier in the retailer's POS as they would scan any other product being purchased.

20 The pre-printed ticket may require one, possibly two scans dependent on the bar code standard used and the technical abilities of the retailer's POS system. Upon scanning of the ticket the retailer's POS will be updated with the product description and cost. The retailer's POS will communicate the transaction type, such as purchase or cancel, and the pre-printed ticket details, such as product information and/or a unique identifier, to

25 the lottery system though a secure communications channel.

Upon receiving information for activating a pre-printed ticket being purchased, the lottery system may initiate a pre-printed ticket wager by validating the pre-printed ticket details, generating the appropriate lottery wager information, for example generating an appropriate number of random numbers for the draw. The generated wager information

30 may then be associated with unique identifier of the pre-printed ticket and the pre-

4

printed ticket activated for the next available draw. Confirmation of the activation, as well as the lottery numbers and draw information, for example when the draw is being held, may be withheld from the retailer's POS until payment confirmation is received by the lottery system. The cashier continues to scan the customer's purchases until the

5   cart is empty. The cashier may then process payment as the normal course of action. Prior to the retailer's POS closing the sale and printing the receipt, the retailers POS system may communicate the payment confirmation and details to the lottery system. Once payment confirmation is received the lottery system may in turn communicate the lottery numbers and draw information to the retailers POS. This information may be

10  communicated in the form of an image. The lottery numbers and draw date assigned to the pre-printed lottery ticket may be printed on the customer's store receipt.   The printed receipt with the lottery information is for informational purposes only, and the pre-printed ticket would be required in order to redeem a winning ticket.

Rather than transmitting the pre-printed ticket information first, followed by confirmation

15  of payment, it is possible to transmit the pre-printed ticket information to the lottery system only once the payment has been confirmed.

During the checkout process, age verification, if required, is done by the cashier. Where self-serve check-out kiosks are available, the retailer's POS may suspend the terminal operation until the age of the customer can be verified by store personnel or

20  other means such as swiping of an identification card in co-operation with other biometric data. The transaction can then be approved or voided depending upon the determined age.

Purchased pre-printed tickets may be returned and cancelled, assuming the associated draw has not occurred. Tickets can be cancelled at two points in time, either during

25  checkout, and prior to payment or after the basket has been paid for. Prior to payment a customer may change their mind and wish to have the pre-printed ticket removed from their basket. The transaction may be voided in the retailer's POS terminal as with the purchase of other products. Additionally, if the pre-printed ticket information has already been communicated to the lottery system, another transaction may be performed

5

indicating that the purchase of the pre-printed ticket was cancelled. The lottery system will cancel the pre-printed ticket and wager and draw information. Confirmation of the cancellation may be sent back to the POS terminal. The customer's receipt may show the inclusion and return of the pre-printed ticket but no draw or wager information will be

5    shown on the receipt.

After the basket has been paid for and the pre-printed ticket has been activated, the customer may return and cancel the pre-printed ticket, for example at the retailer's customer service counter. Normal retailer return procedures may apply. The cashier may  scan the pre-printed ticket barcode(s) into the POS. The retailer's POS will

10   communicate the transaction type, i.e. cancellation, and pre-printed ticket details, such as product information and/or unique identifier, to the lottery system though a secure communications channel. The lottery system will locate the associated wager and cancel the transaction. The lottery system may send a confirmation to the retailer's POS along with the cancellation details, such as the pre-printed ticket identifier and/or

15   cancellation date / time. The cancellation details may be returned in the form of an image. Cancellation information may be printed at the bottom of the customers return receipt.

Figure 1 depicts a pre-printed lottery ticket and purchase receipt. A pre-printed ticket 100 may be placed at various locations in a retail environment. The pre-printed ticket

20   100 may have a main ticket portion 102 and a display portion 104 separably connected to the main ticket portion 102, for example by perforated or scored lines. The display portion 104 may include a hanging cut-out 106 in order to facilitate the display of the pre-printed ticket 100. The main ticket portion 102 includes advertising and purchase information, such as the cost of the pre-printed ticket 108 and the product the pre-

25   printed ticket is for 110. Additionally, the main ticket portion 102 may include barcode information 112, which may be in the form of one or more barcodes although only one is depicted. Although the specific physical characteristics of the pre-printed ticket are depicted in Figure 1, it will be appreciated that the pre-printed tickets may take many different physical shapes.

6

Figure 1 also depicts the receipt 114 provided to the customer after the transaction is completed.    The receipt is similar to commonly provided receipts and includes an itemized list of purchased items 116.  The list 116 includes an indication 118 of the purchase of the pre-printed ticket.  The receipt may also include draw and wager
5    information 120 provided by the lottery system when the pre-printed ticket was activated.  The draw and wager information 120, may include an indication of the draw date as well as the wager numbers.  The draw and wager information associated with a pre-printed ticket may be checked by a consumer by other means, such as through a lottery system mobile application or online site.

10    Figure 2 depicts components of a lottery system and point of sale environment.  As depicted, the environment 200 for purchasing a pre-printed lottery ticket includes a retailer's point of sale terminal 202 and a lottery system 220 connected to each other through one or more communication networks 218.  The communication between retail POS terminals and the lottery system may be secured using various encryption
15    techniques.

The retailer's POS terminal 202 may include a central processing unit (CPU) 204, memory unit 206 and I/O interface(s) 208 for communicating with devices external to the POS terminal.  As depicted, a barcode scanner 210 may be connected for scanning in barcode information, such as UPC information, and pre-printed ticket 100 information.
20    The retailer POS terminal may also be connected to a printer 212 for printing a receipt of the transaction. The POS terminal 202 includes instructions 214 stored in the memory unit, which when executed by the processor unit 204 configure the POS terminal 202 to provide pre-printed draw-based lottery ticketing functionality 216. The functionality 216 may provide the functionality for communicating scanned in barcode
25    information of pre-printed lottery tickets with the lottery system, and receiving confirmation of the pre-printed ticket's activation, as described above.

The lottery system 220 may include a central processing unit (CPU) 222, memory unit 226 and I/O interface(s) 224 for communicating with devices external to the lottery system 220.  Instructions 228 stored in the memory unit 226, when executed by the

7

processing unit 222 configure the lottery system to provide pre-printed draw-based lottery ticket activation and cancellation functionality 230. The functionality 230 may receive and verify pre-printed lottery ticket information from a plurality of different retailers. The verification of the pre-printed lottery ticket information may involve

5 checking that the received information corresponds to an actual ticket, verifying one or more check-digits, and/or verifying that the preprinted lottery ticket was distributed to the retailer. The pre-printed ticket information used in verifying the received information may be stored in a pre-printed ticket information database 232. The functionality 230 may also generate draw and wager information and associate the pre-printed ticket

10 information in a draw information database 234. The draw information database 234 may be used in verifying subsequent tickets, including the pre-printed lottery tickets, as winning tickets following the draw event.

Figure 3 depicts a process for providing a ticket for a random draw. The process 300 assumes a consumer is purchasing a number of items including a pre-printed lottery

15 ticket. A pre-printed lottery ticket is scanned (302) at a POS terminal 202 and unique identification information of the pre-printed ticket is communicated (304) to a lottery system 220, which verifies the ticket information and determines draw and wager information (306), if the wager information is not already associated with the ticket information. Additional items being purchased may be scanned (308) by the POS

20 terminal, and once all of the items being purchased are scanned, payment may be made (310), for example using cash credit or debit,. After payment is received, the POS terminal 216 may communicate the payment conformation (312) to the lottery system 220, which can activate the pre-printed lottery ticket (314) for the subsequent draw. The draw and wager information may be returned to the POS terminal (316) and

25 printed on the customer's receipt (318). Once activated, the pre-printed ticket serves as a lottery ticket and may be verified as a regular lottery ticket purchased from a lottery terminal.

Figure 4 depicts a further process for providing a ticket for a random draw. The process 400 is similar to the process 300, however the unique ID is cached is transmitted with

30 payment confirmation. A pre-printed lottery ticket is scanned (402) at a POS terminal

8

202 and unique identification information of the pre-printed ticket is cached at the POS terminal (404) to a lottery system 220. Additional items being purchased may be scanned (406) by the POS terminal, and once all of the items being purchased are scanned, payment may be made (408), for example using cash credit or debit. After payment is received, the

5    POS terminal 216 may communicate the payment conformation (410) and the cached unique identification information of the pre-printed lottery ticket to the lottery system 220. The lottery system may receive and verify the ticket information and determine draw and wager information, if the wager information is not already associated with the ticket information, which can activate the pre-printed lottery ticket (412) for the subsequent draw. The draw and

10   wager information may be returned to the POS terminal (414) and printed on the customer's receipt (416). Once activated, the pre-printed ticket serves as a lottery ticket and may be verified as a regular lottery ticket purchased from a lottery terminal.

Figure 5 depicts additional or alternative pre-printed lottery tickets. As depicted, pre-printed

15   lottery ticket 502 is for three plays or wagers, which may be indicated by additional play information 504 and/or may be reflected by the price 506 of the pre- printed ticket. The pre-printed lottery ticket 502 is depicted as providing separate wagers for two products 508a, 508b. Wager and draw information will be generated and activated for a subsequent 649 draw and a subsequent Lotto Max draw. The information for the draw and wager information

20   that needs to be generated may be stored by the lottery system and associated with unique information that can be stored in the barcode 510.

Pre-printed lottery ticket 512 is depicted as being for a single product and wager. However, unlike the other pre-printed lottery tickets described above, the pre-printed lottery ticket 512

25   is already associated with wager information 520 which may be printed on the ticket to allow selection of preferred numbers by a consumer. Accordingly, the pre-printed ticket 512 includes a purchase amount indication 514 and product or game information, as well as the wager information, which is depicted as being the numbers of the draw. When the bar-code 518 of the pre-printed ticket is scanned, the unique ID information may be used to activate the

30   pre-printed ticket with the subsequent draw.

9

The wager information does not need to be generated since it is already generated and associated with the pre-printed lottery ticket, for example at the time of manufacture or printing.

Pre-printed lottery ticket 522 depicts a pre-printed ticket that combines multiple plays
5    with pre-generated wager information.  The ticket 522 includes an indication of the number of plays or wagers, which may be provided by play information 526 and/or reflected in price information 524.  The ticket may include an indication of the game or product the wager is for 528 as well as an indication of the wager information 530a, 530b for the multiple wagers associated with the ticket.  The barcode 534 includes the
10   unique identification information which may be used to activate the wagers for the subsequent draw.

WHAT IS CLAIMED IS:

1.      A method of generating a lottery ticket for a random draw comprising:

        receiving, by a lottery administration system computer device, unique identification information from a pre-printed lottery ticket;

        determining, by the lottery administration system computer device, draw information for a subsequent draw being held;

        associating, by the lottery administration system computer device, the determined draw information with the unique identification information;

        receiving, by the lottery administration system computer device, payment confirmation; and

        transmitting, by the lottery administration system computer device, draw details after the payment confirmation is received.

2.      The method of claim 1, wherein receiving the unique identification information comprises receiving the unique identification information over a secure communication channel from a point-of-sale (POS) system.

3.      The method of claim 1 or 2, further comprising receiving product information of the pre-printed lottery ticket along with the unique identification information.

4.      The method of claim 1 or 2, further comprising retrieving product information of the pre-printed lottery ticket using the received unique identification information.

5.      The method of claim 3 or 4, wherein the product information indicates one or more of:
        a game type associated with the pre-printed lottery ticket;
        a wager amount associated with the pre-printed lottery ticket; and
        a number of wagers associated with the pre-printed lottery ticket.

6.      The method of any one of claims 1 to 5, further comprising:
        validating the received unique identification information.

11

7.     The method of claim 6, wherein validating the received unique identification information comprises verifying that the unique identification information corresponds to unique identification information associated with a pre-printed lottery ticket.

8.     The method of claim 7, wherein validating the received unique identification information further comprises verifying that the unique identification information corresponds to unique identification information associated with one of a plurality of pre-printed lottery tickets distributed to a vendor of the pre-printed lottery ticket.

9.     The method of any one of claims 1 to 8, wherein determining the draw information comprises generating at least one random number for the subsequent draw.

10.    The method of any one of claims 1 to 8, wherein determining the draw information comprises:

       retrieving at least one random number from a list of previously generated random numbers; and

       removing the retrieved at least one random number from the list of previously generated random numbers.

11.    The method of any one of claims 1 to 10, wherein associating the determined draw information with the unique identification information comprises storing the associated draw information and unique identification information in a database of the lottery administration system computer device.

12.    The method of any one of claims 1 to 11, wherein transmitting the draw details comprises:
       generating at the lottery administration system computer device an image containing at least the draw details; and
       transmitting the generated image.

12

13.     The method of any one of claims 1 to 12, wherein the subsequent draw being held is a next occurring draw being held.

14.     A method of providing a lottery ticket for a random draw comprising:

scanning at a retailer point-of-sale (POS) terminal a pre-printed lottery ticket to obtain unique identification information from the pre-printed lottery ticket;

transmitting the unique identification information from the retailer POS terminal to a lottery administration system;

receiving at the retailer POS terminal payment confirmation;

transmitting payment confirmation from the retailer POS terminal to the lottery administration system;

receiving at the retailer POS terminal from the lottery administration system draw details associated with the pre-printed lottery ticket; and

printing the draw details on a receipt.

15.     The method of claim 14, wherein the lottery administration system transmits the draw details in accordance with the transmitting of draw details described in any one of claims 1 to 13.

16.     A lottery administration system comprising:

at least one communication interface for communicating with other computing systems;

at least one processing unit for executing instructions; and

at least one memory unit for storing instructions, which when executed by the at least one processing unit configure the lottery administration system to provide a method according to any one of claims 1 to 13.

17.     A retailer point-of-sale (POS) terminal comprising:

at least one communication interface for communicating with other computing systems;

at least one scanning component;

at least one processing unit for executing instructions; and

at least one memory unit for storing instructions, which when executed by the at least one processing unit configure the retailer POS terminal to provide a method according to claim 14.

13

18.     A lottery system comprising:

a lottery administration system according to claim 16; and

a plurality of retailer POS terminals according to claim 17 in communication with the lottery administration system.

19.     A method of activating a lottery ticket comprising:

receiving, by a lottery administration system computer device over a secure communication channel from a retailer point-of-sale (POS) system, unique identification information from a pre-printed lottery ticket, wherein the pre-printed lottery ticket is not activated;

receiving, by the lottery administration system computer device, payment confirmation; and

transmitting, by the lottery administration system computer device, confirmation of activation details for the pre-printed lottery ticket after the payment confirmation is received.

20.     The method of claim 19 further comprising receiving product information of the pre-printed lottery ticket along with the unique identification information.

21.     The method of claim 19 or 20, further comprising retrieving product information of the pre-printed lottery ticket using the received unique identification information.

22.     The method of claim 20 or 21, wherein the product information indicates a game type associated with the pre-printed lottery ticket.

23.     The method of any one of claims 19 to 22, further comprising:

validating the received unique identification information.

14

24.     The method of claim 23, wherein validating the received unique identification information comprises verifying that the unique identification information corresponds to unique identification information associated with a pre-printed lottery ticket.

25.     The method of claim 24, wherein validating the received unique identification information further comprises verifying that the unique identification information corresponds to unique identification information associated with one of a plurality of pre-printed lottery tickets distributed to a vendor of the pre-printed lottery ticket.

26.     A method of providing a lottery ticket comprising:

        scanning at a retailer point-of-sale (POS) terminal a pre-printed lottery ticket to obtain unique identification information from the pre-printed lottery ticket, wherein the pre-printed lottery ticket is not activated;

        transmitting the unique identification information from the POS terminal to a lottery administration system;

        receiving at the retailer POS terminal payment confirmation;

        transmitting payment confirmation from the POS terminal to the lottery administration system;

        receiving at the retailer POS terminal from the lottery administration system confirmation of activation details associated with the pre-printed lottery ticket; and

        providing confirmation of activation information via a receipt.

27.     A lottery administration system comprising:

        at least one communication interface for communicating with other computing systems;

· 15

at least one processing unit for executing instructions; and

at least one memory unit for storing instructions, which when executed by the at least one processing unit configure the lottery administration system to provide a method according to any one of claims 19 to 26.

28.     A retailer point-of-sale (POS) terminal comprising:

at least one communication interface for communicating with other computing systems;

at least one scanning component;

at least one processing unit for executing instructions; and

at least one memory unit for storing instructions, which when executed by the at least one processing unit configure the POS terminal to provide a method according to claim 26.

29.     A lottery system comprising:

a lottery administration system according to claim 27; and

a plurality of retailer POS terminals according to claim 28 in communication with the lottery administration system.

CA 2855434 2020-04-02





**Figure 1**



**Figure 2**



**Figure 3**



**Figure 4**

502

506 — $4.00        Double Play — 504
508a — 649 Draw
508b — Encore
510 —


512

514 — $2.00
516 — 649 Draw
520 — Your Numbers: 6,18, 23, 29, 33, 41
518 —


522

524 — $4.00   Double Play — 526
528 — 649 Draw
530a
530b
Your Numbers: 6,18, 23, 29, 33, 41
5, 13, 10, 26, 30, 47
534 —


**Figure 5**

**ABSTRACT**

Pre-printed lottery tickets allow a consumer to purchase a lottery ticket for a subsequently occurring draw.  The pre-printed lottery ticket may be purchased as any other product and the point of sale terminal does not require specialized hardware such as a lottery ticket terminal.

# EXHIBIT 2

US009865135B2

US 9,865,135 B2

## (12) United States Patent
### Giunti

(10) Patent No.: **US 9,865,135 B2**
(45) Date of Patent: **Jan. 9, 2018**

(54) **METHODS FOR SELLING PRE-PRINTED ONLINE LOTTERY TICKETS**

(71) Applicant: **Blackhawk Network, Inc.**, Pleasanton, CA (US)

(72) Inventor: **Gino Giunti**, Sault Ste. Marie (CA)

(73) Assignee: **BLACKHAWK NETWORK, INC.**, Pleasanton, CA (US)

(*) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 211 days.

(21) Appl. No.: **14/679,028**

(22) Filed: **Apr. 6, 2015**

(65) **Prior Publication Data**

US 2016/0210808 A1    Jul. 21, 2016

### Related U.S. Application Data

(60) Provisional application No. 62/104,844, filed on Jan. 18, 2015.

(51) **Int. Cl.**
| | |
|---|---|
| A63F 13/00 | (2014.01) |
| G07F 17/32 | (2006.01) |
| G06Q 20/20 | (2012.01) |
| G06Q 50/34 | (2012.01) |

(52) **U.S. Cl.**
CPC ......... **G07F 17/329** (2013.01); **G06Q 20/202** (2013.01); **G06Q 20/209** (2013.01); **G06Q 50/34** (2013.01); **G07F 17/3244** (2013.01)

(58) **Field of Classification Search**
None
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,935,000 A * | 8/1999 | Sanchez, III | G07F 17/32 463/17 |
| 6,322,446 B1 * | 11/2001 | Yacenda | G07F 17/32 463/16 |
| 8,219,497 B2 * | 7/2012 | Crucs | G06Q 20/085 463/29 |
| 8,408,986 B2 * | 4/2013 | Irwin, Jr. | G07F 17/32 101/483 |
| 8,784,180 B2 * | 7/2014 | Stanek | G07F 17/3232 463/16 |
| 2009/0227320 A1* | 9/2009 | McBride | A63F 3/065 463/17 |
| 2010/0093421 A1* | 4/2010 | Nyman | G06Q 20/108 463/17 |

OTHER PUBLICATIONS

Filing receipt and specification for provisional patent application entitled "Methods for Selling Pre-Printed Online Lottery Tickets," by Gin Giunti, filed Jan. 18, 2015 as U.S. Appl. No. 62/104,844.

* cited by examiner

*Primary Examiner* — Sunit Pandya
(74) *Attorney, Agent, or Firm* — Wick Phillips Gould & Martin LLP; Jerry C. Harris, Jr.

(57) **ABSTRACT**

A system and method of selling pre-printed lottery tickets for random draw lotteries through the retailers POS without the use of additional lottery hardware. Pre-printed lottery tickets allow a consumer to purchase a lottery ticket for a subsequently occurring draw by including that ticket in their shopping basket. The pre-printed lottery ticket may be purchased as any other common product through the point of sale terminal. No specialized hardware such as lottery terminal, printer or dispensing device is necessary.

**6 Claims, 9 Drawing Sheets**

100









Figure 1



Figure 2



Figure 3



Figure 4



Figure 5



Figure 6



Figure 7



Figure 8





Figure 9

US 9,865,135 B2

<table>
<tr><td>1</td><td>2</td></tr>
</table>

# METHODS FOR SELLING PRE-PRINTED ONLINE LOTTERY TICKETS

## CROSS-REFERENCE TO RELATED APPLICATIONS

This application claims benefit of Provisional Application 62/104,844 filed Jan. 18, 2015 titled "Methods For Selling Pre-printed Online Lottery Tickets".

## FIELD OF DESCRIBED METHODS

The current disclosure relates to lottery systems and in particular to the sale and activation of pre-printed draw based lottery tickets through the retailers Point of Sale without the need for additional lottery hardware.

## BACKGROUND AND SUMMARY OF THE INVENTION

Broadly there are two types of lotteries. The first is instant win lotteries where a printed ticket provides all of the lottery information. These tickets typically have a play area covered by scratch off material. The tickets can be purchased from a retailer, and the scratch off material removed to reveal whether the ticket is a winner. A second type of lottery is a draw-based lottery or "online" lottery, where a player makes a wager on a subsequently occurring event. For example, a player may guess at numbers that will be drawn. The selected numbers, or randomly selected numbers if the player does not have a preference for the numbers, are printed on a ticket and provided to the player. Once the event occurs, for example the numbers are drawn or generated by the lottery organization, the ticket may be a winner depending on if one or more of the selected numbers were drawn or generated.

Tickets for draw based lotteries are typically printed at the time of purchase on special ticket paper by a printing device approved by the lottery administering body. The ticket will typically have the draw details such as the date, the numbers that have been selected by the customer or generated on behalf of the customer and a control number that uniquely identifies that ticket. Special ticket paper typically meets critical longevity and stress requirements to ensure the ticket will not deteriorate within a certain period of time and that the control number and selected numbers remain legible.

Typically, the printing device is attached to a single lottery terminal operated by the lottery organization. Although the model of a single terminal and printer is effective for single checkout lane environments such as convenience stores and gas stations, it is not ideal for multi-lane environments such as grocery stores, discount and big box retailers. Here, the majority of customers complete their shopping and pay through any one of many checkout lanes. A second stop and purchase is required at the lottery terminal location in order to purchase the lottery draw ticket. This is extremely inconvenient for most customers who simply bypass the lottery counter.

Installing an approved printer or any other piece of specialized hardware at every point of payment within a retail environment is cost prohibitive and not an effective use of capital as not all points of payment are open at all times. This is one of the barriers to lottery organizations expanding their sales within multi-lane retail environments. Other barriers to installing specialized hardware in lane include the lack of available space and the added responsibility and training for the cashier who must operate the hardware.

Using the retailers POS to print the ticket on standard receipt paper is ineffective since receipt paper is typically of the lowest quality and the ticket can deteriorate prematurely if left if sunlight or comes in contact with water.

It would be desirable to enable customers to include a lottery draw ticket in their basket along with other goods and pay for that basket at any point of payment in a retail location. The inclusion of such a lottery draw ticket should not require any additional hardware in lane and should be fully serviced by the existing point of sale equipment. It is also desirable to merchandise draw based tickets in such a way that the customer experience is enhanced with the purchase convenience while increasing product awareness and impulse lottery purchases.

Described herein are methods for selling draw based tickets through the retailers POS without the use of additional hardware to generate or print the tickets.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. **1** depicts a pre-printed lottery ticket and purchase receipt;

FIG. **2** depicts components of a point of sale and lottery system;

FIG. **3** depicts a process for providing a ticket for a draw lottery;

FIG. **4** depicts a further process for providing a ticket for a draw lottery;

FIG. **5** depicts a further process for providing a ticket for a draw lottery;

FIG. **6** depicts components of a point of sale, transaction processor and lottery system;

FIG. **7** depicts a process for providing a ticket for a draw lottery through a transaction processor;

FIG. **8** depicts a further process for providing a ticket for a draw lottery through a transaction processor;

FIG. **9** depicts additional or alternative pre-printed lottery tickets.

## DETAILED DESCRIPTION

Currently, online lottery products are produced by a lottery terminal or similar hardware. When an online lottery ticket, such as a ticket to a draw taking place at a later time, is purchased, a ticket is generated and printed by the lottery terminal and printer. A system is described further herein that provides the ability to include online lottery tickets that can be placed in a customer's shopping cart and paid for during the normal checkout process without the use of specialized hardware such as lottery terminals, ticket printers or customized devices at the point of purchase for the purpose of producing the lottery ticket. Since no specialized hardware is required, it is possible to pay for the online lottery tickets at any point of purchase. For example, at a grocery store, the online lottery tickets may be purchased at each check-out lane without requiring lottery terminals or hardware at each lane and as such, the incorporation of the purchasing at multiple lanes may be cost effective. In addition to the ability to purchase online lottery tickets at a point of sale without additional specialized lottery hardware, the systems and methods allow the online lottery ticket to be displayed and purchased as a common in-store product making the purchase of an online lottery ticket common practice for the customer and the retailer.

The online lottery ticket is manufactured and distributed as pre-printed lottery tickets that do not have a draw date or wager (i.e. lottery numbers) assigned or associated to the

US 9,865,135 B2

3

pre-printed ticket. The pre-printed tickets would each have a unique bar code that identifies the particular pre-printed ticket and would also have a Universal Product Code bar code that would identify the lottery product. One bar code may contain both pieces of information. The pre-printed tickets are provided to retailers and are displayed to the consumer.

Until purchased and activated, the pre-printed tickets have no value, nor do they have any wager or draw date assigned. They cannot be used for validation or redemption purposes prior to purchase. Once scanned by the retailer's POS and paid for by the customer, the lottery system will generate wagers for the pre-printed ticket and assign the next available draw date. The generated numbers, the draw date and unique ticket identifier is printed on the customers shopping receipt. Although the draw information is printed on the customer's receipt, it is only information and the pre-printed lottery ticket is the legal instrument for validation and prize redemption. Draw information on the printed receipt also serves to confirm the activation of the pre-printed lottery ticket and the assignment of draw numbers and draw date.

Secure communications between the retailers POS system and the lottery system facilitate the successful completion of the above transaction and activation of the pre-printed ticket. As well, there may be a series of acknowledgments between systems to ensure the generation of the draw information and association of the draw information with the pre-printed ticket is successful and the draw information is printed on the receipt. Once activated, the pre-printed ticket may be subject to the same policies and procedures as standard online lottery tickets generated from specialized lottery terminals.

Alternatively, the communication and data transfers between the POS system and the lottery system may be facilitating by a transaction processor system. This may be effective where a third party system is already integrated with the retailers POS for the purpose of interchanging data and transactions.

Since the wager and draw date information is not printed on the pre-printed ticket, these details may be made available to the purchaser through other means including but not limited to the printed receipt, scanning the pre-printed ticket on existing lottery terminals or self-serve ticket checkers, and entering the pre-printed ticket's unique identifier into online websites or mobile applications.

A variation of the above is to produce pre-printed tickets with pre-printed wagers on the ticket. In such a case, when the pre-printed ticket with pre-printed wagers is purchased, the lottery system may simply assign the next draw date to the pre-printed ticket and activate the ticket within the lottery system. This lottery system in this variation will have a database of pre-printed tickets and associated lottery wagers.

Further, the pre-printed tickets may include different number and types of wagers. For example, a single pre-printed lottery ticket may be associated with purchasing 1, 2, 3 or more wagers. When the pre-printed tickets are associated with a plurality of wagers, each wager may be for the same or different online lottery games.

The ability to purchase an online lottery ticket at a point of sale check-out, as described herein, requires no additional hardware in lane and no special thermal or lottery paper or printer. The legal ticket, namely the pre-printed ticket, may not contain wagers and does not contain the draw date and is only associated with wagers or a draw date in the lottery system when activated by purchase. Given there is no value to the pre-printed ticket before activation, they can be distributed in locations that provide the most visibility and

4

convenience for the customer with limited risk that the pre-printed ticket will be stolen. The pre-printed ticket is treated like an off the shelf commodity when checking out and should not impede the speed at checkout. The solution is extremely convenient for the customer with no additional interaction with the cashier required. Further, limited knowledge or expertise is required by the cashier. The solution may be easily scalable and can provide a cost effective solution to enable all checkout locations in all store locations to sell pre-printed online lottery tickets.

The pre-printed tickets may be manufactured and shipped to retail locations. Retailers may manage inventory and display the pre-printed tickets in, for example, checkout lanes, at counters and throughout the store where the product is most visible to customers. Customers can select a lottery product at any time with no additional interaction with a lottery retailer and drop the pre-printed lottery ticket(s) into their shopping cart. During the checkout process, the pre-printed ticket is scanned by the cashier in the retailer's POS as they would scan any other product being purchased. The pre-printed ticket may require one, possibly two scans dependent on the bar code standard used and the technical abilities of the retailer's POS system. Upon scanning of the ticket the retailer's POS will be updated with the product description and cost. The retailer's POS will communicate the transaction type, such as purchase or cancel, and the pre-printed ticket details, such as product information and/or a unique identifier, to the lottery system though a secure communications channel.

Upon receiving information for activating a pre-printed ticket being purchased, the lottery system may initiate a pre-printed ticket wager by validating the pre-printed ticket details, generating the appropriate lottery wager information, for example generating an appropriate number of random numbers for the draw. The generated wager information may then be associated with unique identifier of the pre-printed ticket in the lottery system and the pre-printed ticket activated for the next available draw. Confirmation of the activation, as well as the lottery numbers and draw information, for example when the draw is being held, may be withheld from the retailer's POS until payment confirmation is received by the lottery system. The cashier continues to scan the customer's purchases until the cart is empty. The cashier may then process payment as the normal course of action. Prior to the retailer's POS closing the sale and printing the receipt, the retailers POS system may communicate the payment confirmation and details to the lottery system. Once payment confirmation is received the lottery system may in turn communicate the lottery numbers and draw information to the retailers POS. This information may be communicated in the form of an image, text or any other message format deemed appropriate. The lottery numbers and draw date assigned to the pre-printed lottery ticket may be printed on the customer's store receipt. The printed receipt with the lottery information is for informational purposes only, and the pre-printed ticket would be required to validate the lottery numbers or to redeem a winning prize.

Rather than transmitting the pre-printed ticket information first, followed by confirmation of payment, it is possible to transmit the pre-printed ticket information to the lottery system only once the payment has been confirmed. Withholding the draw information until payment confirmation is received is optional and the lottery system may in turn communicate draw information to the POS upon being generated. Payment confirmation, if required, may contain but is not limited to transaction details such as the method of payment, transaction number, loyalty number or debit/

US 9,865,135 B2

5

credit card details. This level of information enables a complete audit trail to verify the true identity of the ticket owner in situations where ownership is disputed.

During the checkout process, age verification, if required, is done by the cashier. Where self-serve check-out kiosks are available, the retailer's POS may suspend the terminal operation until the age of the customer can be verified by store personnel or other means such as swiping of an identification card in co-operation with other bio-metric data. The transaction can then be approved or voided depending upon the determined age.

Purchased pre-printed tickets may be returned and cancelled, assuming the associated draw has not occurred. Tickets can be cancelled at two points in time, either during checkout, and prior to payment or after the basket has been paid for. Prior to payment a customer may change their mind and wish to have the pre-printed ticket removed from their basket. The transaction may be voided in the retailer's POS terminal as done with other common products. Additionally, if the pre-printed ticket information has already been communicated to the lottery system, another transaction may be performed indicating that the purchase of the pre-printed ticket was cancelled. The lottery system will cancel the pre-printed ticket and wager and draw information. Confirmation of the cancellation may be sent back to the POS terminal. The customer's receipt may show the inclusion and return of the pre-printed ticket but no draw or wager information will be shown on the receipt.

After the basket has been paid for and the pre-printed ticket has been activated, the customer may return and cancel the pre-printed ticket, for example at the retailer's customer service counter. Normal retailer and lottery return procedures may apply. The cashier may scan the pre-printed ticket barcode(s) into the POS. The retailer's POS will communicate the transaction type, i.e. cancellation, and pre-printed ticket details, such as product information and/or unique identifier, to the lottery system though a secure communications channel. The lottery system will locate the associated wager and cancel the transaction. The lottery system may send a confirmation to the retailer's POS along with the cancellation details, such as the pre-printed ticket identifier and/or cancellation date/time. The cancellation details may be returned in the form of an image. Cancellation information may be printed at the bottom of the customers return receipt.

FIG. 1 depicts a pre-printed lottery ticket and purchase receipt. A pre-printed ticket 100 may be placed at various locations in a retail environment. The pre-printed ticket 100 may have a main ticket portion 102 and may have a display portion 104 separable connected to the main ticket portion 102, for example by perforated or scored lines. The display portion 104 may include a hanging cut-out 106 in order to facilitate the display of the pre-printed ticket 100. The main ticket portion 102 includes advertising and purchase information, such as the cost of the pre-printed ticket 108 and the product the pre-printed ticket is for 110. Additionally, the main ticket portion 102 may include barcode information 112, which may be in the form of one or more barcodes although only one is depicted. Barcode information will contain the Ticket Unique Identifier, Universal Product Code and may contain price information. Although the specific physical characteristics of the pre-printed ticket are depicted in FIG. 1, it will be appreciated that the pre-printed tickets may take many different physical shapes.

FIG. 1 also depicts the shopping receipt 114 provided to the customer after the transaction is completed. The receipt is similar to commonly provided receipts and includes an

6

itemized list of purchased items 116. The list 116 includes an indication 118 of the purchase of the pre-printed ticket. The receipt may also include draw and wager information 120 provided by the lottery system when the pre-printed ticket was activated. The draw and wager information 120, may include an indication of the draw date, the wager numbers and the unique ticket identifier which may be masked for security reasons. The unique ticket identifier included in 120 associates the receipt 144 to the pre-printed ticket 100. The draw and wager information associated with a pre-printed ticket may be checked by a consumer by other means, such as through a lottery terminal, lottery mobile application or lottery online site.

FIG. 2 depicts components of a lottery system and point of sale environment. As depicted, the environment 200 for purchasing a pre-printed lottery ticket includes a retailer's point of sale terminal 202 and a lottery system 220 connected to each other through one or more communication networks 218. The communication between retail POS terminals and the lottery system may be secured using various encryption techniques.

The retailer's POS terminal 202 may include a central processing unit (CPU) 204, memory unit 206 and I/O interface(s) 208 for communicating with devices external to the POS terminal. As depicted, a barcode scanner 210 may be connected for scanning in barcode information, such as Universal Product Code information, and pre-printed ticket information 100. The retailer POS terminal may also be connected to a printer 212 for printing a receipt 114 of the transaction. The POS terminal 202 includes instructions 214 stored in the memory unit, which when executed by the processor unit 204 configure the POS terminal 202 to provide pre-printed draw-based lottery ticketing functionality 216. The functionality 216 may provide the functionality for communicating scanned in barcode information of pre-printed lottery tickets with the lottery system, and receiving confirmation of the pre-printed ticket's activation, as described above.

The lottery system 220 may include a central processing unit (CPU) 222, memory unit 226 and I/O interface(s) 224 for communicating with devices external to the lottery system 220. Instructions 228 stored in the memory unit 226, when executed by the processing unit 222 configure the lottery system to provide pre-printed draw-based lottery ticket activation and cancellation functionality 230. The functionality 230 may receive and verify pre-printed lottery ticket information from a plurality of different retailers. The verification of the pre-printed lottery ticket information may involve checking that the received information corresponds to an actual ticket, verifying one or more check-digits, and/or verifying that the pre-printed lottery ticket was distributed to the retailer. The pre-printed ticket information used in verifying the received information may be stored in a pre-printed ticket information database 232. The functionality 230 may also generate draw and wager information and associate the pre-printed ticket information in a draw information database 234. The draw information database 234 may be used in verifying subsequent tickets, including the pre-printed lottery tickets, as winning tickets following the draw event.

FIG. 3 depicts a process for providing a ticket for a random draw. The process 300 assumes a consumer is purchasing a number of items including a pre-printed lottery ticket. A pre-printed lottery ticket is scanned (302) at a POS terminal 202 and unique identification information and details of the pre-printed ticket is communicated (304) to a lottery system 220, which verifies the ticket information and

US 9,865,135 B2

7

determines draw and wager information (306), if the wager information is not already associated with the ticket information. Additional items being purchased may be scanned (308) by the POS terminal, and once all of the items being purchased are scanned, payment may be made (310), for example using cash credit or debit,. After payment is received, the POS terminal 202 may communicate the payment confirmation (312) to the lottery system 220, which can activate the pre-printed lottery ticket (314) for the subsequent draw. The draw and wager information may be returned to the POS terminal (316) and printed on the customer's receipt (318). Once activated, the pre-printed ticket serves as a lottery ticket and may be verified at any regular lottery ticket purchased from a lottery terminal.

FIG. 4 depicts a further process for providing a ticket for a random draw. The process 400 is similar to the process 300; however the unique ID is cached and transmitted with payment confirmation. A pre-printed lottery ticket is scanned (402) at a POS terminal 202 and unique identification information along with product information of the pre-printed ticket is cached at the POS terminal (404). Additional items being purchased may be scanned (406) by the POS terminal, and once all of the items being purchased are scanned, payment may be made (408), for example using cash credit or debit. After payment is received, the POS terminal 202 may communicate the payment conformation (410) and the cached unique identification information of the pre-printed lottery ticket to the lottery system 220. The lottery system may receive and verify the ticket information and determine draw and wager information, if the wager information is not already associated with the ticket information and which can activate the pre-printed lottery ticket (412) for the subsequent draw. The draw and or wager information may be returned to the POS terminal (414) and printed on the customer's receipt (416). Once activated, the pre-printed ticket serves as a lottery ticket and may be verified as any regular lottery ticket purchased from a lottery terminal.

FIG. 5 depicts a further process for providing a ticket for a random draw. The process 500 is similar to the process 300; however the determination of the draw and wager information by the lottery system and communication of the information to the POS is not dependent on the receiving of payment by the POS. A pre-printed lottery ticket is scanned (502) at a POS terminal 202 and unique identification information along with product information of the pre-printed ticket is communicated (504) to a lottery system 220, which verifies the ticket information, determines draw and wager information, if the wager information is not already associated with the ticket information and activates the pre-printed ticket (506). The lottery system 220 communicates the draw information (508) to the POS 202 where it is cached (510) by POS Terminal 202.

Additional items being purchased may be scanned (512) by the POS terminal, and once all of the items being purchased are scanned, payment may be made (514), for example using cash credit or debit,. After payment is received, the POS terminal 202 may communicate the payment conformation (516) to the lottery system 220, which can associate the payment confirmation and details with the pre-printed lottery ticket (518). The POS 202 may print the draw and wager information on the customer's receipt (520). Once activated, the pre-printed ticket serves as a lottery ticket and may be verified as any regular lottery ticket purchased from a lottery terminal.

FIG. 6 depicts components of a lottery system, point of sale environment and a transaction processor. As depicted,

8

the environment 600 for purchasing a pre-printed lottery ticket includes a retailer's point of sale terminal 202 for the retail of the pre-printed ticket, a lottery system 220 for the generation and activation of pre-printed ticket wagers and draw date and a transaction processor 630 to facilitate the exchange of data between the retailer's point of sale 202 and the lottery system 220 each connected to one other through one or more communication networks 218; 219. The communication between retail POS terminals, the transaction processor and the lottery system may be secured using various encryption techniques.

The retailer's POS terminal 202 may include a central processing unit (CPU) 204, memory unit 206 and I/O interface(s) 208 for communicating with devices external to the POS terminal. As depicted, a barcode scanner 210 may be connected for scanning in barcode information, such as Universal Product Code information, and pre-printed ticket information 100. The retailer POS terminal may also be connected to a printer 212 for printing a receipt 114 of the transaction. The POS terminal 202 includes instructions 214 stored in the memory unit, which when executed by the processor unit 204 configure the POS terminal 202 to provide pre-printed draw-based lottery ticketing functionality 216. The functionality 216 may provide the functionality for communicating scanned in barcode information of pre-printed lottery tickets with the transaction processor system, and receiving confirmation of the pre-printed ticket's activation, as described above.

The lottery system 220 may include a central processing unit (CPU) 222, memory unit 226 and I/O interface(s) 224 for communicating with devices external to the lottery system 220. Instructions 228 stored in the memory unit 226, when executed by the processing unit 222 configure the lottery system to provide pre-printed draw-based lottery ticket activation and cancellation functionality 230. The functionality 230 may receive and verify pre-printed lottery ticket information from a plurality of different retailers. The verification of the pre-printed lottery ticket information may involve checking that the received information corresponds to an actual ticket, verifying one or more check-digits, and/or verifying that the pre-printed lottery ticket was distributed to the retailer. The pre-printed ticket information used in verifying the received information may be stored in a pre-printed ticket information database 232. The functionality 230 may also generate draw and wager information and associate the pre-printed ticket information in a draw information database 234. The draw information database 234 may be used in verifying subsequent tickets, including the pre-printed lottery tickets, as winning tickets following the draw event.

The transaction processor system 630 may include a central processing unit (CPU) 604, memory unit 616 and I/O interface(s) 608 for communicating with devices external to the transaction processor system 630. Instructions 604 stored in the memory unit 616, when executed by the processing unit 604 provide transaction processing and data exchange functionality 602. The functionality 602 may process transactions and exchange data from a plurality of different retailers to a single lottery system. Instructions 602 may include any functionality necessary for the successful exchange of data and the activation or cancellation of the pre-printed ticket.

FIG. 7 depicts a process for providing a ticket for a random draw through a transaction processor. The process 700 assumes a consumer is purchasing a number of items including a pre-printed lottery ticket. A pre-printed lottery ticket is scanned (702) at a POS terminal 202 and unique

US 9,865,135 B2

9                                              10

identification information and details of the pre-printed ticket is communicated (**704**) to the transaction processor **630** who in turn communicates (**706**) the unique identifier and pre-printed ticket details to a lottery system **220**, which verifies the ticket information and determines draw and wager information and activates the pre-printed ticket (**708**), if the wager information is not already associated with the ticket information. Draw information is communicated (**710**) to the transaction processor **630** and is cached within their system (**712**). Additional items being purchased may be scanned (**714**) by the POS terminal, and once all of the items being purchased are scanned, payment may be made (**716**), for example using cash credit or debit,. After payment is received, the POS terminal **202** may communicate the payment confirmation (**718**) to the transaction processor **630**. The transaction processor **630** may also communicate (**720**) payment confirmation to the lottery system **220**, which can associate payment confirmation (**722**) with the pre-printed ticket. The transaction processor **630** may communicate the draw and wager information (**724**) to the POS terminal **202** and print the draw information on the customer's receipt (**726**). Once activated, the pre-printed ticket serves as a lottery ticket and may be verified as any regular lottery ticket purchased from a lottery terminal.

Understandably, the sequencing of the communications between the POS terminal **202**, the lottery system **220** or transaction processor **630** may vary depending on the rules put in place between the parties.

FIG. **8** is similar to FIG. **7** except draw information and activation of the pre-printed ticket is complete after payment confirmation is received by the lottery system **220**. The process **800** assumes a consumer is purchasing a number of items including a pre-printed lottery ticket. A pre-printed lottery ticket is scanned (**802**) at a POS terminal **202** and unique identification information and details of the pre-printed ticket is cached (**804**) within the POS terminal **202**. Additional items being purchased may be scanned (**806**) by the POS terminal, and once all of the items being purchased are scanned, payment may be made (**808**), for example using cash credit or debit,. After payment is received, the POS terminal **202** may communicate the payment confirmation and unique identification information (**810**) to the transaction processor **630**. The transaction processor **630** may communicate (**812**) the payment confirmation and unique identification information to the lottery system **220**. The lottery system **220** verifies the ticket information and determines draw and wager information and activates the pre-printed ticket (**814**), if the wager information is not already associated with the ticket information. Draw information is communicated (**816**) to the transaction processor **630**. Draw information is then communicated (**818**) to the POS terminal **202** where draw information is printed on the customer shopping receipt (**820**). Once activated, the pre-printed ticket serves as a lottery ticket and may be verified as any regular lottery ticket purchased from a lottery terminal.

Understandably, the sequencing of the communications between the POS terminal **202**, the lottery system **220** or transaction processor **630** may vary depending on the rules put in place between the parties.

FIG. **9** depicts additional or alternative pre printed lottery tickets. As depicted, pre-printed lottery ticket **902** is for two play or wagers plus a bonus, which may be indicated by additional play information **904** and/or may be reflected by the price **906** of the pre-printed ticket. The pre-printed lottery ticket **902** is depicted as providing separate wagers for two products **908a**, **908b**. Wager and draw information will be generated and activated for a subsequent Super Lotto

draw and a subsequent Extra draw. The information for the draw and wager information that needs to be generated may be stored by the lottery system and associated with unique information that can be stored in the barcode **910**.

Pre-printed lottery ticket **912** is depicted as being for a single product and wager. However, unlike the other pre-printed lottery tickets described above, the pre-printed lottery ticket **912** is already associated with wager information **914** which may be printed on the ticket to allow selection of preferred numbers by a consumer. Accordingly, the pre-printed ticket **912** includes a purchase amount indication **916** and product or game information, as well as the wager information, which is depicted as being the numbers of the draw **914**. When the bar-code **918** of the pre-printed ticket is scanned, the unique ID information may be used to activate the pre-printed ticket with the subsequent draw. The wager information does not need to be generated since it is already generated and associated with the pre-printed lottery ticket in the lottery system, for example at the time of manufacture or printing.

Understandably, any combination of pre-printed tickets as identified above can be manufactured and sold through the methods identified.

What is claimed is:

**1**. A method of providing a lottery ticket for a random draw comprising:

scanning at a point-of-sale (POS) terminal a pre-printed lottery ticket to obtain unique identification information and product information from the pre-printed lottery ticket;

transmitting the unique identification information and product information from the POS terminal to a lottery administration system;

receiving at the POS terminal payment confirmation;

transmitting payment confirmation from the POS terminal to the lottery administration system;

receiving at the POS terminal from the lottery administration system draw details associated with the pre-printed lottery ticket; and

printing the draw details on a receipt.

**2**. A method of providing a lottery ticket, for a random draw comprising:

scanning at a point-of-sale (POS) terminal a pre-printed lottery ticket to obtain unique identification information and product information from the pre-printed lottery ticket;

transmitting the unique identification information and product information from the POS terminal to a transaction processor;

transmitting the unique identification information and product information from the transaction processor to a lottery administration system;

receiving at the POS terminal payment confirmation;

transmitting payment confirmation from the POS terminal to the transaction processor;

transmitting payment confirmation from the transaction processor to the lottery administration system;

receiving by the transaction processor from the lottery administration system draw details associated with the pre-printed lottery ticket;

receiving at the POS terminal from the transaction processor draw details associated with the pre-printed lottery ticket; and

printing the draw details on a receipt.

**3**. The method of claim **1** or **2**, further comprising transmitting the draw details by the lottery administration system, wherein transmitting the draw details generating at

US 9,865,135 B2

11

the lottery administration system an image or data package containing at least the draw details.

**4**. A lottery administration system comprising:

at least one communication interface for communicating with other computing systems;

at least one processing unit for executing instructions; and

at least one memory unit for storing instructions, which when executed by the at least one processing unit configure the lottery administration system to provide a method of generating a lottery ticket for a random draw, wherein the method of generating a lottery ticket for a random draw comprises receiving at the lottery administration system unique identification information from a pre-printed lottery ticket, determining at the lottery administration system draw information for a subsequent draw being held, associating at the lottery administration system the determined draw information with the unique identification information, receiving at the lottery administration system payment confirmatio; and transmitting from the lottery administration draw details.

**5**. A point-of-sale (POS) terminal comprising:

at least one communication interface for communicating with other computing systems;

at least one scanning component;

at least one processing unit for executing instructions; and

at least one memory unit for storing instructions, which when executed by the at least one processing unit configure the POS terminal to provide a method of providing a lottery ticket for a random draw, wherein the method of providing a lottery ticket for a random draw comprises scanning at the POS terminal a pre-printed lottery ticket to obtain unique identification information and product information from the pre-printed lottery ticket, transmitting the unique identification information and product information from the

12

POS terminal to a lottery administration system, receiving at the POS terminal payment confirmation, transmitting payment confirmation from the POS terminal to the lottery administration system, receiving at the POS terminal from the lottery administration system draw details associated with the pre-printed lottery ticket, and printing the draw details on a receipt.

**6**. transaction processor comprising:

at least one communication interface for communicating with other computing systems;

at least one processing unit for executing instructions; and

at least one memory unit for storing instructions, which when executed by the at least one processing unit configure the transaction processor to provide a method of providing a lottery ticket for a random draw, wherein the method of providing a lottery ticket for a random draw comprises scanning at a point-of-sale (POS) terminal pre-printed lottery ticket to obtain unique identification information and product information from the pre-printed lottery ticket, transmitting the unique identification information and product information from the POS terminal to the transaction processor, transmitting the unique identification information and product information from the transaction processor to the lottery administration system, receiving at the POS terminal payment confirmation, transmitting payment confirmation from the POS terminal to the transaction processor, transmitting payment confirmation from the transaction processor to the lottery administration system, receiving by the transaction processor from the lottery administration system draw details associated with the pre-printed lottery ticket, receiving at the POS terminal from the transaction processor draw details associated with the pre-printed lottery ticket, and printing the draw details on a receipt.

\* \* \* \* \*

# EXHIBIT 3

US010769894B2

(12) **United States Patent**
Giunti

(10) Patent No.: **US 10,769,894 B2**
(45) Date of Patent: ***Sep. 8, 2020**

(54) **METHODS FOR SELLING PRE-PRINTED ONLINE LOTTERY TICKETS**

(71) Applicant: **BLACKHAWK NETWORK INC.,** Pleasanton, CA (US)

(72) Inventor: **Gino Giunti**, Sault Ste. Marie (CA)

(73) Assignee: **Blackhawk Network, Inc.,** Pleasanton, CA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 209 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **15/833,566**

(22) Filed: **Dec. 6, 2017**

(65) **Prior Publication Data**

US 2018/0096558 A1      Apr. 5, 2018

**Related U.S. Application Data**

(63) Continuation of application No. 14/679,028, filed on Apr. 6, 2015, now Pat. No. 9,865,135.

(60) Provisional application No. 62/104,844, filed on Jan. 18, 2015.

(51) **Int. Cl.**
| | | |
|---|---|---|
| *A63F 13/00* | (2014.01) | |
| *G07F 17/32* | (2006.01) | |
| *G06Q 20/20* | (2012.01) | |
| *G06Q 50/34* | (2012.01) | |

(52) **U.S. Cl.**
CPC ......... *G07F 17/329* (2013.01); *G06Q 20/202* (2013.01); *G06Q 20/209* (2013.01); *G06Q 50/34* (2013.01); *G07F 17/3244* (2013.01)

(58) **Field of Classification Search**
CPC ................................... G07F 17/30
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 5,935,000 | A * | 8/1999 | Sanchez, III | G07F 17/32 463/17 |
| 6,322,446 | B1 * | 11/2001 | Yacenda | G07F 17/32 463/16 |
| 8,219,497 | B2 * | 7/2012 | Crucs | G06Q 20/085 463/29 |
| 8,408,986 | B2 * | 4/2013 | Irwin, Jr. | G07F 17/32 101/483 |
| 8,784,180 | B2 * | 7/2014 | Stanek | G07F 17/329 463/16 |
| 9,251,663 | B1 * | 2/2016 | Sandvick | G07F 17/329 |

(Continued)

OTHER PUBLICATIONS

Filing receipt and specification for provisional patent application entitled "Methods For Selling Pre-Printed Online Lottery Tickets," by Gino Giunti, filed Jan. 18, 2015, as US Appl. No. 62/104,844.

*Primary Examiner* — Sunit Pandya
(74) *Attorney, Agent, or Firm* — Jerry C. Harris, Jr.

(57) **ABSTRACT**

A system and method of selling pre-printed lottery tickets for random draw lotteries through the retailers POS without the use of additional lottery hardware. Pre-printed lottery tickets allow a consumer to purchase a lottery ticket for a subsequently occurring draw by including that ticket in their shopping basket. The pre-printed lottery ticket may be purchased as any other common product through the point of sale terminal. No specialized hardware such as lottery terminal, printer or dispensing device is necessary.

**53 Claims, 9 Drawing Sheets**





**US 10,769,894 B2**

Page 2

(56)        **References Cited**

U.S. PATENT DOCUMENTS

2002/0119817 A1 *   8/2002   Behm .................. A63F 3/0625
                                                      463/17
2009/0227320 A1 *   9/2009   McBride ............... A63F 3/065
                                                      463/17
2010/0093421 A1 *   4/2010   Nyman ............... G06Q 20/108
                                                      463/17

* cited by examiner



Figure 1



Figure 2



Figure 3

U.S. Patent          Sep. 8, 2020          Sheet 4 of 9          US 10,769,894 B2



Figure 4



Figure 5



Figure 6



700
202
POS Terminal
630
Third Party Processor
220
Lottery System
702
Scan Pre-Printed Lottery Ticket
704
Unique Identification Information
706
Unique Identification Information
708
Determine Draw Information AND Activate Pre-Printed Ticket
714
Scan Remainder of Basket
710
Draw information
712
Cache Draw Information
716
Receive Payment
718
Payment Confirmation
720
Payment Confirmation
722
Associate Payment Confirmation with Pre-Printed Ticket
724
Draw information
726
Print Draw Information on Shopping Receipt

Figure 7



800
202
630
220
POS Terminal
Third Party Processor
Lottery System
802
Scan Pre-Printed Lottery Ticket
804
806
Scan Remainder of Basket
Cache Unique Identification Information
808
Receive Payment
810
Payment Confirmation, Unique Identification Information
812
Payment Confirmation, Unique Identification Information
814
Determine Draw Information and Activate Pre-Printed Lottery Ticket
818
816
Draw information
820
Draw information
Print Draw Information on Shopping Receipt

Figure 8



Figure 9

US 10,769,894 B2

1

# METHODS FOR SELLING PRE-PRINTED ONLINE LOTTERY TICKETS

## CROSS-REFERENCE TO RELATED APPLICATIONS

This application is a continuation application of, and claims priority to, U.S. patent application Ser. No. 14/679,028 filed Apr. 6, 2015, which claims benefit of Provisional Application No. 62/104,844 filed Jan. 18, 2015 titled "Methods For Selling Pre-printed Online Lottery Tickets."

## FIELD OF DESCRIBED METHODS

The current disclosure relates to lottery systems and in particular to the sale and activation of pre-printed draw based lottery tickets through the retailers Point of Sale without the need for additional lottery hardware.

## BACKGROUND AND SUMMARY OF THE INVENTION

Broadly there are two types of lotteries. The first is instant win lotteries where a printed ticket provides all of the lottery information. These tickets typically have a play area covered by scratch off material. The tickets can be purchased from a retailer, and the scratch off material removed to reveal whether the ticket is a winner. A second type of lottery is a draw-based lottery or "online" lottery, where a player makes a wager on a subsequently occurring event. For example, a player may guess at numbers that will be drawn. The selected numbers, or randomly selected numbers if the player does not have a preference for the numbers, are printed on a ticket and provided to the player. Once the event occurs, for example the numbers are drawn or generated by the lottery organization, the ticket may be a winner depending on if one or more of the selected numbers were drawn or generated.

Tickets for draw based lotteries are typically printed at the time of purchase on special ticket paper by a printing device approved by the lottery administering body. The ticket will typically have the draw details such as the date, the numbers that have been selected by the customer or generated on behalf of the customer and a control number that uniquely identifies that ticket. Special ticket paper typically meets critical longevity and stress requirements to ensure the ticket will not deteriorate within a certain period of time and that the control number and selected numbers remain legible.

Typically, the printing device is attached to a single lottery terminal operated by the lottery organization. Although the model of a single terminal and printer is effective for single checkout lane environments such as convenience stores and gas stations, it is not ideal for multi-lane environments such as grocery stores, discount and big box retailers. Here, the majority of customers complete their shopping and pay through any one of many checkout lanes. A second stop and purchase is required at the lottery terminal location in order to purchase the lottery draw ticket. This is extremely inconvenient for most customers who simply bypass the lottery counter.

Installing an approved printer or any other piece of specialized hardware at every point of payment within a retail environment is cost prohibitive and not an effective use of capital as not all points of payment are open at all times. This is one of the barriers to lottery organizations expanding their sales within multi-lane retail environments. Other barriers to installing specialized hardware in lane include the

2

lack of available space and the added responsibility and training for the cashier who must operate the hardware.

Using the retailers POS to print the ticket on standard receipt paper is ineffective since receipt paper is typically of the lowest quality and the ticket can deteriorate prematurely if left if sunlight or comes in contact with water.

It would be desirable to enable customers to include a lottery draw ticket in their basket along with other goods and pay for that basket at any point of payment in a retail location. The inclusion of such a lottery draw ticket should not require any additional hardware in lane and should be fully serviced by the existing point of sale equipment. It is also desirable to merchandise draw based tickets in such a way that the customer experience is enhanced with the purchase convenience while increasing product awareness and impulse lottery purchases.

Described herein are methods for selling draw based tickets through the retailers POS without the use of additional hardware to generate or print the tickets.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. **1** depicts a pre-printed lottery ticket and purchase receipt;

FIG. **2** depicts components of a point of sale and lottery system;

FIG. **3** depicts a process for providing a ticket for a draw lottery;

FIG. **4** depicts a further process for providing a ticket for a draw lottery;

FIG. **5** depicts a further process for providing a ticket for a draw lottery;

FIG. **6** depicts components of a point of sale, transaction processor and lottery system;

FIG. **7** depicts a process for providing a ticket for a draw lottery through a transaction processor;

FIG. **8** depicts a further process for providing a ticket for a draw lottery through a transaction processor;

FIG. **9** depicts additional or alternative pre-printed lottery tickets.

## DETAILED DESCRIPTION

Currently, online lottery products are produced by a lottery terminal or similar hardware. When an online lottery ticket, such as a ticket to a draw taking place at a later time, is purchased, a ticket is generated and printed by the lottery terminal and printer. A system is described further herein that provides the ability to include online lottery tickets that can be placed in a customer's shopping cart and paid for during the normal checkout process without the use of specialized hardware such as lottery terminals, ticket printers or customized devices at the point of purchase for the purpose of producing the lottery ticket. Since no specialized hardware is required, it is possible to pay for the online lottery tickets at any point of purchase. For example, at a grocery store, the online lottery tickets may be purchased at each check-out lane without requiring lottery terminals or hardware at each lane and as such, the incorporation of the purchasing at multiple lanes may be cost effective. In addition to the ability to purchase online lottery tickets at a point of sale without additional specialized lottery hardware, the systems and methods allow the online lottery ticket to be displayed and purchased as a common in-store product making the purchase of an online ticket common practice for the customer and the retailer.

US 10,769,894 B2

3

The online lottery ticket is manufactured and distributed as pre-printed lottery tickets that do not have a draw date or wager (i.e. lottery numbers) assigned or associated to the pre-printed ticket. The pre-printed tickets would each have a unique bar code that identifies the particular pre-printed ticket and would also have a Universal Product Code bar code that would identify the lottery product. One bar code may contain both pieces of information. The pre-printed tickets are provided to retailers and are displayed to the consumer.

Until purchased and activated, the pre-printed tickets have no value, nor do they have any wager or draw date assigned. They cannot be used for validation or redemption purposes prior to purchase. Once scanned by the retailer's POS and paid for by the customer, the lottery system will generate wagers for the pre-printed ticket and assign the next available draw date. The generated numbers, the draw date and unique ticket identifier is printed on the customers shopping receipt. Although the draw information is printed on the customer's receipt, it is only information and the pre-printed lottery ticket is the legal instrument for validation and prize redemption. Draw information on the printed receipt also serves to confirm the activation of the pre-printed lottery ticket and the assignment of draw numbers and draw date.

Secure communications between the retailers POS system and the lottery system facilitate the successful completion of the above transaction and activation of the pre-printed ticket. As well, there may be a series of acknowledgments between systems to ensure the generation of the draw information and association of the draw information with the pre-printed ticket is successful and the draw information is printed on the receipt. Once activated, the pre-printed ticket may be subject to the same policies and procedures as standard online lottery tickets generated from specialized lottery terminals.

Alternatively, the communication and data transfers between the POS and lottery system may be facilitating by a transaction processor system. This may be effective where a third party system is already integrated with the retailers POS for the purpose of interchanging data and transactions.

Since the wager and draw date information is not printed on the pre-printed ticket, these details may be made available to the purchaser through other means including but not limited to the printed receipt, scanning the pre-printed ticket on existing lottery terminals or self-serve ticket checkers, and entering the pre-printed ticket's unique identifier into online websites or mobile applications.

A variation of the above is to produce pre-printed tickets with pre-printed wagers on the ticket. In such a case, when the pre-printed ticket with pre-printed wagers is purchased, the lottery system may simply assign the next draw date to the pre-printed ticket and activate the ticket within the lottery system. This lottery system in this variation will have a database of pre-printed tickets and associated lottery wagers.

Further, the pre-printed tickets may include different number and types of wagers. For example, a single pre-printed lottery ticket may be associated with purchasing 1, 2, 3 or more wagers. When the pre-printed tickets are associated with a plurality of wagers, each wager may be for the same or different online lottery games.

The ability to purchase an online lottery ticket at a point of sale check-out, as described herein, requires no additional hardware in lane and no special thermal or lottery paper or printer. The legal ticket, namely the pre-printed ticket, may not contain wagers and does not contain the draw date and is only associated with wagers or a draw date in the lottery

4

system when activated by purchase. Given there is no value to the pre-printed ticket before activation, they can be distributed in locations that provide the most visibility and convenience for the customer with limited risk that the pre-printed ticket will be stolen. The pre-printed ticket is treated like an off the shelf commodity when checking out and should not impede the speed at checkout. The solution is extremely convenient for the customer with no additional interaction with the cashier required. Further, limited knowledge or expertise is required by the cashier. The solution may be easily scalable and can provide a cost effective solution to enable all checkout locations in all store locations to sell pre-printed online lottery tickets.

The pre-printed tickets may be manufactured and shipped to retail locations. Retailers may manage inventory and display the pre-printed tickets in, for example, checkout lanes, at counters and throughout the store where the product is most visible to customers. Customers can select a lottery product at any time with no additional interaction with a lottery retailer and drop the pre-printed lottery ticket(s) into their shopping cart. During the checkout process, the pre-printed ticket is scanned by the cashier in the retailer's POS as they would scan any other product being purchased. The pre-printed ticket may require one, possibly two scans dependent on the bar code standard used and the technical abilities of the retailer's POS system. Upon scanning of the ticket the retailer's POS will be updated with the product description and cost. The retailer's POS will communicate the transaction type, such as purchase or cancel, and the pre-printed ticket details, such as product information and/or a unique identifier, to the lottery system though a secure communications channel.

Upon receiving information for activating a pre-printed ticket being purchased, the lottery system may initiate a pre-printed ticket wager by validating the pre-printed ticket details, generating the appropriate lottery wager information, for example generating an appropriate number of random numbers for the draw. The generated wager information may then be associated with unique identifier of the pre-printed ticket in the lottery system and the pre-printed ticket activated for the next available draw. Confirmation of the activation, as well as the lottery numbers and draw information, for example when the draw is being held, may be withheld from the retailer's POS until payment confirmation is received by the lottery system. The cashier continues to scan the customer's purchases until the cart is empty. The cashier may then process payment as the normal course of action. Prior to the retailer's POS closing the sale and printing the receipt, the retailers POS system may communicate the payment confirmation and details to the lottery system. Once payment confirmation is received the lottery system may in turn communicate the lottery numbers and draw information to the retailers POS. This information may be communicated in the form of an image, text or any other message format deemed appropriate. The lottery numbers and draw date assigned to the pre-printed lottery ticket may be printed on the customer's store receipt. The printed receipt with the lottery information is for informational purposes only, and the pre-printed ticket would be required to validate the lottery numbers or to redeem a winning prize.

Rather than transmitting the pre-printed ticket information first, followed by confirmation of payment, it is possible to transmit the pre-printed ticket information to the lottery system only once the payment has been confirmed. Withholding the draw information until payment confirmation is received is optional and the lottery system may in turn communicate draw information to the POS upon being

US 10,769,894 B2

5

generated. Payment confirmation, if required, may contain but is not limited to transaction details such as the method of payment, transaction number, loyalty number or debit/credit card details. This level of information enables a complete audit trail to verify the true identity of the ticket owner in situations where ownership is disputed.

During the checkout process, age verification, if required, is done by the cashier. Where self-serve check-out kiosks are available, the retailer's POS may suspend the terminal operation until the age of the customer can be verified by store personnel or other means such as swiping of an identification card in co-operation with other bio-metric data. The transaction can then be approved or voided depending upon the determined age.

Purchased pre-printed tickets may be returned and cancelled, assuming the associated draw has not occurred. Tickets can be cancelled at two points in time, either during checkout, and prior to payment or after the basket has been paid for. Prior to payment a customer may change their mind and wish to have the pre-printed ticket removed from their basket. The transaction may be voided in the retailer's POS terminal as done with other common products. Additionally, if the pre-printed ticket information has already been communicated to the lottery system, another transaction may be performed indicating that the purchase of the pre-printed ticket was cancelled. The lottery system will cancel the pre-printed ticket and wager and draw information. Confirmation of the cancellation may be sent back to the POS terminal. The customer's receipt may show the inclusion and return of the pre-printed ticket but no draw or wager information will be shown on the receipt.

After the basket has been paid for and the pre-printed ticket has been activated, the customer may return and cancel the pre-printed ticket, for example at the retailer's customer service counter. Normal retailer and lottery return procedures may apply. The cashier may scan the pre-printed ticket barcode(s) into the POS. The retailer's POS will communicate the transaction type, i.e. cancellation, and pre-printed ticket details, such as product information and/or unique identifier, to the lottery system though a secure communications channel. The lottery system will locate the associated wager and cancel the transaction. The lottery system may send a confirmation to the retailer's POS along with the cancellation details, such as the pre-printed ticket identifier and/or cancellation date l time. The cancellation details may be returned in the form of an image. Cancellation information may be printed at the bottom of the customers return receipt.

FIG. 1 depicts a pre-printed lottery ticket and purchase receipt. A pre-printed ticket 100 may be placed at various locations in a retail environment. The pre-printed ticket 100 may have a main ticket portion 102 and may have a display portion 104 separable connected to the main ticket portion 102, for example by perforated or scored lines. The display portion 104 may include a hanging cut-out 106 in order to facilitate the display of the pre-printed ticket 100. The main ticket portion 102 includes advertising and purchase information, such as the cost of the pre-printed ticket 108 and the product the pre-printed ticket is for 110. Additionally, the main ticket portion 102 may include barcode information 112, which may be in the form of one or more barcodes although only one is depicted. Barcode information will contain the Ticket Unique Identifier, Universal Product Code and may contain price information. Although the specific physical characteristics of the pre-printed ticket are depicted in FIG. 1, it will be appreciated that the pre-printed tickets may take many different physical shapes.

6

FIG. 1 also depicts the shopping receipt 114 provided to the customer after the transaction is completed. The receipt is similar to commonly provided receipts and includes an itemized list of purchased items 116. The list 116 includes an indication 118 of the purchase of the pre-printed ticket. The receipt may also include draw and wager information 120 provided by the lottery system when the pre-printed ticket was activated. The draw and wager information 120, may include an indication of the draw date, the wager numbers and the unique ticket identifier which may be masked for security reasons. The unique ticket identifier included in 120 associates the receipt 144 to the pre-printed ticket 100. The draw and wager information associated with a pre-printed ticket may be checked by a consumer by other means, such as through a lottery terminal, lottery mobile application or lottery online site.

FIG. 2 depicts components of a lottery system and point of sale environment. As depicted, the environment 200 for purchasing a pre-printed lottery ticket includes a retailer's point of sale terminal 202 and a lottery system 220 connected to each other through one or more communication networks 218. The communication between retail POS terminals and the lottery system may be secured using various encryption techniques.

The retailer's POS terminal 202 may include a central processing unit (CPU) 204, memory unit 206 and 1/0 interface(s) 208 for communicating with devices external to the POS terminal. As depicted, a barcode scanner 210 may be connected for scanning in barcode information, such as Universal Product Code information, and pre-printed ticket information 100. The retailer POS terminal may also be connected to a printer 212 for printing a receipt 114 of the transaction. The POS terminal 202 includes instructions 214 stored in the memory unit, which when executed by the processor unit 204 configure the POS terminal 202 to provide pre-printed draw-based lottery ticketing functionality 216. The functionality 216 may provide the functionality for communicating scanned in barcode information of pre-printed lottery tickets with the lottery system, and receiving confirmation of the pre-printed ticket's activation, as described above.

The lottery system 220 may include a central processing unit (CPU) 222, memory unit 226 and 1/0 interface(s) 224 for communicating with devices external to the lottery system 220. Instructions 228 stored in the memory unit 226, when executed by the processing unit 222 configure the lottery system to provide pre-printed draw-based lottery ticket activation and cancellation functionality 230. The functionality 230 may receive and verify pre-printed lottery ticket information from a plurality of different retailers. The verification of the pre-printed lottery ticket information may involve checking that the received information corresponds to an actual ticket, verifying one or more check-digits, and/or verifying that the pre-printed lottery ticket was distributed to the retailer. The pre-printed ticket information used in verifying the received information may be stored in a pre-printed ticket information database 232. The functionality 230 may also generate draw and wager information and associate the pre-printed ticket information in a draw information database 234. The draw information database 234 may be used in verifying subsequent tickets, including the pre-printed lottery tickets, as winning tickets following the draw event.

FIG. 3 depicts a process for providing a ticket for a random draw. The process 300 assumes a consumer is purchasing a number of items including a pre-printed lottery ticket. A pre-printed lottery ticket is scanned (302) at a POS

US 10,769,894 B2

7

terminal **202** and unique identification information and details of the pre-printed ticket is communicated (**304**) to a lottery system **220**, which verifies the ticket information and determines draw and wager information (**306**), if the wager information is not already associated with the ticket information. Additional items being purchased may be scanned (**308**) by the POS terminal, and once all of the items being purchased are scanned, payment may be made (**310**), for example using cash credit or debit. After payment is received, the POS terminal **202** may communicate the payment confirmation (**312**) to the lottery system **220**, which can activate the pre-printed lottery ticket (**314**) for the subsequent draw. The draw and wager information may be returned to the POS terminal (**316**) and printed on the customer's receipt (**318**). Once activated, the pre-printed ticket serves as a lottery ticket and may be verified as any regular lottery ticket purchased from a lottery terminal.

FIG. **4** depicts a further process for providing a ticket for a random draw. The process **400** is similar to the process **300**; however the unique ID is cached and transmitted with payment confirmation. A pre-printed lottery ticket is scanned (**402**) at a POS terminal **202** and unique identification information along with product information of the pre-printed ticket is cached at the POS terminal (**404**). Additional items being purchased may be scanned (**406**) by the POS terminal, and once all of the items being purchased are scanned, payment may be made (**408**), for example using cash credit or debit. After payment is received, the POS terminal **202** may communicate the payment conformation (**410**) and the cached unique identification information of the pre-printed lottery ticket to the lottery system **220**. The lottery system may receive and verify the ticket information and determine draw and wager information, if the wager information is not already associated with the ticket information and which can activate the pre-printed lottery ticket (**412**) for the subsequent draw. The draw or wager information may be returned to the POS terminal (**414**) and printed on the customer's receipt (**416**). Once activated, the pre-printed ticket serves as a lottery ticket and may be verified as any regular lottery ticket purchased from a lottery terminal.

FIG. **5** depicts a further process for providing a ticket for a random draw. The process **500** is similar to the process **300**; however the determination of the draw and wager information by the lottery system and communication of the information to the POS is not dependent on the receiving of payment by the POS. A pre-printed lottery ticket is scanned (**502**) at a POS terminal **202** and unique identification information along with product information of the pre-printed ticket is communicated (**504**) to a lottery system **220**, which verifies the ticket information, determines draw and wager information, if the wager information is not already associated with the ticket information and activates the pre-printed ticket (**506**). The lottery system **220** communicates the draw information (**508**) to the POS **202** where it is cached (**510**) by POS Terminal **202**.

Additional items being purchased may be scanned (**512**) by the POS terminal, and once all of the items being purchased are scanned, payment may be made (**514**), for example using cash credit or debit. After payment is received, the POS terminal **202** may communicate the payment conformation (**516**) to the lottery system **220**, which can associate the payment confirmation and details with the pre-printed ticket (**518**). The POS **202** may print the draw and wager information on the customer's receipt (**520**). Once activated, the pre-printed ticket serves as a lottery

8

ticket and may be verified as any regular lottery ticket purchased from a lottery terminal.

FIG. **6** depicts components of a lottery system, point of sale environment and a transaction processor. As depicted, the environment **600** for purchasing a pre-printed lottery ticket includes a retailer's point of sale terminal **202** for the retail of the pre-printed ticket, a lottery system **220** for the generation and activation of pre-printed ticket wagers and draw date and a transaction processor **630** to facilitate the exchange of data between the retailer's point of sale **202** and the lottery system **220** each connected to one other through one or more communication networks **218**; **219**. The communication between retail POS terminals, the transaction processor and the lottery system may be secured using various encryption techniques.

The retailer's POS terminal **202** may include a central processing unit (CPU) **204**, memory unit **206** and 1/0 interface(s) **208** for communicating with devices external to the POS terminal. As depicted, a barcode scanner **210** may be connected for scanning in barcode information, such as Universal Product Code information, and pre-printed ticket information **100**. The retailer POS terminal may also be connected to a printer **212** for printing a receipt **114** of the transaction. The POS terminal **202** includes instructions **214** stored in the memory unit, which when executed by the processor unit **204** configure the POS terminal **202** to provide pre-printed draw-based lottery ticketing functionality **216**. The functionality **216** may provide the functionality for communicating scanned in barcode information of pre-printed lottery tickets with the transaction processor system, and receiving confirmation of the pre-printed ticket's activation, as described above.

The lottery system **220** may include a central processing unit (CPU) **222**, memory unit **226** and 1/0 interface(s) **224** for communicating with devices external to the lottery system **220**. Instructions **228** stored in the memory unit **226**, when executed by the processing unit **222** configure the lottery system to provide pre-printed draw-based lottery ticket activation and cancellation functionality **230**. The functionality **230** may receive and verify pre-printed lottery ticket information from a plurality of different retailers. The verification of the pre-printed lottery ticket information may involve checking that the received information corresponds to an actual ticket, verifying one or more check-digits, and/or verifying that the pre-printed lottery ticket was distributed to the retailer. The pre-printed ticket information used in verifying the received information may be stored in a pre-printed ticket information database **232**. The functionality **230** may also generate draw and wager information and associate the pre-printed ticket information in a draw information database **234**. The draw information database **234** may be used in verifying subsequent tickets, including the pre-printed lottery tickets, as winning tickets following the draw event.

The transaction processor system **630** may include a central processing unit (CPU) **604**, memory unit **616** and 1/0 interface(s) **608** for communicating with devices external to the transaction processor system **630**. Instructions **604** stored in the memory unit **616**, when executed by the processing unit **604** provide transaction processing and data exchange functionality **602**. The functionality **602** may process transactions and exchange data from a plurality of different retailers to a single lottery system. Instructions **602** may include any functionality necessary for the successful exchange of data and the activation or cancellation of the pre-printed ticket.

US 10,769,894 B2

9
10

FIG. 7 depicts a process for providing a ticket for a random draw through a transaction processor. The process 700 assumes a consumer is purchasing a number of items including a pre-printed lottery ticket. A pre-printed lottery ticket is scanned (702) at a POS terminal 202 and unique identification information and details of the pre-printed ticket is communicated (704) to the transaction processor 630 who in turn communicates (706) the unique identifier and pre-printed ticket details to a lottery system 220, which verifies the ticket information and determines draw and wager information and activates the pre-printed ticket (708), if the wager information is not already associated with the ticket information. Draw information is communicated (710) to the transaction processor 630 and is cached within their system (712). Additional items being purchased may be scanned (714) by the POS terminal, and once all of the items being purchased are scanned, payment may be made (716), for example using cash credit or debit. After payment is received, the POS terminal 202 may communicate the payment confirmation (718) to the transaction processor 630. The transaction processor 630 may also communicate (720) payment confirmation to the lottery system 220, which can associate payment confirmation (722) with the pre-printed ticket. The transaction processor 630 may communicate the draw and wager information (724) to the POS terminal 202 and print the draw information on the customer's receipt (726). Once activated, the pre-printed ticket serves as a lottery ticket and may be verified as any regular lottery ticket purchased from a lottery terminal.

Understandably, the sequencing of the communications between the POS terminal 202, the lottery system 220 or transaction processor 630 may vary depending on the rules put in place between the parties.

FIG. 8 is similar to FIG. 7 except draw information and activation of the pre-printed ticket is complete after payment confirmation is received by the lottery system 220. The process 800 assumes a consumer is purchasing a number of items including a pre-printed lottery ticket. A pre-printed lottery ticket is scanned (802) at a POS terminal 202 and unique identification information and details of the pre-printed ticket is cached (804) within the POS terminal 202. Additional items being purchased may be scanned (806) by the POS terminal, and once all of the items being purchased are scanned, payment may be made (808), for example using cash credit or debit. After payment is received, the POS terminal 202 may communicate the payment confirmation and unique identification information (810) to the transaction processor 630. The transaction processor 630 may communicate (812) the payment confirmation and unique identification information to the lottery system 220. The lottery system 220 verifies the ticket information and determines draw and wager information and activates the pre-printed ticket (814), if the wager information is not already associated with the ticket information. Draw information is communicated (816) to the transaction processor 630. Draw information is then communicated (818) to the POS terminal 202 where draw information is printed on the customer shopping receipt (820). Once activated, the pre-printed ticket serves as a lottery ticket and may be verified as any regular lottery ticket purchased from a lottery terminal.

Understandably, the sequencing of the communications between the POS terminal 202, the lottery system 220 or transaction processor 630 may vary depending on the rules put in place between the parties.

FIG. 9 depicts additional or alternative preprinted lottery tickets. As depicted, pre-printed lottery ticket 902 is for two play or wagers plus a bonus, which may be indicated by additional play information 904 and/or may be reflected by the price 906 of the pre-printed ticket. The pre-printed lottery ticket 902 is depicted as providing separate wagers for two products 908a, 908b. Wager and draw information will be generated and activated for a subsequent Super Lotto draw and a subsequent Extra draw. The information for the draw and wager information that needs to be generated may be stored by the lottery system and associated with unique information that can be stored in the barcode 910.

Pre-printed lottery ticket 912 is depicted as being for a single product and wager. However, unlike the other pre-printed lottery tickets described above, the pre-printed lottery ticket 912 is already associated with wager information 914 which may be printed on the ticket to allow selection of preferred numbers by a consumer. Accordingly, the pre-printed ticket 912 includes a purchase amount indication 916 and product or game information, as well as the wager information, which is depicted as being the numbers of the draw 914. When the bar-code 918 of the pre-printed ticket is scanned, the unique ID information may be used to activate the pre-printed ticket with the subsequent draw. The wager information does not need to be generated since it is already generated and associated with the pre-printed lottery ticket in the lottery system, for example at the time of manufacture or printing.

Understandably, any combination of pre-printed tickets as identified above can be manufactured and sold through the methods identified.

What is claimed is:

1. A transaction processor system comprising:
at least one communication interface for communicating with other devices;
at least one processing unit for executing instructions; and
at least one memory unit for storing instructions, which when executed by the at least one processing unit causes the transaction processor system to to (1) provide unique identification information from a pre-printed lottery ticket, (2) receive, from a lottery administration system, a determined draw information associated with the unique identification information, (3) provide, to the lottery administration system, payment confirmation for the pre-printed lottery ticket, and (4) facilitate provision of random draw details associated with the pre-printed lottery ticket.

2. The transaction processor system of claim 1, wherein facilitate provision of random draw details comprises receiving, from the lottery administration system, an image or data package containing at least the random draw details.

3. The transaction processor system of claim 1, wherein facilitate provision of random draw details comprises delivery of the random draw details in response to a scan of the pre-printed lottery ticket.

4. The transaction processor system of claim 1, wherein facilitate provision of random draw details comprises delivery of the random draw details in response to entry of the pre-printed lottery ticket's unique identifier into a website.

5. The transaction processor system of claim 1, wherein facilitate provision of random draw details comprises delivery of the random draw details in response to entry of the pre-printed lottery ticket's unique identifier into a mobile application.

6. A transaction processor system comprising:
at least one communication interface for communicating with other devices;
at least one processing unit for executing instructions; and
at least one memory unit for storing instructions, which when executed by the at least one processing unit

US 10,769,894 B2

11

12

causes the transaction processor system to (1) provide unique identification information from a pre-printed lottery ticket, (2) receive a determined draw information associated with the unique identification information, (3) provide payment confirmation for the pre-printed lottery ticket, and (4) facilitate provision of random draw details associated with the pre-printed lottery ticket.

**7**. A method for providing a lottery ticket for a random draw comprising:

(a) receiving, by a transaction processor, a transaction request from a retailer point of sale (POS) to activate a pre-printed lottery ticket;

(b) providing, by the transaction processor or retailer, to a lottery administration system unique identification information associated with pre-printed lottery ticket information received from the retailer POS without the use of lottery hardware; and

(c) receiving, by the transaction processor or retailer, from the lottery administration system, indication that draw information has been associated with the pre-printed lottery ticket; wherein said pre-printed lottery ticket comprises two or more codes.

**8**. The method of claim **7**, further comprising facilitating, by the transaction processor, provision of random draw details, wherein provision of the random draw details comprises delivery of the random draw details in response to a scan of the pre-printed lottery ticket on existing lottery terminals or self-serve ticket checkers.

**9**. The method of claim **7**, further comprising facilitating, by the transaction processor, provision of random draw details, wherein provision of the random draw details comprises delivery of the random draw details in response to an entry or scanning of the pre-printed lottery ticket's unique identifier into a website.

**10**. The method of claim **7**, further comprising facilitating, by the transaction processor, provision of random draw details, wherein provision of the random draw details comprises delivery of the random draw details in response to an entry or scanning of the pre-printed lottery ticket's unique identifier into a mobile application.

**11**. The method of claim **7**, wherein receiving the transaction request comprises receiving unique product information associated with the pre-printed lottery ticket over a secure communication channel from a point of sale (POS) system.

**12**. The method of claim **7**, wherein draw information is made available on a printed receipt; by scanning a code on the pre-printed lottery ticket; or by entering a unique identifier associated with the pre-printed lottery ticket into an online web site or mobile application.

**13**. The method of claim **7**, further comprising receiving unique product information associated with the pre-printed lottery ticket.

**14**. The method of claim **13**, wherein the product information is sufficient to determine one or more of:

a game type associated with the pre-printed lottery ticket;

a wager amount associated with the pre-printed lottery ticket; and

a number of wagers associated with the pre-printed lottery ticket.

**15**. The method of claim **7**, further comprising retrieving unique identification information associated with the pre-printed lottery ticket from the received product information.

**16**. The method of claim **7**, further comprising validating the received transaction request.

**17**. The method of claim **16**, wherein validating the received identification information comprises verifying that the product information corresponds to identification information associated with a pre-printed lottery ticket.

**18**. The method of claim **17**, wherein validating the transaction information includes verifying that the product is validly distributed by the retailer.

**19**. The method of claim **16**, wherein the validation comprises age validation.

**20**. The method of claim **7**, wherein the information provided to the lottery administration system includes one or more randomly determined lottery numbers generated at the time the pre-printed lottery ticket is purchased at the POS.

**21**. The method of claim **7**, wherein the information provided to the lottery administration system includes one or more randomly determined lottery numbers associated with the pre-printed lottery ticket prior to the time the pre-printed lottery ticket is purchased at the POS.

**22**. The method of claim **7**, wherein the retailer POS is online.

**23**. The method of claim **7**, wherein at least one of the two or more codes comprise a barcode.

**24**. The method of claim **23**, wherein the barcode comprises a first party information and a second party information.

**25**. The method of claim **23**, wherein the barcode comprises a universal product code and pre-printed lottery ticket information.

**26**. The method of claim **7**, wherein the pre-printed lottery ticket contains information used to redeem a winning prize.

**27**. The method of claim **7**, wherein the lottery administration system generates wagers for the pre-printed lottery ticket and a draw date is assigned to the wagers.

**28**. The method of claim **7**, wherein lottery numbers are entered in a draw.

**29**. A method for providing a product for a draw comprising:

(a) providing, by a transaction processor or retailer, to a lottery administration system unique identification information associated with pre-printed lottery ticket information received from a retailer POS without the use of lottery hardware; and

(b) receiving, by the transaction processor or retailer, from the lottery administration system, indication that draw information has been associated with the pre-printed lottery ticket; wherein said pre-printed lottery ticket comprises one or more codes.

**30**. The method of claim **29**, wherein the unique identification information is provided by the retailer.

**31**. The method of claim **29**, wherein the unique identification information is provided by the transaction processor.

**32**. The method of claim **29**, wherein draw information is made available on a printed receipt; by scanning a code on the pre-printed lottery ticket; or by entering a unique identifier associated with the pre-printed lottery ticket into an online website or mobile application.

**33**. A method for providing a lottery ticket for a random draw comprising:

(a) receiving, by a transaction processor, a transaction request from a retailer point of sale (POS) to activate a pre-printed lottery ticket;

(b) providing, by the transaction processor or retailer, to a lottery administration system unique identification information associated with pre-printed lottery ticket information received from the retailer POS without the use of lottery hardware; and

US 10,769,894 B2

13

(c) receiving, by the transaction processor or retailer, from the lottery administration system, indication that draw information has been associated with the pre-printed lottery ticket;

wherein said pre-printed lottery ticket comprises one or more codes.

**34**. The method of claim **33**, wherein receiving the transaction request comprises receiving unique product information associated with the pre-printed lottery ticket over a secure communication channel from a point of sale (POS) system.

**35**. The method of claim **33**, wherein draw information is made available on a printed receipt; by scanning a code on the pre-printed lottery ticket; or by entering a unique identifier associated with the pre-printed lottery ticket into an online web site or mobile application.

**36**. The method of claim **33**, further comprising receiving unique product information associated with the pre-printed lottery ticket.

**37**. The method of claim **36**, wherein the product information is sufficient to determine one or more of:

a game type associated with the pre-printed lottery ticket;

a wager amount associated with the pre-printed lottery ticket; and

a number of wagers associated with the pre-printed lottery ticket.

**38**. The method of claim **33**, further comprising retrieving unique identification information associated with the pre-printed lottery ticket from the received product information.

**39**. The method of claim **33**, further comprising validating the received transaction request.

**40**. The method of claim **39**, wherein validating the received identification information comprises verifying that the product information corresponds to identification information associated with a pre-printed lottery ticket.

**41**. The method of claim **40**, wherein validating the transaction information includes verifying that the product is validly distributed by the retailer.

14

**42**. The method of claim **39**, wherein the validation comprises age validation.

**43**. The method of claim **33**, wherein the information provided to the lottery administration system includes one or more randomly determined lottery numbers generated at the time the pre-printed lottery ticket is purchased at the POS.

**44**. The method of claim **33**, wherein the information provided to the lottery administration system includes one or more randomly determined lottery numbers associated with the pre-printed lottery ticket prior to the time the pre-printed lottery ticket is purchased at the POS.

**45**. The method of claim **33**, wherein the retailer POS is online.

**46**. The method of claim **33**, wherein at least one of the one or more codes comprise a barcode.

**47**. The method of claim **46**, wherein the barcode comprises a first party information and a second party information.

**48**. The method of claim **46**, wherein the barcode comprises a universal product code and pre-printed lottery ticket information.

**49**. The method of claim **33**, wherein the pre-printed lottery ticket contains information used to redeem a winning prize.

**50**. The method of claim **33**, wherein the lottery administration system generates wagers for the pre-printed lottery ticket and a draw date is assigned to the wagers.

**51**. The method of claim **33**, wherein lottery numbers are entered in a draw.

**52**. The method of claim **33**, wherein said pre-printed lottery ticket comprises two or more codes.

**53**. The method of claim **52**, wherein draw information is made available on a printed receipt; by scanning a code on the pre-printed lottery ticket; or by entering a unique identifier associated with the pre-printed lottery ticket into an online website or mobile application.

\*　\*　\*　\*　\*

# EXHIBIT 4

US010229561B2

(12) **United States Patent**
Cage et al.

(10) Patent No.: **US 10,229,561 B2**
(45) Date of Patent: ***Mar. 12, 2019**

(54) **PROCESSING OF A USER DEVICE GAME-PLAYING TRANSACTION BASED ON LOCATION**

(71) Applicant: **Linq3 Technologies LLC**, Atlanta, GA (US)

(72) Inventors: **Daniel Cage**, Atlanta, GA (US); **John Minutaglio**, Atlanta, GA (US); **Roy Leach**, Elizabeth, CO (US); **David Tashjian**, Fort Lauderdale, FL (US); **Travis L. Smith**, Alpharetta, GA (US); **John Frederick Houseal, Jr.**, Atlanta, GA (US)

(73) Assignee: **LINQ3 TECHNOLOGIES LLC**, Atlanta, GA (US)

(*) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **16/010,398**

(22) Filed: **Jun. 15, 2018**

(65) **Prior Publication Data**

US 2018/0293834 A1    Oct. 11, 2018

**Related U.S. Application Data**

(63) Continuation-in-part of application No. 15/818,569, filed on Nov. 20, 2017, which is a
(Continued)

(51) **Int. Cl.**
*A63F 13/12* (2006.01)
*G07F 17/32* (2006.01)
(Continued)

(52) **U.S. Cl.**
CPC .......... *G07F 17/329* (2013.01); *A63F 13/213* (2014.09); *A63F 13/216* (2014.09);
(Continued)

(58) **Field of Classification Search**
USPC ...................................................... 463/25, 29
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| 4,669,730 A | 6/1987 | Small |
| 4,815,741 A | 3/1989 | Small |

(Continued)

FOREIGN PATENT DOCUMENTS

| CA | 2548533 A1 | 6/2005 |
| CN | 102054185 | 5/2011 |

(Continued)

OTHER PUBLICATIONS

International Search Report and the Written Opinion dated Feb. 11, 2014 of International Patent Application No. PCT/US2013/058078.
(Continued)

*Primary Examiner* — Pierre E Elisca
(74) *Attorney, Agent, or Firm* — Baker & McKenzie LLP

(57) **ABSTRACT**

An exemplary method comprises receiving information associated with a game-playing transaction conducted between a user device and a game-playing terminal, wherein the game-playing transaction is associated with a request for playing a game; determining a location of the user device associated with the game; determining the user device is located in an approved location associated with the game; and processing the game-playing transaction based on determining the user device is located in the approved location associated with the game. The game-playing transaction is conducted on a first communication interface, and the information associated with the game-playing transaction is received on a first or second communication interface.

**85 Claims, 35 Drawing Sheets**



US 10,229,561 B2

Page 2

## Related U.S. Application Data

continuation-in-part of application No. 15/614,490, filed on Jun. 5, 2017, now Pat. No. 9,824,340, which is a continuation-in-part of application No. 14/958, 720, filed on Dec. 3, 2015, now Pat. No. 9,672,697, which is a continuation-in-part of application No. 14/018,276, filed on Sep. 4, 2013, now Pat. No. 9,227,136, said application No. 15/614,490 is a continuation-in-part of application No. 14/856,421, filed on Sep. 16, 2015, now abandoned.

(60) Provisional application No. 61/696,533, filed on Sep. 4, 2012, provisional application No. 62/458,457, filed on Feb. 13, 2017.

(51) **Int. Cl.**

| | |
|---|---|
| *G06Q 20/04* | (2012.01) |
| *G06Q 20/32* | (2012.01) |
| *G06Q 50/00* | (2012.01) |
| *H04W 4/02* | (2018.01) |
| *G06Q 30/06* | (2012.01) |
| *G06Q 30/02* | (2012.01) |
| *A63F 13/216* | (2014.01) |
| *A63F 13/213* | (2014.01) |
| *A63F 13/92* | (2014.01) |
| *A63F 13/73* | (2014.01) |

(52) **U.S. Cl.**

CPC .............. *A63F 13/73* (2014.09); *A63F 13/92* (2014.09); *G06Q 20/0453* (2013.01); *G06Q 20/3224* (2013.01); *G06Q 20/3276* (2013.01); *G06Q 30/0209* (2013.01); *G06Q 30/0609* (2013.01); *G06Q 50/01* (2013.01); *G07F 17/3209* (2013.01); *G07F 17/3218* (2013.01); *G07F 17/3223* (2013.01); *G07F 17/3225* (2013.01); *G07F 17/3227* (2013.01); *G07F 17/3237* (2013.01); *G07F 17/3239* (2013.01); *G07F 17/3241* (2013.01); *G07F 17/3255* (2013.01); *H04W 4/02* (2013.01)

## (56) References Cited

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,833,307 A | | 5/1989 | Gonzalez-Justiz |
| 5,083,272 A | | 1/1992 | Walker et al. |
| 5,216,595 A | | 6/1993 | Protheroe |
| 5,330,185 A | | 7/1994 | Wells |
| 5,417,424 A | | 5/1995 | Snowden et al. |
| 5,890,718 A | | 4/1999 | Byon |
| 5,897,625 A | | 4/1999 | Gustin et al. |
| 5,919,091 A | | 7/1999 | Bell et al. |
| 5,935,000 A | | 8/1999 | Sanchez, III |
| 6,277,026 B1 | | 8/2001 | Archer |
| 6,304,860 B1 | | 10/2001 | Martin et al. |
| 6,322,446 B1 | | 11/2001 | Yacenda |
| 6,364,206 B1 | | 4/2002 | Keohane |
| 6,507,823 B1 | | 1/2003 | Nel |
| 6,508,710 B1 | | 1/2003 | Paravia et al. |
| 6,547,131 B1 | | 4/2003 | Foodman et al. |
| 6,585,589 B2 | | 7/2003 | Okuniewicz |
| 6,607,439 B2 | | 8/2003 | Schneier et al. |
| 6,616,531 B1 | | 9/2003 | Mullins et al. |
| 6,824,464 B2 | | 11/2004 | Weil et al. |
| 6,869,358 B2 | | 3/2005 | Yacenda |
| 7,168,616 B2 | | 1/2007 | Carnation |
| 7,177,428 B2 | | 2/2007 | Gordon et al. |
| 7,547,251 B2 | | 6/2009 | Walker et al. |
| 7,621,810 B2 | | 11/2009 | Gilmore et al. |
| 8,103,520 B2 | | 1/2012 | Mueller et al. |
| 8,219,497 B2 | | 7/2012 | Crucs |
| 8,408,986 B2 | | 4/2013 | Irwin et al. |

| | | | |
|---|---|---|---|
| 8,775,814 B2 | | 7/2014 | Bidare et al. |
| 8,784,180 B2 | | 7/2014 | Stanek |
| 9,098,190 B2 | * | 8/2015 | Zhou .................. G06Q 20/3829 |
| 9,227,136 B2 | | 1/2016 | Cage et al. |
| 9,672,687 B2 | | 6/2017 | Cage et al. |
| 9,672,697 B2 | | 6/2017 | Cage et al. |
| 9,865,135 B2 | | 1/2018 | Giunti |
| 2001/0045456 A1 | | 11/2001 | Smith |
| 2002/0062249 A1 | | 5/2002 | Iannacci et al. |
| 2002/0094858 A1 | | 7/2002 | Yacenda |
| 2002/0145039 A1 | | 10/2002 | Carroll |
| 2002/0165023 A1 | | 11/2002 | Brosnan et al. |
| 2003/0186734 A1 | | 10/2003 | LeMay et al. |
| 2003/0228910 A1 | | 12/2003 | Jawaharlal et al. |
| 2003/0236749 A1 | | 12/2003 | Shergalis |
| 2004/0002383 A1 | | 1/2004 | Lundy et al. |
| 2004/0014514 A1 | | 1/2004 | Yacenda et al. |
| 2004/0185881 A1 | | 9/2004 | Lee et al. |
| 2004/0259626 A1 | | 12/2004 | Akram |
| 2004/0267663 A1 | | 12/2004 | Karns et al. |
| 2005/0054438 A1 | | 3/2005 | Rothschild et al. |
| 2005/0143163 A1 | | 6/2005 | Yacenda |
| 2005/0149393 A1 | | 7/2005 | Loef et al. |
| 2005/0153779 A1 | | 7/2005 | Ziegler |
| 2005/0167488 A1 | | 8/2005 | Higgins et al. |
| 2005/0211764 A1 | | 9/2005 | Barcelou |
| 2005/0215306 A1 | | 9/2005 | O'Donnell et al. |
| 2005/0233797 A1 | | 10/2005 | Gilmore et al. |
| 2005/0261058 A1 | | 11/2005 | Nguyen et al. |
| 2007/0060284 A1 | | 3/2007 | Yacenda |
| 2007/0083466 A1 | | 4/2007 | Crowell et al. |
| 2007/0117609 A1 | | 5/2007 | White et al. |
| 2007/0155489 A1 | | 7/2007 | Beckley et al. |
| 2007/0156436 A1 | | 7/2007 | Fisher et al. |
| 2008/0079573 A1 | | 4/2008 | Bloebaum et al. |
| 2008/0167060 A1 | | 7/2008 | Moshir et al. |
| 2008/0194311 A1 | | 8/2008 | Cage et al. |
| 2008/0139306 A1 | | 12/2008 | Lutnick et al. |
| 2009/0017893 A1 | | 1/2009 | Carson |
| 2009/0037743 A1 | | 2/2009 | Narayanaswami et al. |
| 2009/0042633 A1 | | 2/2009 | Yacenda |
| 2009/0093292 A1 | | 4/2009 | Randhawa |
| 2009/0111378 A1 | | 4/2009 | Sheynman et al. |
| 2009/0137304 A1 | | 5/2009 | Yacenda |
| 2009/0144161 A1 | | 6/2009 | Fisher |
| 2009/0227320 A1 | | 9/2009 | McBride |
| 2009/0239657 A1 | | 9/2009 | Ryan et al. |
| 2009/0247281 A1 | | 10/2009 | Voutes |
| 2010/0062826 A1 | | 3/2010 | Walker et al. |
| 2010/0069136 A1 | | 3/2010 | Safaei et al. |
| 2010/0082490 A1 | | 4/2010 | Rosenblatt et al. |
| 2010/0093421 A1 | | 4/2010 | Nyman et al. |
| 2010/0075735 A1 | | 5/2010 | Luciano et al. |
| 2010/0151930 A1 | * | 6/2010 | Oram .................. G06Q 30/0207 |
| | | | 463/17 |
| 2010/0203943 A1 | | 8/2010 | Hughes |
| 2010/0222125 A1 | | 9/2010 | Nyman et al. |
| 2010/0255902 A1 | * | 10/2010 | Goldstein .............. G07F 17/32 |
| | | | 463/29 |
| 2010/0264499 A1 | | 10/2010 | Goodelle et al. |
| 2011/0034229 A1 | | 2/2011 | Guziel et al. |
| 2011/0034252 A1 | | 2/2011 | Morrison et al. |
| 2011/0081958 A1 | | 4/2011 | Herrmann et al. |
| 2011/0105213 A1 | | 5/2011 | Irwin et al. |
| 2011/0202419 A1 | | 8/2011 | Mamdani et al. |
| 2011/0246284 A1 | | 10/2011 | Chaikin et al. |
| 2011/0251892 A1 | | 10/2011 | Laracey et al. |
| 2011/0258075 A1 | | 10/2011 | Ciurea et al. |
| 2012/0069471 A1 | | 4/2012 | Comparelli et al. |
| 2012/0089468 A1 | | 4/2012 | Guziel |
| 2012/0184354 A1 | | 7/2012 | Brosnan et al. |
| 2012/0202571 A1 | | 8/2012 | Stanek et al. |
| 2012/0244930 A1 | | 9/2012 | Cage et al. |
| 2012/0264499 A1 | * | 10/2012 | Walker .................. G07F 17/32 |
| | | | 463/19 |
| 2012/0276976 A1 | | 11/2012 | Yoo et al. |
| 2013/0072280 A1 | | 3/2013 | Yacenda |
| 2013/0073388 A1 | | 3/2013 | Heath |
| 2013/0196733 A1 | | 8/2013 | Cage et al. |

# US 10,229,561 B2
Page 3

(56)  **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2013/0196734 A1 | 8/2013 | Cage et al. | |
| 2013/0217462 A1 | 8/2013 | Cage et al. | |
| 2013/0281190 A1 | 10/2013 | Cage et al. | |
| 2014/0066194 A1 | 3/2014 | Cage et al. | |
| 2014/0155172 A1 | 6/2014 | Stoilkovich et al. | |
| 2014/0256422 A9* | 9/2014 | Saunders | A63F 13/12 463/29 |
| 2014/0274314 A1 | 9/2014 | Cage et al. | |
| 2014/0378204 A1 | 12/2014 | Michel et al. | |
| 2015/0238857 A1* | 8/2015 | Amaitis | G07F 17/3218 463/42 |
| 2015/0279156 A1 | 10/2015 | Omar | |
| 2016/0042600 A1* | 2/2016 | Bickley | G07F 17/32 463/25 |
| 2016/0086447 A1 | 3/2016 | Cage et al. | |
| 2016/0086453 A1 | 3/2016 | Cage et al. | |
| 2016/0093137 A1 | 3/2016 | Gaddy | |
| 2017/0076293 A1 | 3/2017 | Cage et al. | |
| 2018/0096558 A1 | 4/2018 | Giunti | |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| CN | 102184501 | 9/2011 |
| EP | 1587014 | 10/2005 |
| WO | 2001099067 | 12/2001 |
| WO | 2004004280 | 1/2004 |
| WO | 2007049283 | 5/2007 |
| WO | 2008092034 | 7/2008 |
| WO | 2012048313 | 8/2012 |
| WO | 2013026997 | 2/2013 |

OTHER PUBLICATIONS

International Search Report and the Written Opinion dated Nov. 20, 2014 of International Patent Application No. PCT/US2014/022877.
Supplemental extended Search Report dated Feb. 27, 2015 in European patent application No. 13744174.7.
Vlugt, Erik: "NFC: The "Presence + Intention" Bridge: The Verifone Blog", Apr. 11, 2011, XP55170410.
Tainton, Tom: "Smart Card News", Jun. 1, 2011, XP55168606.
International Search Report and Written Opinion from PCT/US2012/061744 dated Jun. 10, 2014.
International Search Report and Written Opinion from PCT/US2008/051955 dated Aug. 1, 2008.
International Search Report and Written Opinion of PCT/US2013/024475 dated Apr. 12, 2013.
Office Action dated Mar. 25, 2016 in Chinese Patent Application No. 201380057172.6.
Partial Supplementary European Search Report dated Aug. 26, 2015 of European Patent Application No. 12844370.2.
Office Action dated Jul. 27, 2013 in Chinese Patent Application No. 200880009639.9.
Extended European search report dated Dec. 22, 2015 of European patent application 12844370.2.

Substantive Examination Report dated Mar. 2, 2016 in Philippines patent application No. 1/2014/500913.
Notice of Acceptance dated Dec. 1, 2015 in Australia Patent Application No. 2012328881.
Notification of Grant dated Oct. 16, 2015 in Singapore Patent Application No. 11201401751V.
Acceptance of Complete Specification dated May 14, 2015 in South Africa Patent Application No. 2014/03419.
Extended European search report dated Sep. 23, 2016 in European patent application 14770551.1.
Extended European search report dated Jan. 21, 2016 in European patent application 13835153.1.
U.S. Appl. No. 11/734,207.
U.S. Appl. No. 13/280,196.
U.S. Appl. No. 13/757,512.
U.S. Appl. No. 13/829,776.
U.S. Appl. No. 13/839,469.
U.S. Appl. No. 13/839,558.
U.S. Appl. No. 13/842,709.
U.S. Appl. No. 14/018,276.
U.S. Appl. No. 14/856,421.
U.S. Appl. No. 14/958,715.
U.S. Appl. No. 14/958,720.
International Preliminary Report on Patentability dated Mar. 10, 2015 of International Patent Application No. PCT/US2013/058078.
International Preliminary Report on Patentability dated Sep. 15, 2015 of International Patent Application No. PCT/US2014/022877.
International Preliminary Report on Patentability dated Jun. 10, 2014 of International Patent Application No. PCT/US2012/061744.
International Preliminary Report on Patentability dated Jul. 28, 2009 of International Patent Application No. PCT/US2008/051955.
International Preliminary Report on Patentability dated Sep. 15, 2015 of International Patent Application No. PCT/US2013/024475.
EP Register European Patent Application No. 14770551.1.
EP Register European Patent Application No. 13835153.1.
EP Register European Patent Application No. 08713986.1.
Australian Patent Application No. 2008207887.
Australian Patent Application No. 2012328881.
Office Action dated May 12, 2016 for Chinese Patent Application No. 2012800064355.
EP Register European Patent Application No. 12844370.2.
EP Register European Patent Application No. 13744174.7.
Office Action dated Sep. 7, 2016 for Chinese Patent application No. 201380018680.
U.S. Appl. No. 15/614,486.
U.S. Appl. No. 15/614,490.
Substantive Examination Report dated Sep. 5, 2017 in Philippines patent application No. 1/2015/500472.
U.S. Appl. No. 62/104,844 entitled "Methods for Selling Pre-Printed Online Lottery Tickets," by Gino Giunti, filed Jan. 18, 2015.
International Search Report of PCT/US2018/018071 dated Jul. 16, 2018; 10 pgs.
Written Opinion of the International Searching Authority of PCT/US2018/018071 dated Jul. 16, 2018; 19 pgs.

* cited by examiner



FIG. 1





**FIG. 3**

**FIG. 4A**

**FIG. 4B**



**FIG. 5A**



FIG. 5B

FIG. 6A

FIG. 6B

FIG. 6C



700
FROM FIGS. 7B, 7C
B
MOBILE APPLICATION ANNOUNCES ABILITY TO PLAY GAME
702
USER SELECTS "PLAY GAME" OPTION
MOBILE APPLICATION PROMPTS USER FOR IDENTIFICATION INFORMATION
704
USER CANCELS
701
USER ENTERS APPROPRIATE INFO
MOBILE APPLICATION PROMPTS USER FOR AGE
706
USER CANCELS
701
USER INDICATES AGE
MOBILE APPLICATION PRESENTS AVAILABLE GAMES
708
USER CANCELS
701
USER SELECTS GAME
MOBILE APPLICATION PRESENTS GAME OPTIONS
710
USER CANCELS
701
USER SELECTS OPTION
MOBILE APPLICATION PRESENTS COSTS AND LEGAL INFORMATION
712
USER CANCELS
701
USER SCANS BARCODE
MOBILE APPLICATION SENDS INFORMATION TO GAMING FACILITATOR
713
C
TO FIG. 7B

FIG. 7A



C
FROM FIG. 7A
720
MOBILE APPLICATION SENDS INFORMATION TO GAMING FACILITATOR
GAMING FACILITATOR VERIFIES INFORMATION FORMAT
722
GAMING FACILITATOR VERIFIES LOCATION OF USER
723
GAMING FACILITATOR DETERMINES USER PREFERENCES
724
726
HAS CARDHOLDER OPTED OUT OR HIT SPENDING LIMIT?
GAMING FACILITATOR REQUESTS TRANSFER OF FUNDS
727
PAYMENT PROCESSOR DETERMINES PIN AND AVAILABLE FUNDS
GAMING FACILITATOR RECEIVES RESPONSE FROM PAYMENT PROCESSOR
728
NO
WAS TRANSFER SUCCESSFUL?
730
YES
SEND MESSAGE BACK TO MOBILE APPLICATION TO DISPLAY TO USER
738
GAMING FACILITATOR DETERMINES NUMBERS
732
B
TO FIG. 7A
REQUEST FOR TICKETS AND GAME INFORMATION SENT TO LOTTERY OPERATOR
D
TO FIG. 7C

FIG. 7B



FROM FIG. 7B
D
740
REQUEST FOR TICKETS AND GAME INFORMATION
LOTTERY OPERATOR VALIDATES INFORMATION AND GENERATES TICKETS
742
744
WERE TICKETS GENERATED OKAY?
NO - REQUEST FUNDS REVERSAL
PAYMENT PROCESSOR REVERSES FUNDS BACK TO USER ACCOUNT
756
YES
GAMING FACILITATOR STORES INFORMATION
746
SEND MOBILE APPLICATION INFORMATION INDICATING TRANSACTION WAS NOT SUCCESSFUL
SEND INFORMATION
MOBILE APPLICATION DISPLAYS MESSAGE
738
MOBILE APPLICATION PROMPTS USER ABOUT RECEIPT?
USER SELECTS PRINT RECEIPT
MOBILE APPLICATION PRINTS RECEIPT
748
USER SELECTS SEND ELECTRONICALLY
752
MOBILE APPLICATION SENDS ELECTRONIC RECEIPT
750
B
TO FIG. 7A

FIG. 7C



800
E
FROM FIGS. 8B, 8C
MOBILE APPLICATION ANNOUNCES ABILITY TO PLAY GAME
802
USER SELECTS "PLAY GAME" OPTION
USER CANCELS
801
MOBILE APPLICATION ASKS USER TO INPUT IDENTIFICATION INFORMATION (SUCH AS SWIPING A DEBIT CARD AND ENTERING THEIR PIN)
804
805
SYSTEM CANCELS
801
YES
HAS CARDHOLDER OPTED OUT OR HIT SPENDING LIMIT?
NO
USER ENTERS APPROPRIATE INFORMATION
USER CANCELS
801
MOBILE APPLICATION ASKS USER TO VERIFY THEIR AGE IF NOT DERIVED FROM EARLIER INPUT
806
USER INDICATES AGE
MOBILE APPLICATION SENDS CARD INFORMATION TO GAMING FACILITATOR
808
USER CANCELS
801
MOBILE APPLICATION PRESENTS AVAILABLE GAMES
810
USER SELECTS GAME
USER CANCELS
801
MOBILE APPLICATION PRESENTS GAME OPTIONS
812
USER SELECTS OPTION
USER CANCELS
801
MOBILE APPLICATION PRESENTS COSTS AND LEGAL DISCLOSURES
814
MOBILE APPLICATION SENDS INFORMATION TO TERMINAL HOST
SCAN BARCODE
815
F
TO FIG. 8B

FIG. 8A



FROM FIG. 8A

MOBILE APPLICATION SENDS
INFORMATION TO TERMINAL HOST

820

MOBILE APPLICATION HOST DETERMINES THIS
IS A GAMING FACILITATOR TRANSACTION — 822

HOST FORWARDS INFORMATION
TO GAMING FACILITATOR

GAMING FACILITATOR VERIFIES
INFORMATION FORMAT — 824

GAMING FACILITATOR
VERIFIES LOCATION OF USER — 825

826
HAS CARDHOLDER
OPTED OUT OR HIT
SPENDING LIMIT?

GAMING FACILITATOR
REQUESTS TRANSFER OF FUNDS — 827

PAYMENT PROCESSOR
DETERMINES PIN AND
AVAILABLE FUNDS

GAMING FACILITATOR RECEIVES
RESPONSE FROM PAYMENT PROCESSOR — 828

NO          WAS TRANSFER
SUCCESSFUL?

830

SEND MESSAGE BACK TO
MOBILE APPLICATION TO
DISPLAY TO USER

YES

GAMING FACILITATOR DETERMINES NUMBERS — 832

838          E          REQUEST FOR TICKETS AND
GAME INFORMATION SENT
TO LOTTERY OPERATOR
TO FIG. 8A

FIG. 8B          G          TO FIG. 8C



FROM FIG. 8B
G
840
REQUEST FOR TICKETS AND GAME INFORMATION
LOTTERY OPERATOR VALIDATES INFORMATION AND GENERATES TICKETS
842
844
WERE TICKETS GENERATED OKAY?
NO - REQUEST FUNDS REVERSAL
PAYMENT PROCESSOR REVERSES FUNDS BACK TO USER ACCOUNT
856
YES
GAMING FACILITATOR STORES INFORMATION
846
SEND MOBILE APPLICATION INFORMATION INDICATING TRANSACTION WAS NOT SUCCESSFUL
SEND INFORMATION
MOBILE APPLICATION DISPLAYS MESSAGE
838
MOBILE APPLICATION PROMPTS USER ABOUT RECEIPT?
USER SELECTS PRINT RECEIPT
MOBILE APPLICATION PRINTS RECEIPT
848
USER SELECTS SEND ELECTRONICALLY
852
MOBILE APPLICATION SENDS ELECTRONIC RECEIPT
850
E
TO FIG. 8A

FIG. 8C



900
TERMINAL 910
PAYMENT PROCESSOR 920
PAYMENT PROCESSOR DATA CENTER
923
921
FIREWALL
GAMING FACILITATOR REPORTING DATA CENTER 930
932
934
936
931
FIREWALL
REPORTING SYSTEM
REPORTING DATABASE
FIREWALL
GAMING AUTHORITY 940
944
946
REPORTING INTERFACE
TRANSACTION VALIDATION DATABASE
GAMING AUTHORITY COMET
942
941
FIREWALL
FIREWALL
950
GAMING AUTHORITY OPERATORS
LOTTERY OPS
954
956
FEP
958
LOTTERY TERMINALS
FIREWALL
951
952
FIREWALL
960
FIREWALL
967
961
ATM INTERFACE/ COMET
ENCRYPTION
FIREWALL
970
FIREWALL
968
963
FINANCIAL PROCESSOR COMET
DECRYPTION
FIREWALL
971
FIREWALL
969
965
GAMING FACILITATOR REPORTING DATA CENTER COMET
FIREWALL
972
980
GAMING FACILITATOR TRANSACTION DATA CENTER
FIREWALL
973
LOTTERY LOGIC
982
CORE LOGIC
986
984
TRANSACTION LOGIC
LOGGING SECURITY
990
FIREWALL
975
GAMING FACILITATOR DATABASE
988
974
FIREWALL
GAMING FACILITATOR FEP

FIG. 9



100
133
130
101
125
127
PROCESSOR
GAMING FACILITATOR
GAMING SYSTEM
122
132
FINANCIAL SYSTEM
121
129
1034

FIG. 10

1110
RECEIVING INFORMATION ASSOCIATED WITH A GAME-PLAYING TRANSACTION CONDUCTED, VIA A BLE INTERFACE, BETWEEN A USER DEVICE AND A GAME-PLAYING TERMINAL, WHEREIN THE GAME-PLAYING TRANSACTION IS ASSOCIATED WITH A REQUEST FOR PLAYING A GAME
1120
DETERMINING A LOCATION OF THE USER DEVICE ASSOCIATED WITH THE GAME
1130
DETERMINING THE USER DEVICE IS LOCATED IN AN APPROVED LOCATION ASSOCIATED WITH THE GAME
1140
PROCESSING THE GAME-PLAYING TRANSACTION BASED ON DETERMINING THE USER DEVICE IS LOCATED IN THE APPROVED LOCATION ASSOCIATED WITH THE GAME

FIG. 11



FIG. 12



FIG. 13



FIG. 14



FIG. 15



FIG. 16



FIG. 17



High Tier Win!

Congrats you won!

Winning numbers for 12/15/2015:

29   26   13   29   3   (14)

You matched 5 numbers.
Your winnings total:       $100,000

COLLECT MY WINNINGS

Winnings Collection

Collecting your money is simple
Follow the steps below and go to an
office near you.

Instructions

Find an office nearest you to collect
your winnings and remember to
bring the following items:

- Your winning lottery card

- Your mobile device you used to
win the game

- Your state identification (driver's
license, for example)

That's it!

36

FIG. 18



FIG. 19



2000
2001
MERCHANT
ACCOUNT NUMBER
AUTHORIZATION CODE
2003
TRANSACTION PROCESSING NETWORK
GAME PLAYS, PURCHASE PRICE
LOTTERY CARD ISSUER
2005
ACTIVATION CODE, DEVICE ID
DIGITAL LOTTERY TICKET
LOTTERY CARD HOLDER
VALUE ADDED NETWORK
GAME PLAY REDEMPTION
GAME ENTRIES, DRAW RESULTS
LOTTERY SYSTEM
RESULT NOTIFICATION, PRIZE PAYMENT
2007
2009
2011

FIG. 20

2101
LOTTERY SYSTEM
2100
CONFIRMATION CODE
2105
2107
2109
ACCOUNT NUMBER, VERIFICATION CODE
VERIFIED CLAIM NOTIFICATION
VERIFICATION DEVICE
VALUE ADDED NETWORK
LOTTERY TICKET ISSUER
DIGITAL LOTTERY TICKET, VERIFICATION CODE
LOTTERY PLAYER
PLAYER DEVICE
2111
2103

FIG. 21



FIG. 22



FIG. 24



**FIG. 23**



2500
2501
POINTS OF SALE
1
2
3+
ACCOUNT NUMBER
AUTHORIZATION CODE
2503
TRANSACTION AUTHORIZATION NETWORK
2505
LOTTERY ACCOUNT ISSUER
GAME PLAY REDEMPTION
2507
LOTTERY GAME PROCESSORS
GAME PLAYS, PURCHASE PRICE
2509
LOTTERY PLAYER DEVICE
ACTIVATION CODE
DIGITAL LOTTERY TICKETS
2511
VALUE ADDED NETWORK

FIG. 25

2600
2601
POINTS OF SALE
1
2
3+
ACCOUNT NUMBER
AUTHORIZATION CODE
2603
TRANSACTION AUTHORIZATION NETWORK
2605
LOTTERY ACCOUNT ISSUER
GAME PLAY REDEMPTION
2607
LOTTERY GAME PROCESSORS
GAME PLAYS, PURCHASE PRICE
2609
LOTTERY PLAYER DEVICE
ACCOUNT CODE
DIGITAL LOTTERY TICKETS
2611
VALUE ADDED NETWORK

FIG. 26



FIG. 27



FIG. 28



FIG. 29



**FIG. 30**



**FIG. 31**



**FIG. 32**



**FIG. 33**



FIG. 34



**FIG. 35**



**FIG. 36**



FIG. 37

FIG. 38

FIG. 39

FIG. 40

US 10,229,561 B2

1

# PROCESSING OF A USER DEVICE GAME-PLAYING TRANSACTION BASED ON LOCATION

## CROSS-REFERENCE TO RELATED APPLICATIONS

This application is a continuation-in-part of, and claims priority to U.S. application Ser. No. 15/818,569, filed Nov. 20, 2017, which is a continuation-in-part of, and claims priority to U.S. application Ser. No. 15/614,490, filed Jun. 5, 2017, issued as U.S. Pat. No. 9,824,340 on Nov. 21, 2017, which is a continuation-in-part of, and claims priority to, U.S. patent application Ser. No. 14/958,720 filed on Dec. 3, 2015, issued as U.S. Pat. No. 9,672,697 on Jun. 6, 2017, which is a continuation-in-part of, and claims priority to, U.S. patent application Ser. No. 14/018,276 filed on Sep. 4, 2013, issued as U.S. Pat. No. 9,227,136 on Jan. 5, 2016, which claims priority to U.S. Provisional Patent Application No. 61/696,533 filed on Sep. 4, 2012, all the disclosures of which are hereby incorporated by reference in their entirety for all purposes. U.S. application Ser. No. 15/614,490, filed Jun. 5, 2017, issued as U.S. Pat. No. 9,824,340 on Nov. 21, 2017, which is incorporated by reference herein in its entirety, is a continuation-in-part of, and claims priority to, U.S. patent application Ser. No. 14/856,421, filed Sep. 16, 2015, the disclosure of which is hereby incorporated by reference in its entirety for all purposes. U.S. application Ser. No. 15/818,569, filed Nov. 20, 2017, is a non-provisional of and claims benefit of U.S. Provisional Application No. 62/458,457, filed on Feb. 13, 2017, the disclosure of which is incorporated by reference in its entirety for all purposes.

## TECHNICAL FIELD

This disclosure generally relates to game play systems.

## BACKGROUND

Many governments have passed laws permitting lottery games to be legalized within their borders. These laws are due to the public support for this style of entertainment. Currently, these games are presented through specific manned terminals that connect to lottery operators—corporations responsible for running the lottery games. While these games have proven to be popular, a large segment of the population does not participate. This is due to many factors including a lack of desire to interact with personnel running the game kiosks, the inconvenience of the manned terminals, the concern over losing a ticket, and, more recently, the lack of cash to play the games as many people are only using payment cards for purchases.

In addition, due to regulatory restrictions, the sale of lottery products is restricted to be within the borders of the government regulating the lottery games. Therefore, existing sales solutions used on mobile devices such as handheld devices and smart phones are not appropriate for the sale of the lottery games because they lack assurances that the mobile device is located within the borders of the government regulating the lottery game.

## SUMMARY

In some embodiments, a device is provided for approving game-playing transactions. The device comprises a first communication interface, the first communication interface comprising a Bluetooth interface such as a Bluetooth Low Energy (BLE) interface; a second communication interface; and a processor configured to: receive a first request from a user of the device, the first request being associated with a game; conduct, over the first communication interface, a first transaction, the first transaction comprising reception of first information over the first communication interface, and send, over the second communication interface, a second request associated with the game. The first request or the second request is approved based on: determining a location associated with conducting the first transaction or sending the second request, and determining the location is an approved location associated with the game.

In some embodiments, the device is further configured to prompt a user of the device to play the game in response to determining the device is with a threshold distance of a beacon with which the first transaction is conducted. In some embodiments, the beacon may be a Bluetooth interface such as BLE terminal.

In some embodiments, the second communication interface comprises a Wi-Fi or cellular interface.

In some embodiments, the device is comprised in or part of a motor vehicle.

In some embodiments, the second request comprises at least one of a purchase request, the first request, or the first information.

In some embodiments, the location is determined based on global positioning system (GPS) coordinates of the device.

In some embodiments, the device comprises a mobile device or a non-mobile device.

In some embodiments, the second request is approved further based on determining a period of validity associated with the first information has not expired.

In some embodiments, the second request is approved further based on: determining a gaming authority associated with the game; and determining the user is located in an approved jurisdiction associated with the gaming authority for the game.

In some embodiments, the location is determined based on input received at the device.

In some embodiments, the second communication interface is associated with longer range communication compared to the first communication interface.

In some embodiments, the location is determined by at least one of the device or by a second device that receives the second request from the device.

In some embodiments, a method is provided for processing game-playing transactions. The method comprises receiving information associated with a game-playing transaction conducted, via a Bluetooth interface such as a BLE interface, between a user device and a game-playing terminal, wherein the game-playing transaction is associated with a request for playing a game; determining a location of the user device associated with the game; determining the user device is located in an approved location associated with the game; and processing the game-playing transaction based on determining the user device is located in the approved location associated with the game. The game-playing transaction is conducted on a first communication interface, and the information associated with the game-playing transaction is received on a second communication interface.

In some embodiments, the user device comprises a game-playing application.

In some embodiments, the game comprises a lottery game.

US 10,229,561 B2

3

In some embodiments, the method further comprises determining a period of validity associated with the information has not expired, and processing the game-playing request based on determining the period of validity associated with the information has not expired.

In some embodiments, the method further comprises processing the game-playing transaction based on: determining a merchant associated with the location of the user device or the game-playing terminal; cross-referencing a list of approved merchants associated with the location of the user device or the game-playing terminal; and determining the merchant is present on the list of approved merchants.

In some embodiments, the game-playing terminal comprises either an electronic game-playing terminal or a non-electronic game playing terminal.

In some embodiments, another device is provided for processing game-playing transactions. The device is configured to receive information associated with a game-playing transaction conducted, via a Bluetooth interface such as a BLE interface, between a user device and a game-playing terminal, wherein the game-playing transaction is associated with a request for playing a game using the user device; and process the game-playing transaction based on determining the user device is located in an approved location associated with the game, wherein the location of the user device is determined either by the device or the user device. The game-playing transaction is conducted on a first communication interface, and the information is received on a second communication interface.

In some embodiments, the second communication interface is associated with longer-range communication compared to the first communication interface.

In some embodiments, the game-playing transaction comprises a game-requesting transaction or a game-purchasing transaction.

In some embodiments, a non-transitory computer readable medium may be encoded thereon with a program or code that when executed by a processor (e.g., a general or special purpose processor) of a user device (or any other device described herein), causes the processor to perform the various methods described herein.

In some embodiments, a device is provided for processing game-playing transactions. The device comprises a first communication interface; a second communication interface; and a processor configured to: receive a first request from a user of the device, the first request being associated with a game; conduct, over the first communication interface, a first transaction, the first transaction comprising transmission or reception of first information over the first communication interface, and send, over the second communication interface, a second request associated with the game. The first request or the second request is processed based on: determining a location associated with conducting the first transaction or sending the second request, and determining the location is an approved location associated with the game.

In some embodiments, the first communication interface comprises at least one of a Bluetooth interface, a near-field communication (NFC) interface, or a code-based interface.

In some embodiments, the second communication interface comprises a Wi-Fi or cellular interface.

In some embodiments, the first communication interface and the second communication interface are the same communication interface.

In some embodiments, the second request comprises at least one of a purchase request, the first request, or the first information.

4

In some embodiments, the location is determined based on global positioning system (GPS) coordinates of the device.

In some embodiments, the device comprises a mobile device or a non-mobile device.

In some embodiments, the second request is approved further based on determining a period of validity associated with the first information has not expired.

In some embodiments, the second request is approved further based on: determining a gaming authority associated with the game; and determining the user is located in an approved jurisdiction associated with the gaming authority for the game.

In some embodiments, the second communication interface is associated with longer range communication compared to the first communication interface.

In some embodiments, the location is determined by at least one of the device or by a second device that receives the second request from the device.

In some embodiments, a method is provided for processing game-playing transactions. The method comprises receiving information associated with a game-playing transaction conducted between a user device and a game-playing terminal, wherein the game-playing transaction is associated with a request for playing a game; determining a location of the user device associated with the game; determining the user device is located in an approved location associated with the game; and processing the game-playing transaction based on determining the user device is located in the approved location associated with the game. The game-playing transaction is conducted on a first communication interface, and the information associated with the game-playing transaction is received on a second communication interface.

In some embodiments, the first communication interface comprises at least one of a Bluetooth interface, a near-field communication (NFC) interface, or a code-based interface.

In some embodiments, the game comprises a lottery game.

In some embodiments, the method further comprises determining a period of validity associated with the information has not expired, and processing the game-playing request based on determining the period of validity associated with the information has not expired.

In some embodiments, the method further comprises processing the game-playing transaction based on: determining a merchant associated with the location of the user device or the game-playing terminal; cross-referencing a list of approved merchants associated with the location of the user device or the game-playing terminal; and determining the merchant is present on the list of approved merchants.

In some embodiments, the game-playing terminal comprises either an electronic game-playing terminal or a non-electronic game playing terminal.

In some embodiments, a device is provided for processing game-playing transactions. The device is configured to: receive information associated with a game-playing transaction conducted between a user device and a game-playing terminal, wherein the game-playing transaction is associated with a request for playing a game using the user device; and process the game-playing transaction based on determining the user device is located in an approved location associated with the game, wherein the location of the user device is determined either by the device or the user device. The game-playing transaction is conducted on a first communication interface, and the information is received on a second communication interface.

US 10,229,561 B2

5

In some embodiments, the first communication interface comprises at least one of a Bluetooth interface, a near-field communication (NFC) interface, or a code-based interface.

In some embodiments, the game-playing transaction comprises a game-requesting transaction or a game-purchasing transaction.

According to another embodiment, a non-transitory computer readable medium may be encoded thereon with a program that when executed by a processor of a user device, causes the processor to perform a method that may comprise receiving a game play request from a user, obtaining barcode information associated with a barcode at a location, and sending a gaming request including the barcode information and associated with the game play request over a wireless network to a gaming facilitator.

These and other advantages of the present disclosure will become apparent to those skilled in the art from the following detailed description, the accompanying drawings, and the appended claims.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a schematic diagram illustrating a game play system, in accordance with some embodiments.

FIG. 2A is a schematic diagram illustrating a communications exchange server, in accordance with some embodiments.

FIG. 2B is a schematic diagram illustrating a communications exchange server, in accordance with some embodiments.

FIG. 3 is a flow diagram illustrating a process for a game play, in accordance with some embodiments.

FIGS. 4A and 4B are flow diagrams illustrating methods for verifying the location of a mobile device, in accordance with some embodiments.

FIGS. 5A and 5B are schematic diagrams illustrating processes for game play, in accordance with some embodiments.

FIGS. 6A, 6B and 6C are schematic diagrams illustrating input systems, in accordance with some embodiments.

FIGS. 7A, 7B, and 7C are flow diagrams illustrating processes for a mobile application-based play of a lottery system presented game, in accordance with some embodiments.

FIGS. 8A, 8B, and 8C are flow diagrams illustrating processes for a host-based play and mobile application-based play where the mobile application has a substantially constant connection of an automated lottery system presented game, in accordance with some embodiments.

FIG. 9 is a schematic diagram illustrating a gaming facilitator system, in accordance with some embodiments.

FIG. 10 is a schematic diagram illustrating another game play system, in accordance with some embodiments.

FIG. 11 is a flow diagram illustrating a method for processing game-playing transactions, in accordance with some embodiments.

FIG. 12 is a block diagram of a gaming provider system, in accordance with some embodiments.

FIG. 13 illustrates the back of a lottery gift card and a screen shot of a mobile device texting a short code to initiate a text messaging session with a gaming facilitator, in accordance with some embodiments.

FIG. 14 illustrates a screen shot of the mobile device text messaging session with the gaming facilitator sending a lottery number set generated by a gaming system, in accordance with some embodiments.

6

FIG. 15 illustrates a screen shot of the mobile device notifying the user of winning and confirming the identity of the user, in accordance with some embodiments.

FIG. 16 illustrates screen shots of the mobile device during payment by a third party payment provider for a low tier win, in accordance with some embodiments.

FIG. 17 illustrates screen shots of the mobile device during payment by a third party payment provider for a low tier win, in accordance with some embodiments.

FIG. 18 illustrates a screen shot of the mobile device providing instructions for payment for a high tier win, in accordance with some embodiments;

FIG. 19 illustrates a method for providing a gaming transaction using the gaming provider system of FIG. 12 or using any other system described herein, in accordance with some embodiments.

FIG. 20 is a block diagram of a gaming provider system and process, in accordance with some embodiments.

FIG. 21 is a block diagram of a winner verification system and process, in accordance with some embodiments.

FIG. 22 is a block diagram of an event-driven lottery player marketing system and process, in accordance with some embodiments.

FIG. 23 is a block diagram of a lottery prize exchange system and process, in accordance with some embodiments.

FIG. 24 is a block diagram of an event-driven lottery messaging system and process, in accordance with some embodiments.

FIG. 25 is a block diagram of a multi-jurisdictional gaming provider system and process, in accordance with some embodiments.

FIG. 26 is a block diagram of a multi-game entry gaming provider system and process, in accordance with some embodiments.

FIG. 27 is a block diagram of a location-aware gaming provider system and process, in accordance with some embodiments.

FIG. 28 is a block diagram of another gaming provider system, in accordance with some embodiments.

FIG. 29 is a block diagram of another gaming provider system, in accordance with some embodiments.

FIG. 30 shows an unscratched gaming card, according to some embodiments.

FIG. 31 shows a front side of a scratched gaming card, according to some embodiments.

FIG. 32 shows a back side of a gaming card, according to some embodiments.

FIG. 33 shows a gaming network environment, according to some embodiments.

FIG. 34 is a perspective view of a lottery card (or gaming card), in accordance with some embodiments.

FIG. 35 is a front view of a lottery card, in accordance with some embodiments.

FIG. 36 is a back view of a lottery card, in accordance with some embodiments.

FIG. 37 is a side view (e.g., right side view) of a lottery card, in accordance with some embodiments.

FIG. 38 is another side view (e.g., left side view) of a lottery card, in accordance with some embodiments.

FIG. 39 is a top view of a lottery card, in accordance with some embodiments.

FIG. 40 is a bottom view of a lottery card, in accordance with some embodiments.

DETAILED DESCRIPTION

The disclosed systems and methods make lottery games accessible to a larger segment of the population by providing

US 10,229,561 B2

7

8

an end-to-end lottery solution for integrated game play and sale of lottery products on, for example, hand held devices and smart phones using barcode technology. A player operates an application on a mobile device, which may be provided for download or supplied with the device, that allows them to select lottery games and ticketing options. In some embodiments, the selection can be made at any time and location. The selections are recorded, for example in a virtual shopping cart, by the lottery application on the mobile device. The player purchases these recorded items at locations that are, for example, pre-approved by a gaming facilitator and/or a gaming authority. The locations are equipped to verify the presence of the mobile device at the location using a barcode technology. Redemption of winning plays can be automatically deposited into an account associated with the player or at a retail location by use of, for example, a barcode sent to the mobile device.

The use of barcode technology with an application distributed to mobile devices allows for the following exemplary advantages:

Issuing and managing a trusted execution environment.

Assigning trusted area within a trusted execution environment to a specific service.

Managing keys for a trusted execution environment.

Securely downloading lottery applications to enabled mobile phones, for example by scanning a barcode and directing the user to a secure website to download the application.

Personalizing applications.

Locking, unlocking and deleting the lottery application according to requests from a user or service provider.

Providing secure logging and accounting settlement of all lottery transactions.

The gaming facilitator enables secure data storage of lottery transactions at the device level using, for example, a Universal Integrated Circuit Card (UICC) through processing and transaction confirmation.

The UICC is a physically secure device, an integrated circuit (IC) card, or smart card, that can be inserted and removed from terminal equipment or a mobile device. The UICC may contain one or more applications and may be referred to using different terminology in different territories. A Subscriber Identity Module (SIM) is an application on the UICC containing a mobile subscriber's unique identity.

FIG. 1 is a schematic diagram illustrating a representative embodiment of a game play system 100. A user 101 may interact with a mobile device 121. The mobile device 121 may be, for example, a handheld device or smart phone that is already familiar to the user 101 and presents a familiar interface to lottery games. The mobile device 121 may include a processor 122 that is configured to execute programming that may be stored on and/or provided to the mobile device 121. The mobile device 121 is equipped to use barcode technology thereby being able to read a barcode 123 using, for example, a camera 130 of the mobile device 121. Alternatively, or in addition, the mobile device 121 may be configured to display a barcode 132 on a display 133 of the mobile device 121 to be read by barcode reader 134.

By way of example, the barcode 123 or barcode reader 134 may be located at an ATM, a gas pump, or any other retail location. The mobile device 121 may be in communication with the gaming facilitator 125, which may be in communication with the gaming system 127. The mobile device 121 may also be in communication system with the financial system 129 directly and/or through the gaming facilitator 125. The financial system 129 may include, but is

not limited to, payment processors, issuer banks, acquirer banks, payment rails, credit networks, etc. The gaming system 127 may include, but is not limited to, a gaming authority, a gaming operator (for example, state lottery operators), a gaming commission (for example, a state lottery commission), etc.

According to another embodiment, the game could be a location-specific game such as Keno or Bingo. In this embodiment, the gaming system 127 would be the computer or system that draws the number for game play. The gaming facilitator 125 would allow the user 101 to interact with the gaming system 127 at the facility. Thus, a user 101 could select a series of numbers on the mobile device 121 and store those numbers for the next gaming play. At the appropriate time, the user 101 would take the mobile device 121 to the barcode reader 134 to communicate the numbers to the gaming system 127 for play. For example, the user 101 may select a button displayed on the display 133 that causes the mobile device 121 to generate a barcode that encodes the numbers and display the barcode on the screen. The barcode reader 134 can then obtain the numbers by reading the barcode. Alternatively, the mobile device 121 may communicate the numbers to the gaming facilitator 125 in association with a reference identification assigned by the mobile device 121 or the gaming facilitator 125 for the game play. The barcode displayed by the mobile device 121 encodes this reference identification thereby enabling the retrieval and identification of the numbers when the barcode reader 134 reads the barcode, which includes the encoded reference identification.

Communications Exchange Server

To sell gaming (or more particularly lottery) tickets through point of sale devices, a communication network is used for communications between a gaming facilitator and gaming partners. Gaming partners are partners that the gaming facilitator interacts with to complete a gaming transaction, such as the gaming system or the financial system. This communication network may have desirable characteristics such as being designed to be secure, reliable, and fast. In an embodiment, each gaming partner may have their own protocol for communicating with and between their systems, servers, and remote devices. Some gaming partners utilize public protocols (e.g., ISO8583) while other gaming partners have generated their own proprietary protocols. To ensure the security of each partner's data and protocols, a server for exchanging communications between a gaming facilitator and a gaming partner may be used.

FIG. 2A is a schematic diagram of a communications exchange server 200 that exchanges communications between a gaming facilitator 217 and a gaming partner 201. The communications 203, 215 may include transaction-specific gaming information. In some embodiments, the communications exchange server 200 is an inbound communications server (as shown) for receiving and sending communications at a gaming facilitator 217 to and from a gaming partner 201. The communications 215 between the gaming facilitator 217 and the communications exchange server 200 are multiple connections which represents a series of parallel requests. The communications 203 between the communications exchange server 200 and the gaming partner 201 are a single connection which represents a series of serialized requests. In those embodiments, the communications exchange server may be located at the gaming facilitator.

In some embodiments, the communications exchange server 200 is an outbound communications server (not shown) for receiving and sending communications at a

9

gaming facilitator **217** to and from a gaming partner **201**. The communications between the gaming facilitator **217** and the communications exchange server **200** are a single connection which represents a series of serial requests. The communications between the communications exchange server **200** and the gaming partner **201** are multiple connections which represent a series of parallel requests. In those embodiments, the communications exchange server may be located at a gaming partner's site, for example, at a Lottery Operator. A gaming facilitator may send a single request to a communications exchange server that a Lottery Operator send a number of tickets (e.g., "give me 20 tickets"). The communications exchange server may turn that request into a number of requests for one ticket (e.g., 20 requests of, "give me one ticket"), resulting in a number of tickets (e.g., 20 tickets) being generated.

FIG. **2B** is a more detailed schematic diagram of a communications exchange server **200** that exchanges communications between a gaming facilitator **217** and a gaming partner **201**. The device **200** may include a translation module **205**, encryption and decryption module **209**, memory module **211**, processing (CPU) module **207**, multiplexer **212**, and demultiplexer **213**. The translation module **205** may translate communications between a gaming facilitator **217** and a gaming partner **201** by translating between a communication protocol used by the gaming partner **201** (e.g., a proprietary format of the gaming partner **201**) and a communication protocol used by the gaming facilitator **217** (e.g., a proprietary format of the gaming facilitator **217**). The encryption and decryption module **209** may encrypt and/or decrypt communications **215** between the gaming facilitator **217** and gaming partner **201**. For example, data arriving at connection **215** from the gaming facilitator **217** may be encrypted. The encryption and decryption module **209** may decrypt the data such that it can be processed by the communications exchange server at the processor **207**. Encryption keys may be used and may be updated at arbitrary times. Further, it may be desired that outgoing data at connection **215** to the gaming facilitator **217** or at connection **203** to the gaming partner **201** be encrypted before it is sent. Accordingly, the encryption and decryption module **209** may encrypt the data according to encryption protocols used by the gaming partner **201** and/or gaming facilitator **217**. The memory module **211** may store information from the communications **203**, **215** between the gaming facilitator **217** and gaming partner **201**. The memory module **211** may also store gaming information. In an embodiment, the memory module **211** is a cache for storing gaming information and Bank Information. The cache **211** may store non-transaction specific gaming information. The cache **211** may also store game-related logic or a portion of game-related logic. The memory module **211** may also be program memory including logic or instructions accessible by the processor module **207**. The processing module **207** may process the communications **203**, **215** between the gaming partner **201** and the gaming facilitator **217**. The translation module **205**, encryption and decryption module **209**, memory module **211**, and processing module **207** are communicatively connected.

As discussed above, the communications exchange server **200** may be considered as an inbound or an outbound communications server. Inbound communications at connection **215**, from one or more gaming partners **201** to a gaming facilitator **217** may be multiplexed by the multiplexer **212**. Outbound communications at connection **203**

10

from the gaming facilitator **217** to the one or more gaming partners **201** may be demultiplexed by the demultiplexer **213**.

FIG. **2B** depicts a single translation module **205**, memory module **211**, CPU module **207**, encryption and decryption module **209**, and communications exchange server **200** for simplicity purposes only. At any point of connection between a gaming facilitator **217** and a gaming partner **201**, multiple communications exchange servers **200** may be used for a variety of reasons including, but not limited to, redundancy, speed or efficiency of the system, failure diagnostics, ease of system upgradeability, system back-ups, network monitoring, etc. Further, each communications exchange server **200** may include multiple of any modules in the server **200**. For example, in some embodiments, the communications exchange server **200** includes multiple memory modules **211** and multiple CPU modules **207**. The communications exchange server **200** may be made of one or more machines, one or more motherboards, one or more memory modules, etc.

In an embodiment, the communications exchange server **200** is a computer that translates the gaming partner's communication protocol into a gaming facilitator specific protocol, thereby substantially eliminating the exposure of the partner's protocol to an outside entity. A communications exchange server **200** may be placed at a gaming partner's data center, either inside or outside of the gaming partner's firewall depending upon a gaming partner's preference. The communications exchange server **200** connects to gaming facilitator data centers over a gaming facilitator provided connection. In an embodiment, the gaming facilitator provided connection is a high speed, private connection (e.g., an MPLS connection). While this type of connection provides some inherent security, communications to and from the gaming facilitator may be encrypted to provide an additional layer of protection.

Non-transaction specific information (images, game rules, game information, etc.) may be cached on the device **200** in memory module **211**, which allows for rapid access to cached data. For transaction specific information, data may be passed from the gaming partner **201** to the communications exchange server **200** which then encrypts the data and passes the request to a gaming facilitator **217** via a gaming facilitator provided connection.

The communications exchange server **200** may be used with a variety of gaming partners **201** including, but not limited to, lottery authorities, banking systems, and other payment systems. Further, the communications exchange server **200** may be located at a gaming partner location or at a gaming facilitator location.

User Registration

In an embodiment, a gaming facilitator system may include a user registration server. The user registration server allows users to register with the gaming facilitator system. Registering may allow users to check to see their play history, set spending limits, to select favorite numbers to be played, and to configure how they wish to be notified of their play status. In an embodiment, users may have an online account with the gaming facilitator system in which they may register, configure and make selections for their account with the gaming facilitator system.

Information identifying the registration of the associated information (the play history, spending limits, favorite numbers, notification configuration, etc) may be stored on the gaming facilitator system or on the mobile device **121** as a part of or in association with a gaming application stored on the mobile device **121**.

11

Play Overview

FIG. **3** is a high-level flow diagram illustrating a process for a gaming system transaction such as a lottery transaction. At action **301**, the mobile device **121** obtains the gaming application. The application may be obtained directly or indirectly from the gaming facilitator **125**. The gaming application can be obtained at anytime prior to gaming purchase.

The action **301** may be omitted if the mobile device already has the gaming application. For example, the gaming application may be preloaded on the mobile device **121** at the time of purchase of the mobile device **121**.

At action **303**, the user **101** selects a game type and ticketing option for gaming play. Game types include but are not limited to lottery play including draw, instant, and any other games offered by the jurisdiction's gaming authority. Other games may include location-specific games, such as Keno or Bingo. The jurisdiction's gaming authority may limit the available game types to approved game types. The selecting of ticketing options may include a number of tickets, numbers played, etc.

In some embodiments, the user **101** can select the game type and ticketing options at any time and in any location even prior to entering an approved retail location. In these embodiments, the gaming application may store the selected game type and ticketing options in, for example, a virtual shopping cart to be recalled at a later time to complete the transaction. The gaming application may also record previous selections and favorite selections such as favorite numbers to allow easier selection by the user **101**.

At action **305**, the end user presses a "ready to play" or checkout button in the mobile application. The game play system **100** verifies the location of the mobile device **121** and facilitates the user **101**'s gaming purchase using a method such as those described in FIGS. **4A** and **4B**.

FIG. **4A** is a flow diagram illustrating a first exemplary method for verifying the location of the mobile device **121** and facilitating the user **101**'s gaming purchase.

At action **401**, the gaming application prompts the user to scan a barcode at the location. The barcode may be scanned by a peripheral device attached to the mobile device **121** or by the camera **130** of the mobile device **121**. The barcode may be a static barcode displayed at the location, for example on a poster or on a gas pump, or a dynamic barcode generated by a device, such as an ATM or a display incorporated in a gas pump, at the location. The barcode may be valid only for a period of time preventing the reuse of an old barcode at another location.

At action **403**, the gaming application sends a gaming request including the selected game type and ticketing option along with the scanned barcode information to the gaming facilitator **125** using a mobile network such as Wi-Fi or CDMA/GSM. The scanned barcode information may include the barcode itself as an image file or as information encoded within the barcode that is decoded by the gaming application prior to sending the request.

At action **405**, the gaming facilitator **125** processes a location verification of the mobile device **121**, checks game availability, play limits and other lottery game play parameters. Location verification can be performed by a variety of means. According to one embodiment, the merchant may be required to be included on a list of pre-approved merchants to vend gaming tickets at the location. This list can be maintained by an appropriate authority, such as a facilitator or gaming authority. The gaming facilitator **125** cross-references the scanned barcode information to determine if the scanned barcode information corresponds with the loca-

12

tion. The gaming facilitator **125** may also cross-reference a period of validity associated with the scanned barcode information to confirm that the scanned barcode is a recent and valid barcode.

According to another embodiment, location verification can be performed by other technology within the mobile device, such as GPS or radio tower triangulation. Ultimately, most gaming facilitators will need to take sufficient steps to confirm that the purchaser of the tickets is physically located within the jurisdiction of the gaming authority to avoid any legal complications associated with selling gaming tickets outside of the jurisdiction of the gaming authority.

At action **407**, the gaming facilitator **125** processes transaction payment through, for example, an integrated standardized ticketing system with eWallet platforms or a direct gateway to payment processing partners. The mobile application may also process payment using other methods at a retail location, such as through the use of a Near Field Communications (NFC) Transaction Anchor Point (TAP). In some embodiments, the gaming facilitator **125** communicates with the payment processing partners to obtain payment.

FIG. **4B** is a flow diagram illustrating a second exemplary method for verifying the location of the mobile device **121** and facilitating the user **101**'s gaming purchase.

At action **451**, the gaming application sends a gaming request including the selected game type and ticketing option to the gaming facilitator **125** using a mobile network such as Wi-Fi or CDMA/GSM. The gaming request is identifiable based on content or a reference identifier assigned by the gaming application or the gaming facilitator **125**. Thus, communication between the mobile device **121** and the gaming facilitator **125** may be one or two way. Note that as explained below, this step is optional in some embodiments.

At action **453**, the gaming application generates a barcode encoding the reference identifier and displays the barcode on the display **133**.

At action **455**, the user presents the displayed barcode to a terminal at the location. The terminal may be, for example, an ATM machine, a gas pump, or a stand alone device. The terminal reads the barcode displayed on the mobile device **121** and sends a notification to the gaming facilitator **125** that the barcode was read at the location. The terminal may send an image of the barcode or information encoded by the barcode that is decoded by the terminal.

In another embodiment, the barcode generated by the mobile application includes some or all of the information included in the gaming request, which may reduce the amount of information that is sent from the mobile device **121** to the gaming facilitator **125** with a larger portion of the information in the gaming request then being sent by the terminal that reads and decodes the barcode to the gaming facilitator. In the case where all of the information in the gaming request is encoded in the barcode, it is not necessary for the mobile device **121** to itself send any information to the gaming facilitator **125** (the information being sent by the terminal reading the barcode) nor is the reference identifier needed. The mobile device **121** may also transmit information to the terminal over a short range wireless connection such as WiFi or Bluetooth to reduce the amount of information encoded in the barcode.

At action **457**, the gaming facilitator **125** processes a location verification of the terminal if needed or required by the gaming system to verify eligibility of play at the location of the terminal, checks game availability, play limits and other lottery game play parameters.

US 10,229,561 B2

13

14

At action **459**, the gaming facilitator **125** processes transaction payment through, for example, an integrated standardized ticketing system with eWallet platforms or a direct gateway to payment processing partners. The mobile application may also process payment using other methods at a retail location, such as through the use of a Near Field Communications (NFC) transaction anchor point (TAP). In some embodiments, the gaming facilitator **125** communicates with the payment processing partners to obtain payment.

Returning now to FIG. **3**, at action **307**, upon payment authorization, the gaming facilitator **125** sends the ticket request to a computerized gaming system (CGS), such as gaming system **127**. The gaming system may use a Random Number Generator (RNG) to produce the gaming play. In an embodiment using a "Virtual Instant Ticket," the RNG may not be used but the purchase will be sent to the CGS for processing and balancing. The gaming system **127**, in communication with the gaming facilitator **125**, verifies and completes the gaming transaction. According to another embodiment, pre-existing or favorite numbers can be entered or stored in the mobile device **121** or at the gaming facilitator **125**. These numbers are sent to the gaming system **127** at step **307**.

At action **309**, the gaming facilitator **125** sends the gaming transaction information to the Internal Control System (ICS) of the gaming system **127** for independent logging. This action is not always requested and may not be present in some embodiments.

At action **311**, the gaming facilitator **125** sends a notification of the purchase status to the gaming application. This notification may include, for example, numbers played, ticket serial number, date of draw, and payment authorization code along with other transaction specific information. In some embodiments the notification includes a numeric redemption code, a scannable barcode such as a QR code, or any other type of redeemable code that can be securely sent to the mobile application along with the notification. The barcode or redemption code can be used after a draw to check and claim winning numbers at an existing gaming/lottery terminal or retail location.

In the case where the transaction was not able to be completed, information notifying of the failure to complete may be sent to the mobile device **121**. The notification may include other information associated with the failure, for example, what exception caused the failure.

In some embodiments, automated paperless receipts are provided to indicate numbers and games played. This notification may be sent via multiple methodologies including email, wireless delivery to mobile devices utilizing SMS text or device specific applications, RSS feed, or feeds into Twitter, Facebook or other social media accounts.

The notification may also include an automated remote notification that may be sent to the user **101** indicating play status (winner, winner of a certain amount of money, winner with manual redemption, non-winner, winning numbers, what the winning numbers were if the game was lost, game jackpots, game statistics, and other statistics). Notifications may be sent directly to the user **101** through the gaming application as well as via wireless delivery to a mobile device or email address using, for example, SMS text, email, RSS feed to Twitter, Facebook or other social media account, through device specific apps (i.e. iPhone, BlackBerry, or PDA apps) and, through automated lottery system web sites.

Redemption

When the user **101** wins a game, the user **101** will want to redeem his or her winnings. At action **313**, a winner identification interface of the mobile application utilizes transaction data to query data from the gaming facilitator **125** to find winning ticket numbers. The data may be separated into three categories: non-winning tickets, winning tickets available for auto-redemption, and winning tickets available for manual claims. An additional winner verification system that a lottery facilitator may provide may be used by a game administrator to verify the integrity of tickets and to validate that a presented ticket is a winner for items that are manually claimed. The gaming facilitator **125** obtains the queried data from the gaming system **127** and provides it to the mobile application.

At action **315**, the mobile application facilitates the redemption of winnings. Redemption may be completed using a variety of methods selected based on, for example, a selection of a preferred method by the user **101** or the amount of the winnings.

As a first example, the mobile application may provide for the display of the barcode received in the notification in connection with action **311**. A retail location can then read the barcode to verify the win and provide the winnings.

As a second example, the winnings are automatically deposited to an account associated with the user **101**. In some embodiments, the user **101** may tap the mobile device **121** to a NFC TAP to initiate a transfer of funds through financial system **129**. An eWallet system may also be accessed for an auto-deposit of winning tickets through a point of sale terminal, debit, and/or credit network to allow for the redemption of winning tickets under a taxable or manually verifiable limit via a pin-less debit card or credit card transaction. A unique terminal number may be used for this transaction, and a pin or card may or may not be used for completion of the transaction.

FIG. **5A** is a schematic diagram illustrating a process for a game play. At action **501**, the mobile device **121** downloads the mobile application from the gaming facilitator **125**. At action **503**, the user **101** uses the mobile application running on the mobile device **121** to select game play and ticketing options. The user **101** may make the game play and ticketing option selections at anytime prior to entering an approved retail location. At action **505**, the user **101** presses a checkout or ready to play button displayed on the mobile device **121**. At action **507**, the user scans the barcode **123** displayed at the retail location. At action **509**, the mobile device **121** sends a request associated with the game play request including the barcode information to the gaming facilitator **125**. The request may include an image of the barcode, a value representing information encoded by the barcode, or other information to verify that the user was in a location at which the barcode was displayed.

At action **511**, the gaming facilitator **125** verifies the location of the mobile device **121** based on the barcode information provided in the game play request. As mentioned previously, the physical location of the user and the mobile device at the time of the payment transaction can have implications for the legality of the transaction, depending upon the laws of the jurisdiction in which the gaming authority is operating.

At action **513A**, the gaming facilitator **125** processes payment authorization through a direct gateway with financial system **129**. In other embodiments, payment may be processed directly between the mobile device **121** and the financial system **129** as shown in action **513B**. In still other embodiments, payment may be processed by tapping the mobile device **121** to a Near Field Communications (NFC)

US 10,229,561 B2

15

16

Transaction Anchor Point (TAP) **520** as shown in action **513**C. In this embodiment, the NFC TAP **520** initiates the payment instruction to the financial system **129**, as shown in action **513**D.

At action **515**, the gaming facilitator **125** sends a ticketing request to the gaming system **127**, for example the lottery authority in the jurisdiction, which verifies and completes the gaming transaction.

At action **517**, the gaming facilitator **125** sends ticket information and confirmation to the mobile device **121**.

At action **519**, the gaming facilitator **125** sends gaming processing and balancing information including transaction logs to the gaming system **127**.

FIG. 5B is a schematic diagram illustrating a process for a game play. At action **551**, the mobile device **121** downloads the mobile application from the gaming facilitator **125**. At action **553**, the user **101** uses the mobile application running on the mobile device **121** to select game play and ticketing options. The user **101** may make the game play and ticketing option selections at anytime prior to entering an approved retail location. At action **555**, the user **101** presses a checkout or ready to play button displayed on the mobile device **121**. The mobile application generates a barcode that is displayed on the screen of the mobile device **121**. At action **557**, the user scans the barcode displayed on the screen of the mobile device **121** at a terminal **570** installed at the retail location. The barcode may encode some or all of the information associated with the game play request. The terminal **570** may be an ATM machine, a gas pump, a stand alone device, etc. At action **559**A, the mobile device **121** sends a request associated with the game play request to the gaming facilitator **125**. The request may include some or all of the information encoded in the barcode. At action **559**B, the terminal **570** sends transaction information to the gaming facilitator **125** informing the gaming facilitator **125** of the transaction with the mobile device **121**. The transaction information may include some or all of the information encoded by the barcode. The request may include an image of the barcode, a value representing information encoded by the barcode, or other information to verify that the user was in the location at which the barcode was read.

For example, the barcode may include an identifier number that is preassigned to the mobile device **121** or randomly generated. The mobile device **121** may send the gaming request including all the game play parameters and the identifier number to the gaming facilitator **125**. In such an embodiment, the terminal **570** may only send the identifier decoded from the barcode to the gaming facilitator **125**. In receipt of this information, the gaming facilitator **125** obtains the game play request information and the information needed to verify that the mobile device **121** was in the same location as the terminal **570**. In other embodiments, the mobile application may encode all of the game play request information in the barcode read by the terminal **570**. In such an embodiment, it is not necessary that the mobile device **121** sends any information to the gaming facilitator **125** and all of the information needed to obtain the game play request and verify that the mobile device **121** is in the same location as the terminal **570** can be provided to the gaming facilitator **125** by the terminal **570**. It will be appreciated that the information transmitted to the gaming facilitator **125** by the mobile device **121** and the terminal **570** may be apportioned between these devices in any of a number of ways and the above discussion is exemplary in nature.

At action **561**, the gaming facilitator **125** verifies the location of the mobile device **121** based on the barcode information provided by the terminal **570**. As mentioned previously, the physical location of the user and the mobile device at the time of the payment transaction can have implications for the legality of the transaction, depending upon the laws of the jurisdiction in which the gaming authority is operating.

At action **563**A, the gaming facilitator **125** processes payment authorization through a direct gateway with financial system **129**. In other embodiments, payment may be processed directly between the mobile device **121** and the financial system **129** as shown in action **563**B. In still other embodiments, payment may be processed by tapping the mobile device **121** to a Near Field Communications (NFC) Transaction Anchor Point (TAP) **572** as shown in action **563**C. In this embodiment, the NFC TAP **572** initiates the payment instruction to the financial system **129**, as shown in action **563**D. In embodiments where the terminal **570** is capable of performing financial transactions, such as an ATM or a device equipped with a bill reader, the terminal **570** may register the transaction with the financial system **129** at action **563**E and accept the payment from the user.

At action **565**, the gaming facilitator **125** sends a ticketing request to the gaming system **127**, for example the lottery authority in the jurisdiction, which verifies and completes the gaming transaction.

At action **567**, the gaming facilitator **125** sends ticket information and confirmation to the mobile device **121**.

At action **569**, the gaming facilitator **125** sends gaming processing and balancing information including transaction logs to the gaming system **127**.

The above-described playing processes allow for gaming purchases such as lottery games on mobile devices while providing the assurances and verification that the sale of the gamine products occurred within the borders of the government regulating the games.

In some embodiments, the gaming facilitator **125** provides a retailer signup program as part of the mobile application. Prior to the sale of gaming (e.g., lottery) tickets a retail location or merchant may be required to be included on a list of pre-approved locations or merchants. This list can be maintained by an authority appropriate to ensure that the geographic location of the retail location or merchant has been confirmed. This could be the gaming facilitator or the gaming authority.

Embodiments of the terminal **570** may include an existing ATM or NFC device at a retailer, a dedicated gaming/lottery device at the retailer, or a device placed in conjunction with a new or existing lottery terminal.

Application Logic

Lottery system logic may reside at a device associated with the lottery system, such as the terminal or the gaming facilitator, within the gaming application on the mobile device, or both at the device and the host.

FIG. 6A is a schematic diagram illustrating a host-based input system **610**. With the host-based terminal **610**, the mobile device **611** is a user input/display device. The application logic **614** that determines what happens with each input and provides decision-making for what to display to the user occurs on a remote host **612**. The host **612** contains automated lottery system logic and may gather the user input by providing the appropriate screens to the mobile device **611** (for example, to a gaming application running on the mobile device **611**) and forwarding the user input to the gaming facilitator **613** either through an intermediary communications exchange server (not shown) or to the gaming facilitator **613** directly.

FIG. 6B is a schematic diagram illustrating a terminal-based input system **620**. Terminal-based input systems have

US 10,229,561 B2

17                                                                18

automated lottery system application logic **624** on the mobile device **621**, for example as part of the mobile application stored on the mobile device **621**. Accordingly, the mobile device **621** has the ability to walk a user through the game process and may then send the information that the user has selected to a gaming facilitator **623** either through an intermediary communications exchange server (not shown) or to the gaming facilitator directly.

FIG. **6C** is a schematic diagram illustrating a hybrid-based input system **630**. Hybrid-based input systems have some application logic **634A** stored at the mobile device **631**, for example as part of the mobile application stored on the mobile device **631**, to gather user input and display the game specific parameters, but also rely on some application logic **634B** stored at a remote host **632** to control the automated lottery system flow. An example of this is a cell phone with an automated lottery system application where the application on the phone controls the layout of the screen, receives user input, and performs basic validation (e.g., prevents the user from inputting text into numeric fields). But the cell phone may communicate with a host **632** to determine the order of the screens to display. The remote host **632** may communicate with a gaming facilitator **633** either through an intermediary communications exchange server (not shown) or with the gaming facilitator directly.

FIGS. **7A**, **7B**, and **7C** are flow diagrams **700**, **720**, **740** illustrating a process for a mobile application-based play of an lottery system presented game. At action **702**, a mobile application announces the ability for a user to play a game. In some embodiments, the mobile application may present a screen indicating that the mobile application is capable of providing game plays to the user. If a user decides to play a game, the mobile application requests that the user input identification information at action **704**. For example, the mobile application may ask the user for their preferred language at action **704**. For example, the mobile application may request that the user swipe a debit card and enter their debit card pin or provide information regarding an account with an eWallet platform at action **704**.

The mobile application may optionally request that the user verify their age at action **706** if the user's age has not been verified by previous input at the mobile application. The mobile application may also optionally present a list of game options available through the mobile application at action **708**. The list may include games that will become available at a future time and an indication that those games will be available in the future.

At action **710**, the mobile application may present options for the selected game. For example, the mobile application may present the number of tickets available for purchase, game play times available, etc. at action **710**. The terminal may also ask the user whether they would like to have their numbers sent to them or a link to their numbers sent to them. The mobile application presents the cost associated with the user's selections as well as any necessary legal disclosures at action **712**. At any point in the process, the user may cancel the transaction at action **701**.

The user scans a barcode at the retail location, and at action **713**, the mobile application sends gaming information collected from the user to a gaming facilitator at action C. The barcode may be static displayed at the retail location on a sign or display or it may be dynamic generated by a terminal device such as an ATM or gas pump. The user may be required to make a selection following a prompt displayed on the terminal to request that the terminal display the barcode. In embodiments where the terminal generates a dynamic (for example random) barcode, the terminal may

inform the gaming facilitator and/or gaming authority that the barcode has been generated along with an identifier to identify the barcode. The generated barcode may be valid only for a limited time. Static barcodes may also be valid only for a limited time.

As discussed above, in some embodiments, the mobile application displays the barcode, which is read by a terminal at the retail location at action **713**. The terminal then informs the gaming facilitator of the read barcode.

The gaming facilitator may verify information format of the information sent by the terminal at action **722**. For example, at action **722**, the gaming facilitator may determine whether the information is sufficient and complete for a certain game play. The gaming facilitator may also ensure that the information is not corrupt. The gaming facilitator may also verify a user's age if their driver's license was presented at the terminal. If a driver's license is required by the game, but was not presented at the terminal, the gaming facilitator may cancel the transaction. If the transaction is canceled, the terminal may display a cancel message indicating the reason for the cancellation.

At action **723**, the gaming facilitator verifies the location of the user. For example, the gaming facilitator may verify the location of the terminal that generated the barcode by referring to a pre-approval of the terminal with the gaming facilitator and/or the lottery authority. The gaming facilitator may also refer to a list of barcodes that are currently valid.

The gaming facilitator may also confirm the location of the retail location at which the barcode was read in embodiments where the mobile application generates the barcode.

At optional action **724**, the gaming facilitator may look up the user to determine preferences for that user. These preferences can include a list of pre-stored or favorite numbers to be used in the game play. Other preferences can include whether the user desires automatic redemption of winning plays, or manual redemption through the delivery of a redemption code to the mobile device **121**.

At optional action **726**, the gaming facilitator may determine whether the user has opted out of the gaming system, whether the user has already hit their spending limit for a certain time period, etc. If either determination is affirmatively made at optional action **726**, then the gaming facilitator sends a message back to the mobile application to display to the user at action **738** and the process may begin again with the same or a new user at action B. If the determination is not affirmatively made at optional action **726**, then the process continues.

At action **727**, the gaming facilitator may request a transfer of funds for the transaction. For example, the gaming facilitator may request that a payment processor verify the user PIN number, whether enough funds are available in the user account for the transaction, and to transfer the funds. The payment processor determines whether the pin is correct and whether funds are available and sends a response to the gaming facilitator. The gaming facilitator receives the response from the payment processor at action **728**. The response may include, for example, verification from the payment processor whether the PIN is correct, whether funds are available, and/or whether the funds were transferred. If the gaming facilitator receives verification that the PIN is correct, that sufficient funds are available, and that the funds have been transferred at action **730**, the gaming facilitator generates random numbers or uses user-specified numbers for the game play at action **732**. If the gaming facilitator receives notification that the PIN is incorrect, that sufficient funds are not available, or that the funds were not transferred at action **730**, the gaming facili-

US 10,229,561 B2

19

tator sends a message back to the terminal to display to the user at action **738** and the process may begin again with the same or a new user at action A. A request for the desired number of tickets and games along with game information is sent by the gaming facilitator to the lottery operator at action D.

The lottery operator validates information received from the gaming facilitator and generates tickets if the information is validated at action **742**. The gaming facilitator determines whether the tickets were generated correctly at action **744**. If the tickets were not generated correctly, the gaming facilitator requests a funds reversal to the payment processor, and the payment processor may reverse the funds back to the user account at action **756**. The gaming facilitator sends a message back to the mobile application to display to the user at action **738** and the process may begin again with the same or a new user at action B. If the tickets were generated correctly, the gaming facilitator will store game play information at action **746**. The gaming facilitator sends to the terminal game play numbers, transaction numbers, and a confirmation of the transaction. The mobile application may prompt the user to indicate whether to receive a receipt electronically or obtain a barcode for use in redeeming winnings at action **748**. If the mobile device is equipped with a printer or configured to access a printer, the mobile application may prompt the user to indicate whether to receive a printed receipt. If the user selects to print the receipt, the terminal prints the receipt at action **752** and the process may begin again with the same or a new user at action B. If the user selects to receive the receipt electronically, the terminal gathers user information and sends the electronic receipt at action **750**. The process may begin again with the same or a new user at action B.

Host-based mobile applications are mobile applications that receive instructions from a host instead of having internal local logic. Accordingly, a process for a host-based play of a lottery system presented game is slightly different than the mobile application-based play. A host-based terminal is connected to a host from the beginning of a transaction or at each step requiring new information between user actions, whereas a mobile application-based terminal might connect to the host or to a gaming facilitator after certain decisions and actions are taken by a user during a transaction. Being connected earlier allows the host-based mobile application to query a gaming facilitator database for information about the user at an earlier time in the transaction. This is also the case for mobile application-based play flow where the mobile application has a substantially constant connection such as with a network connection like Wi-Fi or CDMA/GSM.

FIGS. **8**A, **8**B, and **8**C are flow diagrams **800**, **820**, **840** illustrating a process for a host-based play (and mobile application-based play where the mobile application has a substantially constant connection) of an automated lottery system presented game. At action **802**, a mobile application announces the ability for a user to play a game. For example, the mobile application may present a screen indicating that the mobile application is capable of providing game plays to the user. If a user decides to play a game, the mobile application requests that the user input identification information at action **804**. In some embodiments, the mobile application may ask the user for their preferred language at action **804**. In some embodiments, the mobile application may request that the user swipe a debit card and enter their debit card pin or provide information regarding an account with an eWallet platform at action **804**.

20

In an embodiment, at optional action **805**, the gaming facilitator may determine whether the user has opted out of the automated gaming system, whether the user has already hit their spending limit for a certain time period, etc. If either determination is affirmatively made at optional action **805**, then the gaming facilitator system cancels the transaction at action **801**. The system may send a message back to the mobile application to display to the user and the process may begin again with the same or a new user at action E. If the determination is not affirmatively made at optional action **805**, then the process continues at action **806**.

The mobile application also requests that the user verify their age at action **806** if the user's age has not been verified by previous input at the terminal. The mobile application sends card information to a gaming facilitator (via a mobile device) at action **808** to determine whether the user is a registered user. The mobile application may present a list of game options available at the user's location at action **810**. The list may include games that will become available at a future time and an indication that those games will be available in the future. At action **812**, the mobile application may present options for the selected game. For example, the mobile application may present the number of tickets available for purchase, game play times available, etc. at action **812**. The mobile application may also ask the user whether they would like to have their numbers sent to them or a link to their numbers sent to them. The mobile application presents the cost associated with the user's selections as well as any necessary legal disclosures at action **814**. At any point in the process, the user may cancel the transaction at action **801**.

The user scans a barcode at the retail location, and at action **815**, the mobile application sends gaming information collected from the user to a terminal host at action F. The barcode may be static displayed at the retail location on a sign or display or it may be dynamic generated by a terminal device such as an ATM or gas pump. The user may be required to make a selection following a prompt displayed on the terminal to request that the terminal display the barcode. In embodiments where the terminal generates a dynamic (for example random) barcode, the terminal may inform the gaming facilitator and/or gaming authority that the barcode has been generated along with an identifier to identify the barcode. The generated barcode may be valid only for a limited time. Static barcodes may also be valid only for a limited time.

As discussed above, in some embodiments, the mobile application displays the barcode, which is read by a terminal at the retail location at action **815**. The terminal then informs the gaming facilitator of the read barcode.

At action **822**, a terminal host determines based on the information sent from the mobile application that the transaction is a gaming facilitator transaction. The host may forward the information to the gaming facilitator. The gaming facilitator may verify information format of the information sent by the mobile application at action **824**. For example, at action **824**, the gaming facilitator may determine whether the information is sufficient and complete for a certain game play. The gaming facilitator may also ensure that the information is not corrupt. The gaming facilitator may also verify a user's age if their driver's license was presented at the terminal. If a driver's license is required by the game, but was not presented at the terminal, the gaming facilitator may cancel the transaction. If the transaction is canceled, the terminal may display a cancel message indicating the reason for the cancellation.

US 10,229,561 B2

21                                                    22

At action **825**, the gaming facilitator verifies the location of the user. For example, the gaming facilitator may verify the location of the terminal that generated the barcode by referring to a pre-approval of the terminal with the gaming facilitator and/or the lottery authority. The gaming facilitator may also refer to a list of barcodes that are currently valid.

The gaming facilitator may also confirm the location of the retail location at which the barcode was read in embodiments where the mobile application generates the barcode.

In an embodiment, at optional action **826**, the gaming facilitator may look up the user to determine preferences for that user. At action **826**, the gaming facilitator may determine whether the user has opted out of the gaming system, whether the user has already hit their spending limit for a certain time period, etc. If either determination is affirmatively made at action **826**, then the gaming facilitator sends a message back to the mobile application (e.g., via the mobile device) host to display to the user at action **838** and the process may begin again with the same or a new user at action E. If the determination is not affirmatively made at action **826**, then the process continues.

At action **827**, the gaming facilitator may request a transfer of funds for the transaction. For example, the gaming facilitator may request that a payment processor verify the user PIN number, whether enough funds are available in the user account for the transaction, and to transfer the funds. The payment processor determines whether the pin is correct and whether funds are available and sends a response to the gaming facilitator. The gaming facilitator receives the response from the payment processor act action **828**. The response may include, for example, verification from the payment processor whether the PIN is correct, whether funds are available, and/or whether the funds were transferred.

The gaming facilitator receives verification from the payment processor whether the PIN is correct, whether funds are available, and/or whether the funds were transferred at action **828**. If the gaming facilitator receives verification that the PIN is correct, that sufficient funds are available, and that the funds have been transferred at action **830**, the gaming facilitator generates random numbers or uses user-specified numbers for the game play at action **832**. If the gaming facilitator receives notification that the PIN is incorrect, that sufficient funds are not available, or that the funds were not transferred at action **830**, the gaming facilitator sends a message back to the terminal (e.g., via the terminal host) to display to the user at action **838** and the process may begin again with the same or a new user at action E. A request for the desired number of tickets and games along with game information is sent by the gaming facilitator to the lottery operator at action G.

The lottery operator validates information received from the gaming facilitator and generates tickets if the information is validated at action **842**. The gaming facilitator determines whether the tickets were generated correctly at action **844**. If the tickets were not generated correctly, the gaming facilitator requests a funds reversal to the payment processor, and the payment processor may reverse the funds back to the user account at action **856**. The gaming facilitator sends a message back to the terminal to display to the user at action **838** and the process may begin again with the same or a new user at action E. If the tickets were generated correctly, the gaming facilitator will store game play information at action **846**. The gaming facilitator sends to the terminal (e.g., via the terminal host) game play numbers, transaction numbers, and a confirmation of the transaction. The terminal may prompt the user to indicate whether to

print a receipt at the terminal or receive a receipt electronically at action **848**. If the user selects to print the receipt, the terminal prints the receipt at action **852** and the process may begin again with the same or a new user at action E. If the user selects to receive the receipt electronically, the terminal gathers user information and sends the electronic receipt at action **850**. The process may begin again with the same or a new user at action E.

FIG. **9** is a schematic diagram illustrating a gaming facilitator system **900**. System **900** may include a terminal **910**, a payment processor **920**, a gaming facilitator reporting data center **930**, a gaming authority **940**, gaming authority operators **950** and gaming facilitator transaction data center **960**.

The gaming facilitator transaction data center **960** is in communication with the terminal **910**, the payment processor **920**, the gaming facilitator reporting data center **930** and the gaming authority **940**. Using alternative connectivity, the gaming facilitator transaction data center **960** may be in communication with the gaming authority operators **950**. In some embodiments, the communication with the gaming facilitator transaction data center **950** may be made via communications exchange servers **961**, **963** and **965**. Firewalls **921**, **931**, **941**, **942**, **951**, **952** and **967-974** provide isolation between various systems and components in the system **900**.

The payment processor **920** may include payment processor data center **923**. The payment processor **920** connects with the gaming facilitator transaction data center **960** via a secure connection (e.g., MPLS or other "private" connection) between the firewall **921** at the payment processor **920** and the firewall **968** at the gaming facilitator transaction data center **960**.

The gaming facilitator reporting data center **930** may include reporting system **934** and reporting database **936**. The gaming facilitator reporting data center **930** connects with the gaming facilitator transaction data center **960** via a secure connection (e.g., MPLS or other "private" connection) between the firewall **931** at the gaming facilitator reporting data center **930** and the firewall **969** at the gaming facilitator transaction data center **960**.

The gaming authority **940** may include a reporting interface **944** and a transaction validation database **946**. The gaming authority **940** connects with the gaming facilitator transaction data center **960** via a secure connection (e.g., MPLS or other "private" connection) between the firewall **941** at the gaming authority **940** and the firewall **973** at the gaming facilitator transaction data center **960**. Also, the gaming authority **940** connects with the firewall **932** of the gaming facilitator reporting data center **930** via a secure connection (e.g., MPLS or other "private" connection.

The gaming authority operators **950** may include a lottery ops (operations) **954**, an FEP **956** and lottery terminals **958**. The lottery ops **954** is in communication with the FEP **956**, which is in communication with the lottery terminals **958**. The gaming authority operators **950** connects with the gaming authority **940** via a secure Ethernet connection (e.g., B to B API) between the firewall **942** at the gaming authority **940** and the firewall **951** at the gaming authority operators **950**. Alternate connectivity may be provided between the firewall **974** of the gaming facilitator transaction data center **960** and the firewall **952** of the gaming authority operators **950**.

The gaming facilitator transaction data center **960** may include a gaming facilitator FEP **980**, core logic **982**, transaction logic **984**, lottery logic **986**, a gaming facilitator database **988** and logging security **990**. The core logic **982**,

US 10,229,561 B2

23                                                    24

the transaction logic **984** and the lottery logic **986** are in communication with one another. The core logic **982** is in communication with the gaming facilitator FEP **980** through firewall **975**. The gaming facilitator database **988** is in communication with the transaction logic **984**. The logging security **990** is in communication with the gaming facilitator **980**, the core logic **982**, the transaction logic **984** and the gaming facilitator database **988**.

It will be appreciated that the above discussion of a ticket, a gaming ticket, a lottery ticket, etc is not limited to a particular type of ticket or transaction and the embodiments described above are applicable to all types of electronically facilitated transactions including, among other things, e-ticketing, the sale of e-tickets, etc.

Referring now to FIG. **10**, in some embodiments, the device **121** (either a mobile device or a non-mobile device) comprises a first communication interface for communicating with a game-playing terminal **1034**. In some embodiments, the game-playing terminal **1034** may be at a gas station. For example, the game-playing terminal **1034** may be integrated into a gas pump or be near a gas pump. Additionally or alternatively, the game-playing terminal **1034** may be located in a store in the gas station. Additionally or alternatively, the game-playing terminal **1034** may be a point-of-sale device, a kiosk, an ATM machine, a coupon terminal, an arcade game-playing machine, a vending machine, etc. In some embodiments, the device **121** may comprise or be comprised in a motor vehicle. The first communication interface comprises a Bluetooth Low Energy (BLE) interface. The game-playing terminal **1034** may be either an electronic or non-electronic terminal and may transmit a code to the device **121** over the first communication interface. Codes from the game-playing terminal **1034** may be transmitted continuously or during certain periods of time (e.g., when activated). A code transmitted from the game-playing terminal **1034** may be a unique identifier for the game-playing terminal **1034**. The reception of the code by the device **121** and/or the transmission of the code by the game-playing terminal **1034** may be referred as a transaction conducted between the device **121** and the game-playing terminal. Once the code is received by the device **121**, the device **121** sends a request to at least one of the gaming facilitator **125** or the financial system **129**. The request may be sent via a second communication interface (e.g., a Wi-Fi or cellular interface). The second communication interface may be associated with longer range communication compared to the first communication interface. The request may be processed based on the location of the device **121** associated with conducting the transaction or sending the request being an approved location associated with the game. The request may be processed by at least one of the device **121**, the game-playing terminal **1034**, the gaming facilitator **125**, or the financial system **129**. The location may be determined by the device **121**, by the game-playing terminal **1034**, by the gaming facilitator **125**, or the financial system **129**. In some embodiments, the location of the device **121** may be determined using GPS coordinates of the device **121**. Multi-factor authentication may be used to determine the location of the device **121**. For example, the location of the game-playing terminal **1034** (e.g., the identity of the game-playing terminal **1034**) may be used along with the GPS coordinates of the device **121** to determine the location of the device **121**.

In some embodiments, the device **121** receives a request from a user of the device. The request may be a game-playing request or a game-purchasing request. Either request may be associated with a mobile game-playing application.

In some embodiments, the mobile game-playing application is initiated on the device **121** upon detecting the presence of the game-playing terminal **1034** within the proximity of the device **121** (e.g., upon detecting a code received at the device **121** from the game-playing terminal **1034**). In some embodiments, the device **121** may be configured to prompt a user to play a game on the mobile device in response to determining the device **121** is within a threshold distance (e.g., radius) of the game-playing terminal **1034**. In some embodiments, the request transmitted via the second communication interface may comprise at least one of the request received from the user of the device or the code received from the game-playing terminal **1034**. In some embodiments, the request is processed (e.g., approved) based on determining a period of validity associated with the code received from the device **121** has not expired. In some embodiments, the request is further processed (e.g., further approved) based on determining a gaming authority associated with the game, and determining the user is located in an approved jurisdiction associated with the gaming authority for the game.

Referring now to FIG. **11**, FIG. **11** presents a method for processing game-playing transactions. At block **1110**, the method comprises receiving (e.g., on a second communication interface) information (e.g., from a user device) associated with a game-playing transaction conducted (e.g., on a first communication interface), via a BLE interface, between a user device and a game-playing terminal. In some embodiments, a BLE interface may refer to any form or type of Bluetooth technology. A BLE interface is not limited to any particular minimum or maximum communication range. A BLE interface is also not limited to any particular minimum or maximum energy. In some embodiments, both the first communication interface and the second communication interface may be the same communication interface such that the information is received via the same communication interface on which the game-playing transaction is conducted. The game-playing transaction is associated with a request for playing a game. At block **1120**, the method comprises determining a location of the user device associated with the game. In some embodiments, the location of the user device is determined by at least one of the user device, the game-playing terminal, or the device that receives (e.g., from the user device) information associated with the game-playing transaction. At block **1130**, the method comprises determining the user device is located in an approved location associated with the game. This determination may be made by the user device or by the device that receives the information associated with the game-playing transaction. At block **1140**, the method comprises processing (e.g., approving) the game-playing transaction based on determining the user device is located in the approved location associated with the game. In some embodiments, processing the game-playing transaction is based on determining an identity of the merchant or game-playing terminal associated with the location of the user device or the game-playing terminal. Once the identity of the merchant or game-playing terminal is determined, the game-playing transaction is approved based on determining the identified merchant or game-playing terminal is on a list of approved merchants or game-playing terminals. In some embodiments, the game-playing terminal (or the merchant) may be identified by accessing a correlation matrix and looking up a corresponding merchant (or game-playing terminal).

In some embodiments, a method is provided for processing game-playing transactions. The method comprises:

US 10,229,561 B2

25

receiving or sending information associated with a game-playing transaction between a user device and a game-playing apparatus, wherein the game-playing transaction is associated with a game; determining a location of the user device or the game-playing apparatus associated with the game-playing transaction; determining the user device or the game-playing apparatus is located in an approved location associated with the game; processing a game-playing transaction or enabling initiation or conduction of the game-playing transaction based on at least one of: determining the user device or the game-playing apparatus is located in the approved location associated with the game based on cross-referencing second location information or identification information, and determining the location matches the second location information or identification information, or determining a period of validity associated with the information has not expired, wherein the game-playing transaction is conducted on a first communication interface, and wherein the information associated with the game-playing transaction is received or sent on the first communication interface or a second communication interface.

In some embodiments, the identification information comprises merchant information.

In some embodiments, the information associated with the game-playing transaction comprises at least one of game-playing request information, pre game-playing transaction information, post game-playing transaction information, in-game information, game information, user information, location information, user device identification information, game-related information, or game-playing apparatus identification information.

In some embodiments, the game-playing transaction comprises at least one of a gaming transaction, a game purchase transaction, a pre-game transaction, a post-game transaction, an in-game transaction, a game-related transaction, a location determining transaction, a user device identifying transaction, or a game-playing apparatus identifying transaction.

In some embodiments, the location comprises or is determined based on global positioning system (GPS) coordinates of the user device or the game-playing apparatus, or location information or identification information of the game-playing apparatus or the user device.

In some embodiments, the user device comprises a mobile computing device.

In some embodiments, the user device comprises a mobile phone.

In some embodiments, the user device comprises a mobile device, and wherein the game-playing apparatus comprises a remote computing apparatus.

In some embodiments, the information associated with the game-playing transaction is received or sent on the first communication interface.

In some embodiments, the user device comprises a mobile device, and wherein the game-playing apparatus comprises a remote computing apparatus.

In some embodiments, the user device comprises a fuel pump, and wherein the game-playing apparatus comprises a remote server.

In some embodiments, the user device comprises a mobile device, and wherein the game-playing apparatus comprises a local computing apparatus.

In some embodiments, the information associated with the game-playing transaction is received or sent on the first communication interface.

In some embodiments, the information associated with the game-playing transaction is received or sent on the second communication interface.

26

In some embodiments, the second communication interface is located between the user device and game-playing apparatus.

In some embodiments, the second communication interface is located between the game-playing apparatus and a remote computing apparatus.

In some embodiments, the first communication interface is located between the user device and the game-playing apparatus.

In some embodiments, the second communication interface is located between the user device and the game-playing apparatus.

In some embodiments, the game-playing apparatus comprises a gaming facilitator.

In some embodiments, the game-playing facilitator comprises a firewall, logging security, core logic, and transaction logic.

In some embodiments, the game-playing apparatus comprises a communications exchange server.

In some embodiments, the game comprises a lottery game.

In some embodiments, the game comprises a non-lottery game.

In some embodiments, the game-playing transaction was conducted between the user device and the game-playing apparatus.

In some embodiments, the user device is integrated with a fuel pump.

In some embodiments, the processing the game-playing transaction or enabling initiation or conduction of the game-playing transaction is based on determining the user device or the game-playing apparatus is located in the approved location associated with the game based on cross-referencing second location information or identification information, and determining the location matches the second location information or identification information.

In some embodiments, the processing the game-playing transaction or enabling initiation or conduction of the game-playing transaction is based on determining a period of validity associated with the information has not expired.

In some embodiments, the location information comprises a parameter, and the second location information comprises a second parameter.

In some embodiments, the receiving or sending information is executed before the game-playing transaction between the user device and the game-playing apparatus.

In some embodiments, the receiving or sending information is executed after the game-playing transaction between the user device and the game-playing apparatus.

In some embodiments, the receiving or sending information is executed substantially simultaneously with the game-playing transaction between the user device and the game-playing apparatus.

In some embodiments, the determining the user device or the game-playing apparatus is located in the approved location associated with the game comprises cross-referencing the second location information or identification information, and determining the location matches the second location information or identification information.

In some embodiments, the first communication interface comprises at least one of a Bluetooth interface, a near-field communication (NFC) interface, a code-based interface, a Wi-Fi interface, or a cellular interface.

In some embodiments, the first communication interface and the second communication interface are the same communication interface.

US 10,229,561 B2

27 28

In some embodiments, the location is determined based on global positioning system (GPS) coordinates of the device.

In some embodiments, the user device comprises a non-electronic user device or wherein the game-playing apparatus comprises a non-electronic game-playing apparatus.

In some embodiments, the user device or the game-playing apparatus comprises at least one of a pump, an ATM, a servicing station, a retail station, a local computing apparatus, or a remote computing apparatus.

In some embodiments, the user device or the game-playing apparatus comprises a local computing apparatus and a remote computing apparatus.

In some embodiments, the user device comprises a local computing apparatus and a remote computing apparatus.

In some embodiments, the game-playing apparatus comprises a local computing apparatus and a remote computing apparatus.

In some embodiments, the receiving or sending information comprises receiving or sending information between a second user device and the game-playing apparatus.

In some embodiments, the local computing apparatus comprises a retail station.

In some embodiments, a method is provided for processing game-playing transactions. The method comprises: receiving or sending information associated with a game-playing transaction conducted or to be conducted between a user device and a game-playing apparatus, wherein the game-playing transaction is associated with a game, wherein the game is associated with or comprises second information; determining a location of the user device or the game-playing apparatus associated with the game-playing transaction; determining the user device or the game-playing apparatus is located in an approved location associated with the game; processing a game-playing transaction or enabling initiation or conduction of the game-playing transaction based on at least one of: determining the user device or the game-playing apparatus is located in the approved location associated with the game based on cross-referencing second location information or identification information, and determining the location is consistent with the second location information or identification information, or determining a period of validity associated with the information or the second information has not expired, wherein the game-playing transaction is conducted or is to be conducted on a first communication interface, and wherein the information associated with the game-playing transaction is received or sent on the first communication interface or a second communication interface.

In some embodiments, a method is provided for processing game-playing transactions. The method comprises: receiving or sending information associated with a game-playing transaction conducted or to be conducted between a user device and a game-playing apparatus, wherein the game-playing transaction is associated with a game, wherein the game is associated with or comprises second information; determining a location of the user device or the game-playing apparatus associated with the game-playing transaction; processing a game-playing transaction or enabling initiation or conduction of the game-playing transaction based on at least one of: determining the user device or the game-playing apparatus is located in the approved location associated with the game based on cross-referencing second location information or identification information, and determining the location is consistent with the second location information or identification information, or determining a period of validity associated with the infor-

mation or the second information has not expired, wherein the game-playing transaction is conducted or is to be conducted on a first communication interface, and wherein the information associated with the game-playing transaction is received or sent on the first communication interface or a second communication interface.

In some embodiments, the location is consistent with the second location information or identification information when the location matches the second location information or identification information.

In some embodiments, a method is provided for processing game-playing transactions. The method comprises: receiving or sending information associated with a game-playing transaction between a user device and a game-playing apparatus, wherein the game-playing transaction is associated with a game, wherein the game is associated with or comprises second information; determining a location of the user device or the game-playing apparatus associated with the game-playing transaction; determining the user device or the game-playing apparatus is located in an approved location associated with the game; modifying or configuring the user device or the game-playing apparatus based on the user device or the game-playing apparatus being located in the approved location associated with the game; processing a game-playing transaction or enabling initiation or conduction of the game-playing transaction based on at least one of: determining the user device or the game-playing apparatus is located in the approved location associated with the game based on cross-referencing second location information or identification information, and determining the location is consistent with the second location information or identification information, or determining information associated with the location meets third information (e.g., parameter information), or determining a period of validity associated with the information or the second information has not expired, wherein the game-playing transaction is conducted or is to be conducted on a first communication interface, and wherein the information associated with the game-playing transaction is received or sent on the first communication interface or a second communication interface.

In some embodiments, modifying or configuring the user device or the game-playing apparatus comprises modifying or configuring a user interface of the user device or the game-playing apparatus.

In some embodiments, modifying or configuring the user device or the game-playing apparatus comprises modifying or configuring a hardware element of the user device or the game-playing apparatus.

In some embodiments, modifying or configuring the user device or the game-playing apparatus comprises modifying or configuring a software element of the user device or the game-playing apparatus.

In some embodiments, a method for processing game-playing transactions is provided. The method comprises: receiving or sending information associated with a game-playing transaction between a user device and a game-playing apparatus, wherein the game-playing transaction is associated with a game, wherein the game is associated with or comprises second information; determining a location of the user device or the game-playing apparatus associated with the game-playing transaction; determining the user device or the game-playing apparatus is located in an approved location associated with the game; modifying or configuring the user device or the game-playing apparatus based on the user device or the game-playing apparatus being located in the approved location associated with the

US 10,229,561 B2

29                                          30

game, and based on at least one of: determining the user device or the game-playing apparatus is located in the approved location associated with the game based on cross-referencing second location information or identification information, and determining the location is consistent with the second location information or identification information, or determining a period of validity associated with the information or the second information has not expired, wherein the game-playing transaction is conducted or is to be conducted on a first communication interface, and wherein the information associated with the game-playing transaction is received or sent on the first communication interface or a second communication interface.

In some embodiments, an apparatus is provided for processing game-playing transactions. The apparatus comprises a computing device processor configured for: receiving or sending information associated with a game-playing transaction conducted or to be conducted between a user device and a game-playing apparatus, wherein the game-playing transaction is associated with a game, wherein the game is associated with or comprises second information; determining a location of the user device or the game-playing apparatus associated with the game-playing transaction; determining the user device or the game-playing apparatus is located in an approved location associated with the game; processing a game-playing transaction or enabling initiation or conduction of the game-playing transaction based on at least one of: determining the user device or the game-playing apparatus is located in the approved location associated with the game based on cross-referencing second location information or identification information, and determining the location is consistent with the second location information or identification information, or determining a period of validity associated with the information or the second information has not expired, wherein the game-playing transaction is conducted or is to be conducted on a first communication interface, and wherein the information associated with the game-playing transaction is received or sent on the first communication interface or a second communication interface.

In some embodiments, the user device or the game-playing apparatus comprises at least one of a pump, an ATM, a servicing station, a retail station, a local computing apparatus, a remote computing apparatus, or the apparatus.

In some embodiments, the apparatus comprises at least one of a pump, an ATM, a servicing station, a retail station, a local computing apparatus, a remote computing apparatus, a user device, or the game-playing apparatus.

In some embodiments, the apparatus comprises or is comprised in a gaming facilitator.

In some embodiments, the apparatus comprises or is comprised in a customized gaming facilitator.

In some embodiments, the apparatus comprises or is comprised in a communications exchange server.

In some embodiments, an apparatus is provided for processing game-playing transactions. The apparatus comprises a computing device processor configured for: receiving or sending information associated with a game-playing transaction between a user device and a game-playing apparatus, wherein the game-playing transaction is associated with a game, wherein the game is associated with or comprises second information; determining a location of the user device or the game-playing apparatus associated with the game-playing transaction; determining the user device or the game-playing apparatus is located in an approved location associated with the game; modifying or configuring the user device or the game-playing apparatus based on the user

device or the game-playing apparatus being located in the approved location associated with the game, and based on at least one of: determining the user device or the game-playing apparatus is located in the approved location associated with the game based on cross-referencing second location information or identification information, and determining the location is consistent with the second location information or identification information, or determining a period of validity associated with the information or the second information has not expired, wherein the game-playing transaction is conducted or is to be conducted on a first communication interface, and wherein the information associated with the game-playing transaction is received or sent on the first communication interface or a second communication interface.

In some embodiments, a fuel pump is provided for processing game-playing transactions. The fuel pump comprises a computing device processor associated configured for: receiving or sending information associated with a game-playing transaction between a user device and a game-playing apparatus, wherein the game-playing transaction is associated with a game; determining a location of the user device or the game-playing apparatus associated with the game-playing transaction; determining the user device or the game-playing apparatus is located in an approved location associated with the game; processing a game-playing transaction or enabling initiation or conduction of the game-playing transaction based on at least one of: determining the user device or the game-playing apparatus is located in the approved location associated with the game based on cross-referencing second location information or identification information, and determining the location is consistent with the second location information or identification information, or determining a period of validity associated with the information has not expired, wherein the game-playing transaction is conducted or is to be conducted on a first communication interface, and wherein the information associated with the game-playing transaction is received or sent on the first communication interface or a second communication interface.

In some embodiments, processing a game-playing transaction or enabling initiation or conduction of the game-playing transaction is further based on verifying or validating an identity (e.g., name, age, other identification information) associated with a user of the user device or game-playing apparatus. The identity of the user may be verified or validated using any method, including the method described in U.S. application Ser. No. 14/856,421, filed Sep. 16, 2015, published as US 2017/0076293.

U.S. application Ser. No. 15/614,490, filed Jun. 5, 2017, issued as U.S. Pat. No. 9,824,340 on Nov. 21, 2017, which is incorporated by reference herein in its entirety, is a continuation-in-part of, and claims priority to, U.S. patent application Ser. No. 14/856,421, filed Sep. 16, 2015, the disclosure of which is hereby incorporated by reference in its entirety for all purposes. U.S. application Ser. No. 15/818,569, filed Nov. 20, 2017, is also a non-provisional of and claims benefit of U.S. Provisional Application No. 62/458,457, filed on Feb. 13, 2017, the disclosure of which is incorporated by reference in its entirety for all purposes.

This application also incorporates by reference the entirety of PCT/US18/18071, filed Feb. 3, 2018, for all purposes.

The application also incorporates by reference the entirety of U.S. application Ser. No. 15/818,041, filed Nov. 20, 2017, which is a continuation of, and claims priority to U.S. patent application Ser. No. 15/614,486, filed Jun. 5, 2017, issued as

31                                                                          32

U.S. Pat. No. 9,824,530 on Nov. 21, 2017, which is a continuation of, and claims priority to, U.S. patent application Ser. No. 14/958,715 filed on Dec. 3, 2015, issued as U.S. Pat. No. 9,672,687 on Jun. 6, 2017, which is a continuation of, and claims priority to, U.S. patent application Ser. No. 14/018,276 filed on Sep. 4, 2013, issued as U.S. Pat. No. 9,227,136 on Jan. 5, 2016, which claims priority to U.S. Provisional Patent Application No. 61/696,533 filed on Sep. 4, 2012, all the disclosures of which are hereby incorporated by reference in their entirety for all purposes.

This application also incorporates the entirety of U.S. application Ser. No. 15/818,603, filed Nov. 20, 2017, which is a continuation of and claims priority to Ser. No. 15/818, 569, filed Nov. 20, 2017, which is a continuation-in-part of, and claims priority to U.S. application Ser. No. 15/614,490, filed Jun. 5, 2017, issued as U.S. Pat. No. 9,824,340 on Nov. 21, 2017, which is a continuation-in-part of, and claims priority to, U.S. patent application Ser. No. 14/958,720 filed on Dec. 3, 2015, issued as U.S. Pat. No. 9,672,697 on Jun. 6, 2017, which is a continuation-in-part of, and claims priority to, U.S. patent application Ser. No. 14/018,276 filed on Sep. 4, 2013, issued as U.S. Pat. No. 9,227,136 on Jan. 5, 2016, which claims priority to U.S. Provisional Patent Application No. 61/696,533 filed on Sep. 4, 2012, all the disclosures of which are hereby incorporated by reference in their entirety for all purposes.

The present application incorporates-by-reference the entirety of U.S. application Ser. No. 13/757,512, filed Feb. 1, 2013, published as US 2013/0196733, titled "Systems and Methods for Integrated Game Play Through the Use of Proximity-Based Communication on Smart Phones and Hand Held Devices," for all purposes.

The present application incorporates-by-reference the entirety of U.S. Application No. 61/593,762, filed Feb. 1, 2012, titled "Systems and Methods for Integrated Game Play and Sales of State Sponsored Lottery Products Through the Use of Near Field Communication on Smart Phones and Hand Held Devices," for all purposes.

The present application incorporates-by-reference the entirety of U.S. application Ser. No. 14/856,421, filed Sep. 16, 2015, published as US 2017/0076293, titled "Creating, verification, and integration of a digital identification on a mobile device" for all purposes.

The present application incorporates-by-reference the entirety of U.S. application Ser. No. 13/842,709, filed Mar. 15, 2013, published as US 2014/0274314, titled "Systems and Methods for Integrated Game Play at Payment-Enabled Terminals," for all purposes. The present application incorporates-by-reference the entirety of PCT/US14/22877, filed Mar. 10, 2014, titled "Systems and Methods for Integrated Game Play at Payment-Enabled Terminals," for all purposes.

The present application incorporates-by-reference the entirety of U.S. application Ser. No. 15/055,866, filed Feb. 29, 2016, titled "Validating a Short-Range Mobile Device Transaction Using a Long-Range Mobile Device Transaction," for all purposes.

The present application incorporates-by-reference the entirety of U.S. application Ser. No. 13/280,196, filed Oct. 24, 2011, published as US 2012/0244930, titled "Game Play System for Automated Terminals," for all purposes. U.S. application Ser. No. 13/280,196 claim priority to U.S. application Ser. No. 11/734,207, filed Apr. 11, 2007, titled "Systems and Methods for Providing Lottery Game Play Through an Unmanned Terminal," which claims priority to U.S. Application Ser. No. 60/886,818, filed Jan. 26, 2007, titled "Systems and Methods for Integrating ATM and Lottery

Functions," all of which are incorporated by reference in their entirety for all purposes.

The present application incorporates-by-reference the entirety of PCT/US12/61744, filed Oct. 24, 2012, titled "Game Play System for Automated Terminals," for all purposes. The present application incorporates-by-reference the entirety of U.S. application Ser. No. 13/839,558, filed Mar. 15, 2013, titled "Game Play System for Automated Terminals," for all purposes.

The present application incorporates-by-reference the entirety of U.S. application Ser. No. 13/829,776, filed Mar. 14, 2013, titled "Systems and Methods for Providing Lottery Game Play Through an Unmanned Terminal," for all purposes. The present application incorporates-by-reference the entirety of U.S. application Ser. No. 13/839,469, filed Mar. 15, 2013, titled "Systems and Methods for Providing Lottery Game Play Through an Unmanned Terminal," for all purposes. The present application incorporates-by-reference the entirety of PCT/US08/51955, filed Jan. 24, 2008, titled "Systems and Methods for Providing Lottery Game Play Through an Unmanned Terminal," for all purposes.

In general, the present disclosure relates to gaming provider system and method of operation thereof. The gaming provider system of this disclosure will be described in conjunction with one or more example embodiments. However, the specific example embodiments disclosed are merely provided to describe the inventive concepts, features, advantages and objectives will sufficient clarity to permit those skilled in this art to understand and practice the disclosure. Any part of this disclosure may be used in combination with any other part of this disclosure.

In some embodiments, any game described herein may be an augmented or virtual reality game. In some embodiments, any game described herein may additionally be a video game.

In some embodiments, a user obtains (e.g., purchases) a game-playing card (e.g., a lottery game card) at a retail store, kiosk, etc. The place of purchase may be a physical or electronic store. At a retail checkout terminal (or any other local computing apparatus), an operator or the user may swipe or otherwise transmit information associated with the gaming card to a remote computing apparatus (e.g., a backend server). The information associated with the game-playing card may be transmitted as a data packet. For example, the retail checkout terminal may extract information from the code (e.g., a barcode) of the card, and transmit the extracted information to the remote computing apparatus (e.g., backend server). In other embodiments, the information associated with the code is transmitted from the retail checkout terminal to the remote computing apparatus, and the remote computing apparatus extracts unique identification information associated with the card. The data packet transmitted from the retail checkout terminal may additionally include identification or location information associated with the location or identity of the retail checkout terminal (e.g., store identification information, terminal identification information, network identification information, merchant information, location information, etc.). In some embodiments, this information may be embedded into the card itself. This information may be cross-referenced or compared to approved identification or location information to determine whether the two quantities are consistent with or correspond to (e.g., match) each other (or are mappable to each other). If yes, this means that the data packet (i.e., the data packet received at the remote computing apparatus) is

US 10,229,561 B2

33

received from an approved location (i.e., an approved retail store or terminal) associated with the game associated with the card.

The scratch off code (or alphanumeric indicia which has to be scratched off to be visible) as described herein has a one-to-one relationship with unique identification information of the card, which may be a unique number (e.g., PAN number) associated with the card. When the scratch-off code is received by the backend server, which may be associated with any network described herein, the backend server searches for the unique identification information associated with the received scratch off code. The backend server proceeds to associate the phone number (and/or other mobile device identification information associated with the mobile device that sent the scratch off code such as the mobile device make, model, user, location, operation system, etc., from which the scratch off code is received, etc.) with at least one of the unique identification information of the card or the scratch off code of the card.

There is a one-to-many relationship between mobile device identification information and card identification information because a single mobile device may be associated with one or more game-playing cards associated with one or more gaming partners and/or one or more games and/or one or more approved jurisdictions associated with the games.

Assume a user has exhausted funds on a particular gaming card (e.g., the user has played all games on a particular card). The user now reloads a card at the retail checkout terminal or via any other reloading mechanism (e.g., including via a mobile device). The reloading process may comprise swiping the card at the retail checkout terminal or any other transaction mechanism (e.g., a short-range or long-range wireless transaction) between the card and the computing apparatus such as the retail checkout terminal. The reloading process may include a financial transaction similar to the transaction when the card was initially purchased. A data packet comprising the unique identification information of the card is transmitted to the remote computing apparatus (i.e., the backend server). The backend server identifies or finds the mobile device information (e.g., phone number or any other information described herein) associated with the unique card identification information. The backend server facilitates automatically obtaining a ticket (e.g., automatically purchasing a ticket) from a gaming partner associated with the card, and transmits a ticket associated with the card electronically to the mobile device via any messaging mechanisms described herein.

In some embodiments, one or more elements of any embodiments described herein (e.g., such as messaging features) may be realized using a mobile application. In some embodiments, the reloading of a card may be processed or approved at any retailer (or any retail checkout terminal) in an approved jurisdiction associated with the card or associated with the game associated with the card. In some embodiments, the reloading of a card approved for games in a particular jurisdiction may need to occur in that jurisdiction. In other embodiments, the reloading of a card approved for games in a particular jurisdiction may occur outside that jurisdiction.

In some embodiments, any game-playing card described herein may not have an expiry date. In such embodiments, any funds on a card may be used (e.g., automatically by the backend server) to obtain (e.g., purchase) a ticket (or multiple tickets) for the next draw associated with the game associated with the card. In some embodiments, the backend server obtains a single ticket for each draw. In other embodi-

34

ments, a user of the card may have control over which draw and/or games to participate in using excess or remaining funds on the card. In some embodiments, a period of validity may be associated with a game-playing transaction or game information or any other information described herein.

Some embodiments provide a gaming provider system that can include a gaming facilitator in communication with a network and may include application logic operable to execute a gaming transaction. One or more lottery gift cards can be issued by the gaming provider and each may include a universal product code for barcode scanning for purchase by a user at a retail store. The gaming facilitator can include a card issuing system for tracking purchases and gaming transactions associated with the one or more lottery gift cards. The gaming facilitator can be in communication with at least one mobile device associated with the user through the network for commencing the gaming transaction. The gaming facilitator may be in communication with a gaming system of a jurisdiction for generating the gaming transaction and with a third party payment provider for providing payment to the user. The one or more lottery gift cards can identify at least one lottery game and have a card number and a unique scratch off code and are reusable by the user to initiate the gaming transaction. The one or more lottery gift cards can also each include a short code for entry by the user using the at least one mobile device to initiate a messaging session (e.g., a text messaging session or other messaging session such as through a mobile application) with the gaming facilitator. The unique scratch off code can be unique across all lottery jurisdictions and have one or more characters for entry by the user using the at least one mobile device during the text messaging session. As used herein, a text message may refer to any kind of message, including mobile application messages, etc.

In some embodiments, the gaming facilitator can be configured to log a purchase of the one or more lottery gift cards at the retail store for providing a commission to the retail store and initiate the gaming transaction through the gaming system in response to the user entering the short code in the at least one mobile device. Additionally, the gaming facilitator can be configured to commence a text messaging session with the at least one mobile device, communicate with the at least one mobile device using the text messaging session, and receive the scratch off code as a first user text message during the text messaging session. The gaming facilitator can then be configured to communicate with the gaming system to receive at least one lottery number set generated by the gaming system and transmit a first gaming facilitator text message including the at least one lottery number set to the at least one mobile device in the text messaging session.

In some embodiments, the gaming facilitator can be configured to determine if the at least one lottery number set is a winning lottery number set and determine if the winning lottery number set qualifies as a low tier win or a high tier win. Then, the gaming facilitator can be configured to transmit a second gaming facilitator text message including a notification of winning and a winning link having one or more payment options to the at least one mobile device in response to the at least one lottery number set being the winning lottery number set. The gaming facilitator may also be configured to provide instructions to the user using the text messaging session for payment in response to the winning lottery number set qualifying as the high tier win. The gaming facilitator can be configured to confirm an identity of the user in response to the winning lottery number set qualifying as the low tier win in response to the user

US 10,229,561 B2

35                                                    36

utilizing the winning link and initiate payment to the user through the third party payment provider in response to confirmation of the identity of the user.

As best shown in FIG. 12, a gaming provider system 20 can include a gaming facilitator 22 in communication with a network and may include application logic operable to execute a gaming transaction. The gaming facilitator 22 may include one or more software-customized processors. The gaming facilitator 22 can be in communication with at least one mobile device 24 (e.g., Android® phone, iPhone®, etc.) associated with a user 26 through the network for commencing the gaming transaction. The gaming facilitator 22 may also be in communication with a gaming system 28 of a jurisdiction (and/or of a particular gaming company or partner) for generating the gaming transaction and with a third party payment provider 30 (e.g., PayPal®) for providing payment to the user 26. Alternatively, payment can be provided through automated clearing house (ACH) transfers.

One or more lottery gift cards 32 can be issued by the gaming facilitator 22 and each may include a universal product code (UPC) for barcode scanning (e.g., by a terminal at a retail store) for purchase by the user 26 at a retail store. Any code as described herein may also be referred to as indicia, which can be visual or non-visual indicia. The terminal may be a manned or unmanned checkout station. In some embodiments, the gift card may include another mechanism (e.g., RFID, NFC, Bluetooth, Bluetooth Low Energy, Infrared, cellular, WiFi, etc.) for transmitting the information on the card. In some embodiments, the card may be a physical card. In other embodiments, the card may be an electronic card stored on a mobile device such as a mobile phone, watch, or other mobile or portable computing device. Specifically, the lottery gift cards 32 may be purchased at participating (lottery-enabled) retail stores, known as distribution partners or at point of sale (POS) terminals using any form of payment allowed by the jurisdiction in which the sale takes place (some jurisdictions do not allow credit card payment for lottery games). In some embodiments, the cards may be purchased over the Internet using a computing device such as a mobile computing device. In some embodiments, any payment for any game or card described herein may be an electronic payment using cryptocurrency. The gaming facilitator 22 can include or be associated with a card issuing system (e.g., utilizing a database) for tracking purchases and gaming transactions associated with the one or more lottery gift cards 32. The one or more lottery gift cards 32 can identify at least one lottery game (e.g., on the face of a card) and have a card number 34 (or other card identification information) and are reusable by the user 26 to initiate gaming transactions. After their initial use, value may be added to the lottery gift cards 32 at a retail store, kiosk, or via a mobile device, in order to play future lottery games (i.e., the lottery gift cards 32 are rechargeable). Any mechanism (e.g., swiping, short-range wireless transaction, etc.) used for purchase of the card can be used to reload the card. In some embodiments, users 26 or players can reuse the card multiple times (no limit) across all participating jurisdictions associated with a particular game.

In some embodiments, players may not reload lottery gift cards 32 that have not been played if the reload attempt is within a jurisdiction that is different from the one in which the lottery gift card 32 was purchased and activated. In other embodiments, players may reload gift cards 32 in any jurisdiction, regardless of whether it is the same or different from the jurisdiction where the lottery gift card 32 was purchased and activated. Additional requirements may specify what happens when a reload is delayed at a computing terminal (e.g., POS terminal, mobile terminal, etc.) due to draw breaks, off sale times, and system issues (outages). In all of these scenarios, the reload attempt (lottery purchase attempt) may be retried (e.g., automatically) at the next available open window unless the reload attempt has been previously canceled by the user. In some embodiments, four different lottery gift cards 32 (four different UPCs) may be used to enable the user 26 to play three or five plays for the Powerball® lottery ($6 card value and $10 card value, respectively) or five or ten plays of the Mega Millions® lottery ($5 card value and $10 card value). The lottery gift cards 32 may also display other items such as, but not limited to terms and conditions and instructions for how to play.

The lottery gift card 32 becomes activated once the payment is processed. Specifically, the activation goes from the POS terminal to the network of the gaming facilitator 22. The activation process completes within seconds after the payment is processed; however, the activation of the purchased lottery gift card 32 does trigger the purchase of the corresponding lottery game. Thus, the lottery gift card 32 may be used at a later time or given as a gift to another person. The lottery gift card 32 may include one or more games, each game may be associated with one or more same or different gaming partners or providers. In some embodiments, each game may be associated with one or more jurisdictions. In some embodiments, all games on a lottery card are associated with a single gaming partner and/or a single jurisdiction.

As best shown in FIG. 13, the one or more lottery gift cards 32 each include a unique scratch off code 38 and can also each include a short code 40 (e.g., 26370) for entry by the user 26 using the at least one mobile device 24 to initiate a text messaging session 42 with the gaming facilitator 22. The unique scratch off code 38 can be unique across all lottery jurisdictions and have one or more characters (e.g., eight alphabetic characters) for entry by the user 26 using the at least one mobile device 24 during the text messaging session 42. So, the user 26 can text the scratch off code 38 to the short code 40. In some embodiments, the scratch off code may be some other visual or non-visual indicia stored on the card. In some embodiments, the scratch off code may be input to the mobile device via some other input mechanism (e.g., capturing an image of the code, or some other wireless communication mechanism described in this disclosure). In some embodiments, the short code may be some other visual or non-visual indicia stored on the card. In some embodiments, the scratch off code may be communicated to the short code via any communication mechanism (e.g., cellular, WiFi, Bluetooth Low Energy, RFID, NFC, or another wireless communication mechanism described herein). Any wireless communication mechanism or process described herein may additionally or alternatively be performed via a wired communication mechanism or process. In some embodiments, any lottery card described herein may refer to any card, whether associated with a lottery game or some other game.

The gaming facilitator 22 can be configured to log a purchase (e.g., details of the lottery card, user buying the lottery card, etc.) of the one or more lottery gift cards 32 at the retail store for providing a commission to the retail store and initiate the gaming transaction through the gaming system 28 in response to the user 26 entering the short code 40 in the at least one mobile device 24. Additionally, the gaming facilitator 22 can be configured to commence or participate in a text messaging session 42 (FIGS. 13-15)

US 10,229,561 B2

37                                                                                                        38

with the at least one mobile device **24**, communicate with the at least one mobile device **24** using the text messaging session **42**, and receive the scratch off code **38** as a first user text message **44** during the text messaging session **42**. The gaming facilitator **22** can then be configured to communicate with the gaming system **28** (or any other system) to receive at least one lottery number set (i.e., board) generated by the gaming system **28** and transmit a first gaming facilitator text message **46** including the at least one lottery number set to the at least one mobile device **24** in the text messaging session **42**. Any text messaging session described herein may alternatively be any information sending and/or receiving session.

Additionally, the gaming facilitator **22** can be configured to determine if the at least one lottery number set is a winning lottery number set and determine if the winning lottery number set qualifies as a low tier win or a high tier win ("low tier" for smaller jackpots and "high tier" for larger jackpots). Then, the gaming facilitator **22** can be configured to transmit a second gaming facilitator text message **48** including a notification of winning and a winning link **50** (e.g., hypertext link to a secure website that employs the secure Hypertext Transfer Protocol, for instance) having one or more payment options to the at least one mobile device **24** in response to the at least one lottery number set being the winning lottery number set (FIG. **15**). The gaming facilitator **22** may also be configured to provide instructions **36** to the user **26** for payment in response to the winning lottery number set qualifying as the high tier win (FIG. **18**). The gaming facilitator **22** can be configured to confirm an identity of the user **26** in response to the winning lottery number set qualifying as the low tier win in response to the user **26** utilizing the winning link **50** (FIG. **15**) and initiate payment to the user **26** through the third party payment provider **30** in response to confirmation of the identity of the user **26** (FIG. **16**). In the event that payment is provided through an ACH transfer, an ACH data entry page can be provided on the website that allows the user **26** to enter their preferred ACH account information: Full Name, Routing number, Account number, Bank Name. This information can then be validated and a confirmation can be sent to the user **26** (e.g., text message).

The user's identity may be confirmed through any identification mechanism described herein. In some embodiments, the user may enter a code. In some embodiments, the user may provide a photo of any body part of the user such as the user's face. In some embodiments, the user may provide a fingerprint. The user's identity may be confirmed by comparing or cross-referencing the user provided information to information comprised in an identification database.

Referring now to FIG. **8**, a method for providing a gaming transaction using a gaming provider system **20** is also disclosed. The method can include the step of providing one or more lottery gift cards **32** having a universal product code and a card number **34** and a short code **40** and a scratch off code **38** for purchase at a retail store by a user **26**. The method can continue by verifying the age of the user **26** intending to purchase the one or more lottery gift cards **32** at the retail store. Such age verification may be carried out just as is done for alcohol purchases (i.e., a store clerk checks the driver's license or other ID to confirm the age of the user **26**). It should be appreciated that other age verification steps may be used in addition to or in place of age verification by the store clerk, such as, but not limited to a later exchange of additional text messages to confirm the age of the user **26** once the lottery gift card **32** has been

purchased. In some embodiments, age verification of the user may be performed as part of identification verification of the user. The method can proceed with the steps of receiving a notice (e.g., at the mobile device or the POS terminal) of a purchase of the one or more lottery gift cards **32** at the retail store at a gaming facilitator **22** in response to the universal product code being scanned at the retail store and logging the purchase of the one or more lottery gift cards **32** at the gaming facilitator **22** to provide a commission to the retail store. More specifically, the gaming facilitator **22** can digitally record all transactions of lottery gift cards **32** and provide reporting of the transactions to the appropriate retail stores or retailers by brand, location, or partner or to the gaming partners by game type, location, or retail store. In addition, the gaming facilitator **22** can also provide a real time journal file to the appropriate lottery security group or lottery internal control system. The gaming facilitator **22** may also manage settlement of funds to the appropriate lottery or gaming partner for these transactions.

Next, the method can include the step of commencing or conducting a text messaging session **42** (or other information sending and/or receiving session) with at least one mobile device **24** in response to the user **26** entering the short code **40** in the at least one mobile device **24**. Then, the method can continue by initiating a gaming transaction through a gaming system **28** in communication with the gaming facilitator **22** and communicating with the at least one mobile device **24** using the text messaging session **42**. When such a play request is received for a lottery gift card **32**, all outstanding plays will be played in the jurisdiction where the monies were received for those transactions. So, for example, if the lottery gift card **32** was purchased in North Carolina and then played in California, the North Carolina lottery will be played. The method can continue with the steps of receiving a scratch off code **38** as a first user text message **44** during the text messaging session **42** and marrying the card number (or other identification information) of the at least one lottery gift card **32** to a phone number of the mobile device **24**. Thus, once the lottery gift card **32** is associated with the phone number of the mobile device **24**, the user **26** may make future plays without any additional registration or verification.

On a subsequent play after reloading the card, if the user **26** sends the scratch off code **38** to the short code **40** using a different mobile number than the initial play, then the user **26** may receive an error text message (e.g., "This card has already been played. To view the numbers for this play, you need to send the scratch off code from the mobile device **24** that was used to play the first time."). Similar error messages can be provided if the user **26** sends the scratch off code **38** multiple times without reloading the lottery gift card **32**. In some embodiments, the user may make subsequent plays using the same scratch off code but a different mobile number. In such embodiments, multiple mobile numbers (or other user identification information) will be associated with the card number (or other card identification information).

The method can continue with the step of communicating with the gaming system **28** to receive at least one lottery number set generated by the gaming system **28**. If user **26** sends an incorrect, duplicate, or inactive scratch off code **38**, they can receive an error message (e.g., "Your play cannot be completed at this time. Please call **1-855-###-####** for further assistance."). Similarly, if a play attempt fails because the request was made during a draw break or game is off sale, the user **26** can be sent a text message with another error message (e.g., "Sorry, lottery is off sale right now. We will send your numbers when lottery is on sale

US 10,229,561 B2

39

again."). Once the lottery goes on sale again, user **26** receives play success message with played numbers. Next, the method can include the step of transmitting a first gaming facilitator text message **46** including the at least one lottery number set to the at least one mobile device **24** in the text messaging session **42**. Then, the method can include the step of maintaining a record of historical plays including the at least lottery number set for each gaming transaction previously completed. If the user **26** sends "VIEW" to the short code **40**, and has already played they can receive a text message to indicate that the numbers will be resent (e.g., "This card has already been played. Your numbers will be resent below.") along with their played numbers. Likewise, if the user **26** sends "VIEW" to the short code **40**, and have not yet played they should receive a text message requesting that they send the scratch off code **38** (e.g., "Send the scratch off code from the back of your Lottery Card to play and view your numbers!"). The user **26** can text similar commands to the short code **40**, such as, but not limited to "STOP" to stop receiving any associated marketing text messages, or "HELP" to receive instructions on how to play or access the website. The gaming facilitator **22** records all transactions and provides reporting of transactions to the appropriate lottery authority or gaming system **28** by jurisdiction.

The method may then continue by determining if the at least one lottery number set is a winning lottery number set and determining if the winning lottery number set qualifies as a low tier win or a high tier win. The method may then include the step of transmitting a second gaming facilitator text message **48** including a notification of winning and a winning link **50** (e.g., hypertext link to the website) having one or more payment options to the at least one mobile device **24** in response to the at least one lottery number set being the winning lottery number set. Notifications may even be sent for some other event, such as when the user **26** does not win (e.g., a message from the retail store saying "better luck next time, but here's a 10% digital coupon to our store") or notifications when the lottery jackpot becomes large. The method can then proceed by providing instructions **36** (e.g., using a hypertext link the website) to the user **26** for payment in response to the winning lottery number set qualifying as the high tier win. The user **26** may also send "REDEEM" to the short code **40**, and then they can receive a text message concerning their winnings (e.g., "lotterycard-website.com to view your Winnings and choose how to get paid if you win"). The method may also include the step of confirming an identity of the user **26** in response to the winning lottery number set qualifying as the low tier win or high tier win in response to the user **26** utilizing the winning link **50**. Identification verification may be performed by any technique described herein. The method can conclude with the step of initiating payment to the user **26** through the third party payment provider **30** in response to confirmation of the identity of the user **26** for a low tier win. In some embodiments, the user **26** may be given the option of requesting payment for winning in the form of a retailer gift card that may even have a value greater than what the cash winnings would be (e.g., $7 cash winnings, but can alternatively receive an $8 gift card).

In some embodiments, the user **26** does not have to register to claim high tier winnings, but does need to visit the lottery office. When the user **26** is at the lottery office to redeem their high tier winnings and the lottery clerk can select the "Click here to enter PIN on PIN Pad" button on a tool, the user **26** can be sent a six digit code to their mobile number that was used to play. The user **26** can then enter this

40

six digit code in the tool to verify their identity and proceed with claiming their high tier winnings.

FIG. **28** illustrates some entities that may be involved in a gaming provider system. A user **2801** may purchase a lottery play at a point of sale (POS) **2803**. The user **2801** may purchase a physical lottery card **2813** with an identifying barcode or other card identifying mechanism. The identifying barcode or mechanism may be record transactions (e.g. in order to avoid repurchase or reactivation of the same lottery card) and/or authorize transactions (e.g. via lookup in a database system associating at least one lottery card **2813** with at least one merchant and/or POS **2803**). Alternatively, the user **2801** may acquire a virtual lottery card **2813** by way of electronic communication (e.g. RFID, NFC, Bluetooth, Bluetooth Low Energy, Infrared, cellular, WiFi, QR code) involving a user device **2811** and a POS **2803**. Alternatively, the electronic communication may involve a user device **2811** while not involving a POS **2803**. Upon purchase, the POS **2803** and/or associated identifying information may be analyzed by a transaction processing and/or authorization network (TPN) **2805** to determine whether or not the POS **2803** and/or its retail location is authorized to sell lottery cards **2813**, e.g. based on geographic location or network membership. The TPN **2805** may further facilitate financial transactions between the POS and a value added network (VAN) **2807**, e.g. by recording POS **2803** activity associated with lottery cards **2803** and/or sending payments between the POS **2803** and VAN **2807**. Upon successful lottery card **2813** purchase and/or POS **2803** approval, the lottery card **2813** may be activated automatically or by submission of associated lottery card **2813** information, e.g. from user device **2811** to the VAN **2807**.

Unique information associated with each lottery card **2813** may be generated and recorded by a value added network (VAN) **2807** and/or card issuer **2815**. Physical lottery cards **2813** may further be printed by a card issuer **2815** for distribution to a POS **2803**. The unique information may include a primary account number (PAN) and/or a scratch code. Upon purchase, the POS **2803** may access a TPN **2805** to authorize the lottery card **2813** purchase based on the unique information, e.g. by cross-referencing location information with a database. In the case of a lottery replay purchase (e.g. using a previously purchased lottery card **2813**) or lottery play stacking (i.e. purchasing multiple plays before exhausting existing play(s) **2813**), historical and/or jurisdictional information may be referenced to authorize the lottery card **2813** purchase, e.g. based on allowable number of replays and/or whether the jurisdiction allows replays from a given geographical location. Additionally, lottery card **2813** and/or user device **2811** activity may be monitored to determine unintended, malfunctioning, or fraudulent behavior (e.g. based on play purchase velocity or geographic location of purchases).

All information associated with the lottery play (e.g. purchase, activation, registration, play, replay, play results, messaging, financial transactions) may be communicated to and recorded by a VAN **2807**. This communication may occur through one or more intermediary entities, such as a POS **2803**, TPN **2805**, card issuer **2815**, user device **2811**, messaging system **2817**, financial system **2819**, and/or lottery system **2809**. The VAN **2807** may utilize the information to inform internal (i.e. within the VAN) or external activities (e.g. lottery system, card issuer) rule-based events.

The user device **2811** may be a cellular and/or Internet-enabled device. The messaging system **2817** may relay text, image, audio, and/or video messages, e.g. via SMS, MMS,

US 10,229,561 B2

41

42

or Internet URL. The financial system **2819** may comprise a third party electronic payment system capable of sending ACH transfers or transferring money among accounts within the financial system The lottery system **2809** may comprise a system capable of transmitting game play offerings, transmitting game play purchase prices, receiving requests for one or more game plays, returning results of one or more game plays, receiving payments for game play purchases, and/or sending payments associated with game play results.

In some embodiments, the phone number and/or location information (e.g. from cellular towers, GPS) associated with a user device may be analyzed to determine jurisdictional and/or fraud compliance. In some embodiments, location information associated with a user device and/or lottery card may be analyzed to determine game play offerings and/or promotional offers.

In some embodiments, lottery plays may be transferred from one user device to another user device.

In some embodiments, an event-based system (e.g. based on time or location) may be utilized to determine periods to avoid sending communications to the user device.

In some embodiments, a user may manually select information related to a game play, e.g. a user may select the virtual and/or physical scratch-off locations associated with a scratch-off game as a lottery player might traditionally do with physical lottery tickets. The user may also allow the user device and/or remote system (e.g. VAN, lottery system) to automatically select and/or generate information related to a game play, e.g. numbers chosen for a board-based lottery game.

In some embodiments, a threshold may be established such that all prizes associated with game play outcomes ("prizes") below the threshold may be automatically sent via a financial system, whereas all prizes above or equal to the threshold may require further verification steps before payment (e.g. user and/or user device verification at a designated physical location).

In some embodiments, an unclaimed prize may expire based on the user, game play jurisdiction, game play geographical location, lottery system associated with the game play, and/or expiration events (e.g. time thresholds).

In some embodiments, a purchase of a game card is initiated by scanning a barcode at a point of sale terminal. In other embodiments, the purchase may be initiated at an unmanned terminal. In some embodiments, the purchase may be initiated by conducting a chip-based transmission of information from the game card to the point of sale terminal. In some embodiments, the game card may be a lottery card. Any gaming card described herein may be a physical card or a digital card. In some embodiments, the purchase may be made directly by a mobile computing device associated with a user. Therefore, in some embodiments, the user's mobile computing device (or non-mobile computing device) may be the POS terminal.

If the first network is not online, the POS terminal may directly send the information (e.g., the scanned information) to the second network. Alternatively or additionally, the POS terminal may send a signal to the first network that causes the first network to resolve any issues and come online. Once the first network comes online, the first network forwards the information to the second network. Once the second network receives the information (e.g., from the first network and or from the POS terminal), the second network processes the transaction (e.g., the purchase transaction for purchasing the gaming card), and sends a response regarding either successfully or unsuccessfully processing the transaction back to the POS terminal (e.g., either directly to the

POS terminal or via the first network). The second network may have access to a database that includes authorized retailer locations (e.g., merchants, entities, geographical locations, network locations, etc.) for selling the gaming card. The location of the purchase may be included in the information transmitted from the POS terminal. If the location is not present in the database, a transaction declined message is transmitted to the POS terminal.

If the location is present in the database, a determination is made (e.g., by the second network) as to whether the gaming card status is generated or disabled. If the gaming card is disabled, a decline message is transmitted to the POS terminal (e.g., directly or via the first network) because the card is disabled. If the gaming card is not disabled, the second network determines whether the card is already activated. If the gaming card is already activated, a decline message is transmitted to the POS terminal (e.g., directly or via the first network) because the card is already activated. If the gaming card is not already activated, the second network determines whether the gaming card has already been played. If the gaming card has been played, a decline message is transmitted to the POS terminal (e.g., directly or via the first network) because the card has already been played.

If the gaming card has not been played and/or if a funds balance to play a game is present, the second network sends an approval message to the first network and/or the POS terminal, wherein the approval message may be displayed on the POS terminal. The second network also sets the PAN card status to activated and sets the card state to active. The second network also records the state-specific (e.g., jurisdiction specific) PAN obligation associated with the card, sets the obligation date, and records purchase details for the record. The card is now registered for play.

The information from the point of sale (POS) terminal is transmitted to a first network. The process flow then moves on to determine whether a first network is online. The first network may be a game card network, a card network, a game network, a first server specifically configured for card-based gaming transactions, etc. If the first network is online, the information from the first network is transmitted to a second server. The second network may be a gaming facilitator network, a communication processing network, a second server specifically configured for gaming transactions such as card-based gaming transactions, etc.

Any features associated with any one figure may be associated with or combined with features of any other figure, even if not illustrated in the figures. Additionally, steps of each figure may be performed in any order that may be the same as or different from the order shown in the figure. Any feature (e.g., any element) may be combined with any other element described or illustrated herein.

FIG. **20** illustrates a system **2000** for mixed mode lottery game play. For example, multiple lottery games and/or types of lottery games may be played on a single user device. A user device may be a mobile phone, a tablet, a personal computer, a wearable device (e.g. fitness tracker, wrist-worn computer), smart jewelry (e.g. ring or necklace), or any electronic device a configured to receive external information with which a user can interact. Any network described herein may include one or more local or remote computing apparatuses such as game-playing apparatuses. Any box in any figure may represent one or more local or remote computing apparatuses, which may be specially configured (e.g., specially purposed processors or hardware, specially purposed or customized software, etc.) for performing spe-

US 10,229,561 B2

43
44

cific operations associated with game-playing transactions. Transactions may include financial data.

Lottery cards may be created and distributed to a merchant **2001**. A merchant **2001** may comprise a retail POS terminal, and a lottery card holder **2007** may comprise a user and/or an Internet-enabled user device. A retail POS terminal may be a checkout terminal (e.g. at a grocery store or gas station), a gas pump terminal, or an electronic kiosk (either dedicated for lottery activity or one utilized for other activities, such as movie rental, electronic equipment purchase, or food purchase). Each lottery card may be associated with a unique account number, a unique activation code, a denominated number of game plays, and/or a purchase price. A lottery card may be presented for purchase at a POS. The POS may receive the unique account number and access a TPN **2003** to authorize and complete the purchase of the lottery card, e.g. based on geographic location information of the POS, lottery card, and/or user device. The TPN may further communicate through a lottery card issuer **2005** to inform another system (e.g. a VAN **2009**) of transaction information. The lottery card issuer **2005** may be an entity which generates lottery cards and their associated data for distribution to merchants **2001**. Additionally, a lottery card issuer may be incorporated within the VAN **2009**, or it may not be. Additionally, a lottery card issuer may simply record activity associated with lottery cards (e.g. purchase, activation), but not be involved in generation of lottery card information. After purchase, the lottery card holder may redeem the game plays via an Internet-enabled device (e.g., a mobile telecommunication device such as a mobile phone) by entering the unique activation code from the lottery card on the device. Alternatively, the game plays may be automatically redeemed upon purchase of the lottery card; in such a scenario, the automatic redemption may require submission of user device information (e.g. phone number or NFC information) in order to transfer the redeemed game play to the user device. The device may transmit the unique activation code and lottery card holder's device identification to the VAN **2009**. The VAN **2009** may comprise an intermediary system for facilitating game play and/or other transactions among a lottery card holder **2007**, merchant **2001**, and lottery system **2011**. The VAN **2009** may receive and validate the unique activation code, register the lottery card's unique account number with the lottery card holder's device ID (which could be a phone number), and request game entries from the lottery system **2011**. The lottery system **2011** may comprise a governmental-run (e.g. state-run) system or government-authorized system, which may define rules, prices, and/or prices of lottery game plays, and which may further facilitate lottery-based transactions (e.g. involving game play or transaction data). The VAN **2009** may receive the game entries and transmit them via a digital lottery ticket to the lottery card holder's device. Upon lottery draw occurrence, the lottery system may transmit results to the VAN **2009**. The VAN **2009** may process the results and transmit a result notification to the device registered to the lottery card. If the digital lottery ticket is a low-tier prize winner, the VAN **2009** may send a prize payment to the lottery card holder's registered device (e.g. without additional verification required). If the digital lottery ticket is a high-tier winner, the VAN may provide instruction via the player's device on how to claim the prize with the lottery system.

FIG. 21 illustrates a verification system and method **2100** for verifying the winner of a digital lottery game play. Such a system and method **2100** may also be advantageous by making the lottery prize redemption process more conve-

nient (e.g. by auto-detect and notify a player) as well as reducing the possibility of lost lottery tickets (e.g. via alternative winner verification methods and/or winner account recovery).

A digital lottery ticket may be issued by a value added network (VAN) **2107** to a lottery player's Internet-enabled device **2111** via two identifying elements: a device identification code (device ID) and a unique account number (PAN). The device ID and/or PAN may be fixed information associated with a player device **2111** and/or lottery card, or they may be mutable information changeable by a lottery player **2103**, a VAN **2107**, a lottery system **2101**, and/or a lottery ticket issuer **2109**. A lottery draw may occur and the lottery player with a digital lottery ticket may win a prize. The player **2103** may present the winning digital lottery ticket to a lottery system **2101** to claim the prize. The player may enter the PAN and/or any other identifying information (e.g., associated with the device, the digital lottery ticket, the user, etc.) on an Internet-enabled verification device **2105**. The Internet-enabled verification device **2105** may have wireless communication abilities (NFC, RFID, WiFi, Bluetooth, cellular, etc.). The PAN and/or other identifying information may be transmitted to a VAN **2107**. The VAN **2107** may analyze the PAN for validation purposes and send a unique prize verification code (PVC) to the device **2111** registered to the PAN. The player may receive the PVC on the registered device **2111** and enter the PVC on the Internet-enabled verification device **2105**. The device **2105** may transmit the PVC entered on the device **2105** to the VAN **2107**, e.g. to close the validation loop. The VAN **2107** may validate the PVC, send a winner verification code (WVC) to the Internet-enabled verification device **2105**, and transmit a verified claim notification to the lottery ticket issuer **2109**. The lottery ticket issuer may proceed by granting the verified user the prize. The lottery ticket issuer **2109** may be incorporated within the lottery system **2101**, or it may not be. The lottery ticket issuer **2109** may be responsible for generating information associated with lottery games and distributing lottery tickets, or it may just be responsible for distribution of lottery tickets based on lottery game information received from another entity (e.g. a lottery system **2101**).

In addition to utilizing a verification device **2105** for "high tier" prize winners, the verification system may enable automatic checking and notification of lottery play results regardless of prize tier. Therefore, the verification system can make the lottery game play process more convenient by not requiring the lottery player to determine the results of a game play (e.g. whether lottery ticket numbers match drawn numbers). Additionally, because only the player device needs to be retained to win and claim a lottery prize, a lottery player cannot lose the lottery ticket as might be the case with physical (e.g. paper) tickets. Further, in the case that a player device **2111** is lost, stolen, or broken, virtual information associated with the player and/or player device **2111** may allow recovery of the lottery account and/or prize winnings associated with the player **2103** and/or player device **2111**.

FIG. 22 illustrates a system and method **2200** for delivering event-driven, customizable targeted data (e.g. marketing promotions) to lottery players via an Internet-enabled device.

Patterns of event data may be identified (e.g., over a period of time) to form player profile data. The player profile data may comprise metadata (e.g., player's game playing history including identity of mobile devices used to play games, play's game playing purchase history, player's identification information include age, location, name, other

US 10,229,561 B2

45                                                    46

details, etc.) describing a lottery player associated with lottery game play via an Internet-enabled digital device. Player profile data and/or event data may be external data **2201** or internal data **2203**. The player data may be processed or combined (e.g., dynamically at the time of delivering the targeted data) to form dynamic data **2207**. Customized targeted data **2215** (e.g., targeted signal) may be generated for the player using the dynamic data **2207** based on events **2213** (e.g., winning, losing, purchasing one or more tickets, etc.) associated with lottery game play. For instance, such an event **2213** may include losing a lottery game, and the associated customized targeted data **2215** may include a coupon for the retailer of the lottery ticket. Additionally, a game multiplier purchase may be offered post game entry but pre-draw. Additionally, dynamic data may change on external and/or internal data; for example, a different day of the week may result in different dynamic data, which may in turn result in different customized targeted data. External data **2201** may comprise the prize awarded to the lottery player (e.g. dollar amount) or lottery particular ticket merchant rules for modifying the prize associated with a lottery win or loss (e.g. offer in-store credit in addition to lottery winnings in order to incent lottery ticket purchase from that merchant). Additionally, external data may comprise any data not collected by a VAN (e.g. data from merchant, transaction processing and/or authorization network, lottery ticket issuer, and/or lottery system). Internal data **2203** may comprise VAN rules (e.g. for rule-based events) or any other data captured by a VAN. Based on the external data **2201** and internal data **2203**, a data processing transformation **2205** produces dynamic data **2207** that may change depending on an event **2213**. Data processing **2205** may include processing based on defined rules (e.g. set by the VAN) or intelligently generated rules at the time of processing, or it may include processing based on ad hoc rules (e.g. via unclassified pattern recognition). Additionally, data processing may reduce or compress the input sources of data (i.e. external and/or internal data). The dynamic data **2207** can be further informed or modified by a data modeling process **2209** and/or by information from a targeted data database **2211**. A targeted data database **2211** may be populated with targeted data by a VAN, merchant, and/or lottery system. Any gaming and/or transaction (e.g. financial transaction) may be a type of computing operation.

Benefits of such a system and method **2200** may include the ability to give lottery ticket merchants more information about lottery players (e.g. regarding their purchase behaviors), and the ability to target specific lottery players with customized targeted data. Such benefits could be employed, e.g., to optimize a lottery player's in-store spending at the merchant location. Such a system and method **2200** could also allow other entities to benefit from lottery player information and the ability to customize targeted data to lottery players (e.g. a lottery system associated with a first state may wish to offer a discount to a lottery ticket purchaser who has just arrived from a second state). Note that regardless of whether such a system and method **2200** is employed, other entities beyond the VAN (e.g. merchant, lottery system) could still receive and/or benefit from information processed by the gaming provider system. For example, the VAN may provide merchants with lottery player purchase information to incentivize merchant participation.

FIG. **23** illustrates a system and method for enabling a lottery player to exchange the denominated monetary value of a prize for a substitute monetary instrument of equal or greater value.

Within a value added network (VAN), patterns of event data may be identified to form customer profile data. The customer profile data may comprise metadata describing a lottery player associated with lottery game and metadata describing a customer associated with a loyalty program. This metadata may include external data **2301** and/or internal data **2303**. The customer data may be processed **2305** to form dynamic data **2307** (e.g., at the time of presenting the exchange data). After a lottery draw occurs, a lottery game entry associated with the customer playing the lottery may win a low-tier prize in a lottery drawing. Using the dynamic data **2307**, customized exchange data **2315** (e.g. exchange offer) to exchange the denominated monetary value of a lottery prize **2313** for a monetary instrument of equal or greater value may be generated based on a data modeling process **2309** and exchange data database **2311**. This may involve cross-referencing an exchange data database and suggesting one or more exchange data consistent with the customer profile data (e.g., based on other players with similar profile data selecting or being presented with particular exchange data). The exchange data database may contain exchange data and their associated lottery prizes. The exchange data database may be populated by a VAN, merchant, and/or lottery system (e.g., and may be populated based on historical or predicted player preferences). The player **2317** may accept or decline the exchange data **2315**. If a player **2317** accepts the exchange data **2315**, a monetary instrument may be provided to the player at the agreed upon value and the ownership of the prize **2313** is transferred to the data instrument offeror **2319** of the substitute monetary instrument. Such a system and method **2300** may be employed to augment the winnings for a player **2317** while also benefiting the data instrument offeror **2319**. For example, a merchant may offer a gift card of higher value to a prize-winning player **2317** in order to increase the player's **2317** loyalty to that merchant.

FIG. **24** illustrates a system and method for event driven rule-based messaging for device-enabled lottery gameplay.

A flexible, event driven and conditional rule-based messaging system (e.g., an intelligent messaging system) may be implemented for use in lottery applications. A rule mechanism may be implemented having a "When-If-Then" event-driven, conditional, action-invoking approach that permits definition of a repertoire of events considered to be significant events upon which to trigger actions specific rule-based messages. Each particular event may be associated with a specific mail message and/or rules to promote context relevant messaging. It is possible that only relevant rules, i.e. those associated with a satisfied event, need to be further processed. A graphical user interface to a structured rule editor may facilitate synthesis of rules by a lottery application via a rule engine **2407**. The rule engine **2407** may be substantially transparent. A modular architecture for the structured rule editors could allow an extensible and portable facility invoking selected rule scripting language to implement various functions in the context of various lottery game play environments. Such a rule-based messaging system and method **2400** for lottery gameplay may transmit messages originating from a rule engine **2407** and messaging system **2405** to a lottery card holder **2401** via a value added network **2403**. The rule engine **2407** may be informed in part by a persona. A persona may be data associated with a user and/or a user device (e.g. lottery game play purchase activity, game play wins, game play losses, game play prize amounts, location information, jurisdiction information, and/or user-defined preferences relating to rule-based messaging system interaction). Rules may be based on a user

US 10,229,561 B2

47                                                                                              48

profile (e.g. prior user behavior or disclosed user preferences and/or characteristics), a user location, and/or other technical logic. For example, a lottery card holder **2401** may be notified of new lottery gameplay data instruments when it is determined that the lottery card holder's **2401** location has changed from a first state to a second state. A messaging system may be used to relay information from a rule engine **2407** to the lottery card holder **2401**. Such messages may be transmitted over a cellular network, or via the Internet. The rule engine may be a part of and/or population by a VAN, lottery system, and/or merchant.

FIG. **25** illustrates a system and method for entering lottery games in more than one lottery system jurisdiction via a single Internet-enabled device.

Lottery game play may be enabled by a point-of-sale solution (POS) **2501**, lottery account (account), transaction authorization and/or processing network (TPN) **2503**, value added network (VAN) **2511**, and Internet-enabled device (device) **2509**. Lottery game play may be further enabled by a lottery account issuer **2505** and one or more lottery game processors **2507**. A lottery player may purchase a lottery game entry using an account at a POS **2501** in one jurisdiction. The game entry purchase is processed via an account, TPN **2503**, VAN **2511** and a device **2509**. A lottery account may be associated with a lottery card, lottery player, lottery player device **2509**, none of these, or some combination of the previously listed. A lottery account may be utilized to verify lottery game compliance, lottery game-associated transaction, and/or lottery player identification. The account holder enters the lottery game via a device **2509**. The device **2509** receives a digital lottery ticket following game entry. The lottery player then purchases a lottery game entry in a separate lottery jurisdiction using the same account. Following the purchase, the cardholder may receive an additional digital ticket for the new lottery jurisdiction on the device **2509**. The process can repeat indefinitely, allowing the player to enter in one or more lottery games in two or more lottery jurisdictions without limitation. Such a system and method **2500** may be beneficial by automating lottery gameplay compliance regardless or user location and/or lottery jurisdiction. Additionally, such a system and method **2500** may allow gameplay of multiple lottery games from different jurisdictions on a single player device and/or within one or more locations and/or jurisdictions. Note that a lottery jurisdiction may be associated with a state, may be associated with a region within a state, or may not be associated with either. The TPN may facilitate, authorize, and/or record transactions at at least one POS, and may further relay information to/from a lottery account issuer **2505**. A lottery account issuer may be part of a VAN **2511** or it may not be. A lottery account issuer may generate and distribute lottery account information, or it may distribute lottery account information received from another entity (e.g. VAN **2511** and/or lottery game processors **2507**). Lottery game processors **2507** may be government- (e.g. state-) run, or they may be authorized by a governmental entity. Further, lottery game processors may generate and/or distribute information associated with lottery gameplay (e.g. game play price, game play prize(s), game play information, game play eligibility based on location and/or jurisdictional information).

FIG. **26** illustrates a system and method for purchasing lottery game entries in more than one lottery system jurisdiction.

Lottery game play may be enabled by a point-of-sale solution (POS) **2601**, lottery account (account), transaction authorization and/or processing network (TPN) **2603**, value added network (VAN) **2611**, and Internet-enabled device (device) **2609**. Lottery game play may be further enabled by a lottery account issuer **2605** and lottery game processors **2607**. A lottery player may purchases a lottery game entry using a lottery account at a POS **2601**. The lottery game purchase is processed via a lottery account, TPN **2603**, VAN **2611** and a device **2609**. The lottery account holder may enter the lottery game via the device **2609**. The device **2609** may receive a digital lottery ticket on the device **2609** following game entry. The lottery player may purchase a subsequent lottery game entry at a POS **2601**, and the process repeats resulting in two or more lottery game entries for an account (e.g., associated with at least one of device identification information, phone number, user identification information, etc.) and two or more digital lottery tickets received on a single device **2609**. Such a system and method **2600** could allow for multiple lottery games to be played on the same device **2609**, even if the lottery games originate from different jurisdictions or are associated with different gaming providers. Additionally, prizes from different game plays (e.g., associated with different gaming providers and/or jurisdictions, or associated with different game types) could be aggregated into a single prize, which may be more convenient for the lottery player and/or any other entity in the lottery gameplay system. Additionally lottery game play activity from multiple different lottery games could be summarized in one location (e.g. visible on virtual page of a user device).

FIG. **27** illustrates a system and method for location-aware lottery gameplay.

Lottery game play may be enabled by a point-of-sale solution (POS) **2701**, lottery account (account), transaction authorization and/or processing network (TPN) **2703**, value added network (VAN) **2709** and Internet-enabled device (device) **2705**. A lottery player may purchase a lottery game entry using a lottery account at a POS **2701**. The lottery game purchase is processed via a lottery account, TPN **2703**, VAN **2709** and a device **2705**. The VAN **2709** may receive and/or record the POS **2701** location information. The lottery account holder may request entry into the lottery game via the device **2705**. The device **2705** may transmit the lottery account holder's location to the VAN **2709**. The VAN **2709** may cross-reference and/or compare the location of the POS **2701** location (e.g., at the time of purchase) and the location of the lottery account holder's device **2705** at the time of request to confirm at least partially matching jurisdictions. Game entry may be conditionally allowed if jurisdictions match (or at least partially match). Game entry may be conditionally disallowed if jurisdictions do not match (or do not at least partially match). Such a system and method **2700** may utilize GPS signals, cellular tower localization, IP address, user input, or other information to determine device **2705** and/or POS **2701** location and/or jurisdiction.

FIG. **28** illustrates a system diagram of a gaming provider system **2800**. Some embodiments may use all the elements shown in the FIG. **2800**, while some may not. Additionally, some embodiments may employ additional elements not shown in the FIG. **2800**, while others may not. The elements of such a gaming provider system **2800** have previously been described. Such a system may comprise a user **2801**, POS **2803**, TPN **2805**, VAN **2807**, lottery system **2809**, user device **2811**, lottery card, **2813**, card issuer **2815**, messaging system **2817**, and/or transaction facilitation system **2819**. The transaction facilitation system **2819** may facilitate financial transactions, such as post or pre-gaming financial transactions.

In some embodiments, motion and/or orientation sensors (e.g. accelerometer, gyroscope, magnetometer) associated with the lottery player device may be utilized to influence lottery registration, lottery card issuance, lottery gameplay, lottery prize, lottery prize payment mechanism, customized targeted data, exchange data, customer data, fraud detection, and/or user identification. For example, a unique motion associated with a user may be required to be performed before a purchase is allowed or a prize is claimed. Additionally, some games may be played in part or in whole by physical device motions (e.g. shake, tilt).

FIG. 29 illustrates a system diagram of a gaming provider system. Some embodiments may use all the elements shown in the FIG. 2900, while some may not. Additionally, some embodiments may employ additional elements not shown in the FIG. 2900, while others may not. Any element may communicate with any other element via inter-communication circuitry 2911, 2931, 2951, 2971 and connections between functional blocks 2910, 2930, 2950, 2970. The various elements may be present in any local or remote computing device described in this disclosure, such as any of the boxes illustrated in any of the preceding figures. In some embodiments, one or more of the elements may be specialize hardware or software elements for specifically performing an operation associated with a gaming transaction.

A processing unit 2930 may contain an event triggered unit 2932, for example to implement rule-based messaging. Further, the processing unit 2930 may contain a game processing unit 2933, for example to send and receive gameplay information between a lottery player device and lottery system. Further, the processing unit 2930 may contain a database access unit 2934, for example to efficiently store and access gaming provider system information via a database storage system 2914. This information may include user profile data, transaction histories, lottery account numbers, and/or numbers associated with lottery cards. The processing unit 2930 may further comprise a location determination unit 2935, for example to determine lottery player device or point of sale jurisdiction or to determine appropriate targeted data or exchange data. The processing unit 2930 may further comprise a jurisdiction determination unit 2936, for example to determine lottery jurisdiction from location information. Location information (and/or associated jurisdiction information) may be used to authorize lottery game play purchase and/or determine lottery game play exchange data. The processing unit 2930 may further comprise a code generation unit 2938, for example to appropriately generate lottery card codes based on previously issued codes and in order to avoid fraud issues. A code management unit 2939 may further monitor issued, expired, and or pending codes, as well as inform the code generation unit 2938 of preferable codes to use in the future. A transaction watchdog unit 2940 may monitor transactions and/or lottery card activations associated with the gaming provider system 2900 in order to detect malfunctioning or fraudulent activity. A transaction authorization unit 2941 may receive and either authorize or reject transactions associated with the gaming provider system 2900 depending on, e.g., jurisdiction information, lottery system rules, gaming provider system 2900 rules, and/or transaction facilitation system information. A transfer unit 2942 may direct payments from the appropriate sender to the appropriate receiver, e.g. from a lottery system to a transaction facilitation system or a transaction account associated with a lottery player. A reporting unit 2943 may record, process, and/or report transfers that have occurred via the transfer unit 2942

(including financial transfers). A resource allocation unit 2937 may monitor resource usage of the processing unit 2930 and appropriately allocate resources, e.g. depending on resource needs, constraints, and/or processing unit 2930 rules.

A memory unit 2910 may be used to store information associated with the gaming provider system 2900, potentially utilizing a cache storage unit 2913, a database storage system 2914, a secure storage unit 2915, and/or a memory backup unit 2916. Further, a memory management unit 2912 may be utilized to monitor memory resource usage and/or appropriately direct send and/or receive requests from the processing unit 2930. A communications unit 2950 may be employed to facilitate communications between the gaming provider system 2900 and external entities, e.g. a lottery system, transaction facilitation system, messaging system, transaction processing network, card issuer, and/or lottery player device. The communications unit 2950 may employ a modem unit 2952, encryption/decryption unit 2953, network protocol unit 2954, network router 2955, network switch 2956, firewall 2957, antenna 2958, and/or packet queuing system 2959. The packet queuing system 2959 may prepare packets associated with lottery system, transaction facilitation system, messaging system, and/or communications network metadata for transmittal or reception. A input/output unit 2970 may be employed to facilitate human interaction with the lottery provider system 2900. A graphics processing unit 2972 and/or hardware peripheral drivers 2973 (e.g., one or more specialized drivers) may be utilized.

FIG. 30 shows an unscratched gaming card (i.e., a gaming card in a first state), according to some embodiments. The gaming card may also be referred to as a gaming apparatus, a gaming instrument, a gaming device, a user apparatus, a user instrument, a user device, a game card, a gaming ticket, a lottery card, a non-lottery gaming card, etc. The gaming card may be a one-time use/play/draw card or multiple-time use/play/draw card. The gaming card may be used to play one or more games of the same type or of different types (e.g., two different lottery game types associated with different entities). The structure or shape of the card may be similar to that of a gift card. The number of plays 3020 may be indicated in the top left hand corner of the card. The number of plays may correspond with the number of rows of numbers, e.g., four plays refer to four rows of numbers. The numbers may be covered and not visible and may become visible in response to user interaction with one or more portions of the card (e.g., scratching off the surface of the card, mechanical contact-based interaction with the surface of the card, or any other interaction including electronic interactions such as contactless transactions between a device or other instrument and the card). The number 3040 could be a sequence number or information for a card in a pack of cards. The numbers associated with all the plays on the card may be referred to as a game board 3010. Each play may be associated with a particular draw date or the same draw date. In some embodiments, multiple plays may be associated with one or more draw dates. A draw date may refer to a date on which the winning numbers associated with the game are revealed. In some embodiments, at the time of purchasing the card, the card may be customized for a user-specified number of plays. In other embodiments, the card may include a pre-determined number of plays. In such embodiments, a price associated with the card may be indicated on the card (e.g., on the top right side). In some embodiments, instructions 3030 for playing may be presented on the card. In some embodiments, the card may printed at the time of purchase. In some embodiments, the

US 10,229,561 B2

51

card may be pre-printed and stacked with other gift cards in a store. In some embodiments, the card is, additionally or alternatively to the physical card, an electronic card that is visible on a display screen of a mobile computing device or other computing device.

FIG. **31** shows a front side of a scratched gaming card (i.e., a gaming card in a second state), according to some embodiments. As described previously, the numbers in the card may be revealed using scratching, or one or more other contact-based or contactless interactions. The numbers may be randomly generated numbers and pre-printed on the card. The numbers may be within ranges associated with a particular game. In some embodiments, the numbers may alternatively or additionally include text or other information. In some embodiments, the interaction also reveals a redemption code **3150** (e.g., barcode, QR code, or other type of readable indicia, which may be invisible or invisible). The redemption code **3150** may also be associated with a number **3160**, which may represent identification information associated with the card, a play, a location or store where the card is located (for purchase) or was generated, etc.

FIG. **32** shows a back side of a gaming card (e.g., a scratched gaming card), according to some embodiments. Any of the codes (e.g., **3220**, **3240**, **3150**) presented in FIGS. **31** and **32** may be presented on any side (i.e., front or back) of the card, an/or may be presented as fewer or more codes. The code **3240** may be an identification code for the card. For example, the code **3240** may be scanned at the time of purchase. This code **3240** and any other code described herein may refer to a barcode, QR code, or other type of readable indicia, which may be invisible or invisible. At any time, the user (e.g., the holder, possessor, purchaser, customer, or giftee) may verify or confirm the draw date associated with the card (or any one or all plays associated with the card) by visiting a website, texting a code (e.g., "draw") to a particular number, or calling a particular number. In some embodiments, the back of the card includes information associated with redemption of prizes (e.g., instructions **3260**) and an area **3210** for a user to input user information. The back of the card may also include a number **3230** or other information indicative of a serial number of the card (or other card identification information, play information, or any location information described herein including store or merchant associated with the card, etc.), or a pack (i.e., pack of cards) associated with the card. In some embodiments, the number **3230** may comprise activation information for activating the card. In some embodiments, the back of the card may also include a code **3220** for activating the card. The activation procedure is described in further detail below. While three codes are presented in FIGS. **31** and **32**, fewer (e.g., one code) or more codes may perform the functions of the three codes. In some embodiments, the instructions **3260** include prize redemption instructions, how to associate the plays with upcoming draws, etc. For example, after the card is purchased, play A (i.e., the numbers associated with play A) is entered into the next draw (e.g., June 15) associated with the game. Plays B, C, and D may also be entered into the next draw associated with the game. Alternatively, play B may be reserved for a future draw (e.g., the next contiguously scheduled draw on June 18 after the next draw on June 15). Play B may not be entered into that future draw until after the next draw. Alternatively, play B may be directly entered into that future draw.

In some embodiments, code **3240** is scanned at the time of purchase. Code **3220** may also be scanned at the time of purchase, e.g., before, after, or simultaneously with code

52

**3240**. The scanning may be performed at or by a retail terminal (e.g. comprising a scanner), which may be a mobile computing device or a non-mobile computing device, which may be located at an store or entity described herein. In some embodiments, scanning may refer to any form of interaction between the card and the retail terminal. For example, the interaction may be any contact-based or contactless interaction. Code **3150** (e.g., for redeeming a prize or checking whether the play or numbers are winning numbers for a draw) may be scanned (or otherwise interacted with) at a gaming terminal such as a lottery terminal. Code **3150** may be covered at the time of purchase such that it is not visible to an observer, though in other embodiments code **3150** is not covered at the time of purchase. Each of the codes described herein may be scanned at the same or different terminals, which may even be a user's mobile phone.

FIG. **33** shows a gaming network environment, in accordance to some embodiments. Any communication described herein with respect to this or any other environment may be accomplished using any wired or wireless mechanisms such as short-range or long-range wireless mechanisms, including any described in this disclosure. While the operations are described as being performed by three computing systems, they could alternatively be performed by fewer or more computing systems. The first computing system **3320**, the second computing system **3330**, and/or the third computing system **3350**, and/or the POS terminal **3310** may include or comprise any elements or features that are described as being present in at least one of any other device, system, apparatus, instrument, etc., of this disclosure, and/or may perform any operations or transactions described as being performed by at least one of any other device, system, apparatus, instrument, etc., of this disclosure. The communications described and indicated in FIG. **33** could be either one-way or two-way communications. In some embodiments, the terms "operation" and "transaction" may be used interchangeably.

Any gaming card or lottery card (e.g., the card of FIG. **30**) described herein may be scanned or otherwise caused to be interacted with at a point-of-sale (POS) terminal **3310**. The POS terminal **3310** may be located in a retail store, and may be a mobile or non-mobile computing device. In some embodiments, the mobile computing device may be a mobile phone. The various computing systems may be associated with one or more entities. In some embodiments, when a card is scanned at the POS terminal **3310** (e.g., the code **3220** and/or the code **3240** is scanned), the POS terminal **3310** sends a card activation request to the first computing system **3320**. The card activation request may be associated with one play, all plays, or a selective number of plays associated with the card. The activation request may include a serial number or other identification information associated with the scanned card. Additionally, the activation request may include POS information, e.g., at least one of POS terminal identification information, store or merchant information (e.g., identification information) associated with the POS terminal, location information associated with the POS terminal, or partial portions thereof, etc. In some embodiments, any location or location information may additionally or alternatively include identification information, and vice versa. Any location information described herein may include location indicators, identifiers, etc. In some embodiments, the first computing system **3320** forwards the activation request to the second computing system **3330**. In other embodiments, the first computing system **3320** processes or performs operations on the activation request, and then sends the processed activation request to

53

the second computing system **3330**. In some embodiments, functions associated with one or more computing systems may be performed by fewer or more computing systems. In some embodiments, the activation request comprises information in the code **3220** (and/or in the information **3230**). The information in or represented by the code **3220** (and/or in or represented by the information **3230**) may comprise information described as being comprised in or transmitted in an activation request.

In some embodiments, the second computing system **3330** includes or communicates with a database **3340**. The database **3340** comprises plays (i.e., randomly generated number sets) associated with identification information of cards. In some embodiments, card identification information may refer to ticket (e.g., lottery ticket) identification information associated with one or more game plays (e.g., associated with one or more games). Therefore, communication with the database **3340** reveals a randomly generated number set (or more than one set) associated with card identification information received at the second computing system **3330**, either from the first computing system **3320** or received directly from the POS terminal **3310**.

In some embodiments, the second computing system **3330** receives the card identification information and the POS information (e.g., in the activation request) and compares the received information with information stored (e.g., location and/or identification information associated with the POS terminal, merchant, store and/or card identification information, or partial portions thereof) in the database **3340** to determine correspondence (e.g., partial or full correspondence) or a match (e.g., full correspondence). For example, the second computing system **3330** determines whether the POS information received in the activation request at least partially corresponds (or matches) with the POS information, associated with the card identification information, stored in the database **3340**. As a further example, the second computing system **3330** determines, based on the information in the activation request and based on accessing the information stored in the database **3340**, one or more game plays listed on the card. Therefore, the second computing system **3330** uses the received card identification information to find matching or corresponding card identification information in the database **3340**, and then determine one or more plays associated with that card identification information.

If a match is found, by the second computing system **3330**, for the card identification information and/or the POS information, the second computing system **3330** sends a game wager request or a game-playing request to the third computing system **3350**, which may be a gaming system associated with one or more games. The game wager request includes one or more game plays (or randomly generated number sets) associated with the card identification information. The game wager request may also include the card identification information, or identification information associated with or generated based on the card identification information.

In some embodiments, a user of the card may scan the card or allow the card to be scanned at a terminal **3360** (e.g., a gaming lottery terminal comprising a scanner) following a draw time. If the user is a winner, the terminal may send a redemption request from the terminal **3360** to the third computing system **3350**, either directly or via at least one of the first computing system **3320** and/or the second computing system **3330**. The third computing system **3350** may access a database or file (e.g., the same database as or different from database **3340**) to compare the card identifi-

54

cation information included in the redemption request with winning card identification information included in the file (e.g., the winner's file). If a match is found, the third computing system **3350** sends the prize amount to the terminal **3360** or a different terminal (e.g., associated with a user of the card) for initiating or executing a payment process, or directly to a previously registered account associated with the card identification information.

Alternatively, in some embodiments, the second computing system **3330** may send winning card identification information to the third computing system **3350**, wherein the second computing system **3330** uses a process similar to that used by the third computing system **3350** to determine winning card identification information.

The third computing system **3350** also sends confirmation of payment to the second computing system **3330**, and the second computing system accordingly updates a record associated with the card identification information in the database **3340**. The second computing system **3330** may send a confirmation of the update to the third computing system **3350**.

FIG. **34** is a perspective view of a lottery card, in accordance with some embodiments. In some embodiments, the lottery card may be used for other games, and therefore may be a gaming card such as a non-lottery gaming card. FIG. **34** shows a game board **3410** and indicators associated with or covering numbers such that the numbers are not visible to an observer. One of the indicators is indicator **3420**. In other embodiments, the circular indicators may be replaced with other shapes, e.g., three-sided, four-sided, five-sided, elliptical, irregular shape, etc. The cutout **3430** may also be replaced by other shapes, e.g., three-sided, four-sided, five-sided, elliptical, irregular shape, etc. In some embodiments, the cutout may be for ornamental purposes. In other embodiments, the cutout may have utility such that it is used for placing on a shoulder of a rack at a store such as a retail store. In some embodiments, the indicators may be nearer or farther away from each other compared to that shown in FIG. **34**.

FIG. **35** is a front view of a lottery card, in accordance with some embodiments. FIG. **36** is a back view of a lottery card, in accordance with some embodiments. FIG. **37** is a side view (e.g., right side view) of a lottery card, in accordance with some embodiments. FIG. **38** is another side view (e.g., left side view) of a lottery card, in accordance with some embodiments. FIG. **39** is a top view of a lottery card, in accordance with some embodiments. FIG. **40** is a bottom view of a lottery card, in accordance with some embodiments. In any future design application, the dashed lines may form no part of the claimed design. However, the dashed lines may be converted to solid lines to form part of the claimed design. Additional features for the lottery card may be incorporated from FIGS. **30-32** or as described in this disclosure. In some embodiments, the lottery card may also be referred to as a gaming card.

In some embodiments, a game may comprise at least one of sports betting, sports wagering, sports gambling, money-line bets, spread bets, total bets, over bets, under bets, proposition bets, parlays, teasers, if bets, run line bets, puck line bets, goal line bets, future wagers, head-to-head bets, totalizators, flexible-rate bets, half bets, in-play betting, bookmaking, arbitrage betting, parimutuel betting, and/or mutual betting, etc.

In some embodiments, sports betting may be based on at least one of handicaps, spreads, thresholds, time limits, time periods, underdogs, favorites, fractional points, decimal points, point differences, odds, fractional odds, decimal

US 10,229,561 B2

55

odds, moneyline odds, probabilities, crowd predictions, predictions, ticket sales, event attendance, social media data (and/or sentiment analysis thereof), media content "likes," social media followers, historical outcomes, event locations, betting pools, and/or overtime, etc.

In some embodiments, sports may comprise at least one of human and/or non-human (e.g. animal, robot, artificial intelligence) participants. In some embodiments, sports may include e-sports, including sports associated with video games, etc.

In some embodiments, sports may comprise non-athletic events such as at least one of reality shows, talent contests, elections, stock-picking, price trends, simulated sports, video games, racing (e.g. with vehicles or drones), popularity contests, creativity contests, scavenger hunts, card games, board games, etc.

Some embodiments may comprise and/or use at least one of a blockchain, list of linked blocks, and/or public ledger network, etc. A blockchain may comprise cryptographic blocks comprising at least one of a hash, timestamp, and/or transaction data, and other game information, etc. A ledger of a blockchain may be at least one of distributed, decentralized, un-editable, and/or publicly viewable. In some embodiments, a ledger may be centralized. In some embodiments, a blockchain may be peer-to-peer.

A blockchain may or be used to at least one of record events, transactions, in-game currencies, real-world currencies, bets, prices, odds, voting, game information, game data, user information, participant identities, historical information, other game information, and/or any other information described herein, etc. Recorded information may be stored in blocks, metadata, and/or ledger data.

Blocks may comprise batches, and/or batches may comprise blocks. Blocks may be hashed and/or encoded in a hash tree (e.g. Merkle tree). Hashes may be cryptographic. A blockchain may allow for at least one of a single chain, multiple chains, temporary forks, and/or permanent forks, etc.

Individuals and/or machines may be compensated in at least one of virtual currency, in-game currency, and/or real-world currency for performing computation (e.g. in serial and/or in parallel) on cryptographic hashes, etc.

In some embodiments, a game may comprise solving a cryptographic hash. In some embodiments, block time may be configurable. In some embodiments, block time may depend on the game related to the blockchain. Some embodiments may involve hard forks. Blockchains may or may not require permissions. Blockchain operation may be geo-fenced and/or limited geographically.

In some embodiments, at least one of a block, blockchain, and/or blockchain network may initiate at least one of a game, create a game session, interact with a game, respond to a game, record a game action, serve as a "bookie", serve as a middleman, serve as an escrow, record a game-related transaction, perform any other game-related operation or transaction described herein, and/or perform any other operation or transaction using any type of information described herein (i.e., in this disclosure), etc.

In some embodiments, any feature described in any part of this disclosure may be used in combination with any other feature described in any other part of this disclosure. A feature may refer to a system, a method, an element, an object, etc. In some embodiments, any feature described herein may be incorporated into a ride-sharing mobile application such that a passenger or computing device in the motor vehicle or the user's mobile phone may execute or

56

initiate any operations described herein before, after, or during a ride associated with the ride-sharing mobile application.

In some embodiments, a method is provided for processing information associated with, or enabling initiation or conduction of, game-playing transactions, the method comprising: receiving, from a user device, or sending, to the user device, information associated with a game-playing transaction between a mobile device and one or more game-playing apparatuses configured for operations associated with game-playing transaction, wherein the game-playing transaction is associated with a game, wherein the game is associated with or comprises game information; determining, using one or more computing device processors, identification information or location information associated with the user device or the one or more game-playing apparatuses; determining, using the one or more computing device processors, the user device is an approved user device or the one or more game-playing apparatuses are approved one or more game-playing apparatuses, respectively, the user device or the one or more game-playing apparatuses being located in an approved location associated with the game; processing the information, or enabling initiation or conduction of the game-playing transaction, based on at least one of: determining, using the one or more computing device processors, the user device or the one or more game-playing apparatuses is the approved user device or the approved one or more game-playing apparatuses, respectively, based on cross-referencing second information or second identification information, and determining, using the one or more computing device processors, the identification information or the location information is at least partially consistent with or mappable to the second information or the second identification information, or determining, using the one or more computing device processors, a period of validity associated with the game-playing transaction or the game information has not expired, wherein the information associated with the game-playing transaction is received or sent on a first communication interface, and wherein the game-playing transaction is conducted or will be conducted on a second communication interface.

In some embodiments, the user device or the one or more game-playing apparatuses comprises or is associated with, integrated with, or comprised in at least one of a pump, an ATM, a servicing station, a retail apparatus, an entity, a local computing apparatus, or a remote computing apparatus.

In some embodiments, the user device comprises a retail apparatus configured for processing the information associated with the game-playing transaction.

In some embodiments, the one or more game-playing apparatuses comprises a remote server configured for the operations associated with the game-playing transaction.

In some embodiments, the mobile device comprises a mobile phone configured for second operations associated with the game-playing transaction.

In some embodiments, the user device comprises one or more local or remote game-playing apparatuses configured for second operations associated with the game-playing transaction.

In some embodiments, the user device comprises a point-of-sale terminal configured for enabling initiation or conduction of the game-playing transactions.

In some embodiments, the one or more game-playing apparatuses comprises one or more local or remote game-playing apparatuses.

In some embodiments, determining, using the one or more computing device processors, the user device or the one or

US 10,229,561 B2

57

more game-playing apparatuses is the approved user device or the approved one or more game-playing apparatuses, respectively, may be based on cross-referencing the second information or the second identification information, and determining, using the one or more computing device processors, the identification information is at least partially consistent with or mappable to the second information or the second identification information, or determining, using the one or more computing device processors, the period of validity associated with the game-playing transaction has not expired, comprises: determining, using the one or more computing device processors, the user device or the one or more game-playing apparatuses is the approved user device or the approved one or more game-playing apparatuses, respectively, based on cross-referencing the second information or the second identification information, and determining, using the one or more computing device processors, the identification information is at least partially consistent with or mappable to the second information or the second identification information.

In some embodiments, determining, using the one or more computing device processors, the user device or the one or more game-playing apparatuses is the approved user device or the approved one or more game-playing apparatuses, respectively, based on cross-referencing the second information or the second identification information, and determining, using the one or more computing device processors, the identification information is at least partially consistent with or mappable to the second information or the second identification information, or determining, using the one or more computing device processors, the period of validity associated with the game-playing transaction has not expired, comprises: determining, using the one or more computing device processors, the period of validity associated with conducting the game-playing transaction has not expired.

In some embodiments, the game-playing transaction comprises at least one of a gaming transaction, a game initiation transaction, a game completing transaction, a pre-game transaction, a post-game transaction, an in-game transaction, a game-related transaction, a location determining transaction, an identification transaction, an information processing transaction, a user identification transaction, a user device identifying transaction, a mobile device identifying transaction, a game-playing apparatus-related transaction, or a game-playing apparatus identifying transaction.

In some embodiments, the receiving or sending the information is executed before the game-playing transaction.

In some embodiments, the receiving or sending the information is executed after the game-playing transaction.

In some embodiments, the receiving or sending the information is executed as a part of the game-playing transaction.

In some embodiments, the one or more computing device processors are comprised in at least one of the user device, the one or more game-playing apparatuses, the mobile device, one or more local computing apparatuses, or one or more remote computing apparatuses.

In some embodiments, the one or more computing device processors are comprised in the one or more game-playing apparatuses.

In some embodiments, the first communication interface is located between the user device and the one or more game-playing apparatuses, and the second communication interface is located between the mobile device and the one or more game-playing apparatuses.

In some embodiments, the information comprises the identification information.

58

In some embodiments, the identification information associated with the user device or the one or more game-playing apparatuses comprises or is associated with or comprised in at least one of user device identification information, game-playing apparatus identification information, merchant information, merchant store information, or second location information.

In some embodiments, the game-playing transaction comprises sending third information from the mobile device to the one or more game-playing apparatuses.

In some embodiments, the first communication interface or the second communication interface comprises at least one of a Bluetooth-based interface, a near-field communication (NFC) interface, a code-based interface, a Wi-Fi interface, a cellular interface, or a wired interface.

In some embodiments, the one or more game-playing apparatuses comprise a gaming facilitator, wherein the gaming facilitator comprises a firewall, logging security, core logic, and transaction logic.

In some embodiments, the one or more game-playing apparatuses comprise a communications exchange server.

In some embodiments, determining, using the one or more computing device processors, the location is at least partially consistent with or mappable to the second information or the identification information comprises determining, using the one or more computing device processors, the location matches the second information or the identification information.

Some embodiments further comprise modifying the mobile device, the user device, or the one or more game-playing apparatuses based on determining the user device is the approved user device or the one or more game-playing apparatuses are the approved one or more game-playing apparatuses, respectively.

In some embodiments, processing the game-playing transaction, or enabling initiation or conduction of the game-playing transaction, is based on validating, using the one or more computing device processors, an age of a user associated with the user device, the one or more game-playing apparatuses, or the mobile device.

In some embodiments, the game information is comprised in the information.

In some embodiments, the information is comprised in the game information.

In some embodiments, the game-playing transaction comprises a gaming operation.

In some embodiments, the game-playing transaction comprises a game-related operation.

In some embodiments, the user device comprises a local computing apparatus and a remote computing apparatus.

In some embodiments, the one or more game-playing apparatuses comprises a local computing apparatus and a remote computing apparatus.

In some embodiments, the game comprises a lottery game.

In some embodiments, the game comprises a non-lottery game.

In some embodiments, the one or more computing device processor comprises one or more software-customized processors configured for the operations associated with the game-playing transaction.

Some embodiments may provide a network system comprising one or more game-playing apparatuses for processing, or enabling initiation or conduction of, game-playing transactions, the one or more game-playing apparatuses comprising one or more software-customized processors configured for: receiving, from a user device, or sending, to

US 10,229,561 B2

59                                                                    60

the user device, information associated with a game-playing transaction between a mobile device and the one or more game-playing apparatuses, wherein the game-playing transaction is associated with a game, wherein the game is associated with or comprises game information; determining identification information or location information associated with the user device or the one or more game-playing apparatuses; determining the user device is an approved user device or the one or more game-playing apparatuses are approved one or more game-playing apparatuses, respectively, the user device or the one or more game-playing apparatuses being located in an approved location associated with the game; processing the information, or enabling initiation or conduction of the game-playing transaction, based on at least one of: determining the user device or the one or more game-playing apparatuses is the approved user device or the approved one or more game-playing apparatuses, respectively, based on cross-referencing second information or second identification information, and determining, using the one or more computing device processors, the identification information or the location information is at least partially consistent with or mappable to the second information or the second identification information, wherein the information associated with the game-playing transaction is received or sent on a first communication interface, and wherein the game-playing transaction is conducted or will be conducted on a second communication interface.

In some embodiments involving the network system, the user device or the one or more game-playing apparatuses comprises or is associated with, integrated with, or comprised in at least one of a pump, an ATM, a servicing station, a retail apparatus, an entity, a local computing apparatus, or a remote computing apparatus.

In some embodiments involving the network system, the user device comprises a retail apparatus configured for processing the information associated with the game-playing transaction.

In some embodiments involving the network system, the user device comprises a retail terminal configured for enabling initiation or conduction of the game-playing transaction.

In some embodiments involving the network system, the one or more game-playing apparatuses comprises one or more remote servers configured for operations associated with the game-playing transaction.

In some embodiments involving the network system, the mobile device comprises a mobile phone configured for operations associated with the game-playing transaction.

In some embodiments involving the network system, the game comprises a lottery game.

In some embodiments involving the network system, the game comprises a non-lottery game.

In some embodiments involving the network system, the one or more software-customized processors are specifically configured for processing, or enabling initiation or conduction of, the game-playing transaction.

In some embodiments involving the network system, the game-playing transaction comprises at least one of a gaming transaction, a game initiation transaction, a game completing transaction, a pre-game transaction, a post-game transaction, an in-game transaction, a game-related transaction, a location determining transaction, an identification transaction, an information processing transaction, a user identification transaction, a user device identifying transaction, a mobile

device identifying transaction, a game-playing apparatus-related transaction, or a game-playing apparatus identifying transaction.

In some embodiments involving the network system, the first communication interface is located between the user device and the one or more game-playing apparatuses, and the second communication interface is located between the mobile device and the one or more game-playing apparatuses.

In some embodiments involving the network system, the identification information associated with the user device or the one or more game-playing apparatuses comprises or is associated with or comprised in at least one of user device identification information, game-playing apparatus identification information, merchant information, merchant store information, or second location information.

In some embodiments involving the network system, the first communication interface or the second communication interface comprises at least one of a Bluetooth-based interface, a near-field communication (NFC) interface, a code-based interface, a Wi-Fi interface, a cellular interface, or a wired interface.

In some embodiments involving the network system, the receiving or sending the information is executed before the game-playing transaction.

In some embodiments involving the network system, the receiving or sending the information is executed after the game-playing transaction.

In some embodiments involving the network system, the receiving or sending the information is executed as a part of the game-playing transaction.

Some embodiments may provide a method for processing information associated with, or enabling initiation or conduction of, game-playing transactions, the method comprising: receiving, from a user device and at one or more game-playing apparatuses configured for operations associated with game-playing transactions, information associated with a game-playing transaction, wherein the game-playing transaction is associated with a game, wherein the game is associated with or comprises game information, wherein the user device communicates with the one or more game-playing apparatuses; determining, using the one or more computing device processors, the information is at least partially consistent with or mappable to second information, the second information being received or accessed from a second user device different from the user device, the second user device being located in an approved location associated with the game, the second user device being associated with approved identification information or approved location information; processing the information, or enabling initiation or conduction of the game-playing transaction, based on at least one of: receiving or accessing, using the one or more computing device processors, the second information and determining, using the one or more computing device processors, the information is at least partially consistent with or mappable to the second information, the second information being received or accessed from the second user device located in the approved location associated with the game, or determining, using the one or more computing device processors, a period of validity associated with the game-playing transaction or the game information has not expired, wherein the information associated with the game-playing transaction is received on a first communication interface, and wherein the second information is received or accessed on a second communication interface.

In some embodiments involving the aforementioned method, the second user device or the one or more game-

61

62

playing apparatuses comprises or is associated with, integrated with, or comprised in at least one of a pump, an ATM, a servicing station, a retail apparatus, an entity, a local computing apparatus, or a remote computing apparatus.

In some embodiments involving the aforementioned method, the second user device comprises a retail apparatus configured for at least one of receiving, processing, or transmitting the second information.

In some embodiments involving the aforementioned method, the one or more game-playing apparatuses comprises a remote server configured for the operations associated with the game-playing transaction.

In some embodiments involving the aforementioned method, the user device comprises a mobile telecommunication device configured for second operations associated with the game-playing transactions.

In some embodiments involving the aforementioned method, the second user device comprises one or more local or remote game-playing apparatuses configured for second operations associated with the game-playing transactions.

In some embodiments involving the aforementioned method, the second user device comprises a retail terminal configured for enabling initiation or conduction of the game-playing transaction.

In some embodiments involving the aforementioned method, the second user device comprises a local computing terminal configured for enabling initiation or conduction of the game-playing transaction.

In some embodiments involving the aforementioned method, the one or more game-playing apparatuses comprises one or more local or remote game-playing apparatuses.

In some embodiments involving the aforementioned method, receiving or accessing, using the one or more computing device processors, the second information and determining, using the one or more computing device processors, the information is at least partially consistent with or mappable to the second information, the second information being received or accessed from the second user device located in the approved location associated with the game, or determining, using the one or more computing device processors, a period of validity associated with the game-playing transaction or the game information has not expired, comprises: receiving or accessing, using the one or more computing device processors, the second information and determining, using the one or more computing device processors, the information is at least partially consistent with or mappable to the second information, the second information being received or accessed from the second user device located in the approved location associated with the game.

In some embodiments involving the aforementioned method, receiving or accessing, using the one or more computing device processors, the second information and determining, using the one or more computing device processors, the information is at least partially consistent with or mappable to the second information, the second information being received or accessed from the second user device located in the approved location associated with the game, or determining, using the one or more computing device processors, a period of validity associated with the game-playing transaction or the game information has not expired, comprises: determining, using the one or more computing device processors, a period of validity associated with the game-playing transaction or the game information has not expired.

In some embodiments involving the aforementioned method, the game-playing transaction comprises receiving, from the user device and at the one or more game-playing apparatuses configured for the operations associated with the game-playing transactions, the information associated with the game-playing transaction.

In some embodiments involving the aforementioned method, the game-playing transaction comprises at least one of a gaming transaction, a game initiation transaction, a game completing transaction, a pre-game transaction, a post-game transaction, an in-game transaction, a game-related transaction, a location determining transaction, an identification transaction, an information processing transaction, a user identification transaction, a user device identifying transaction, a game-playing apparatus-related transaction, or a game-playing apparatus identifying transaction.

In some embodiments involving the aforementioned method, the receiving the information is executed before the game-playing transaction.

In some embodiments involving the aforementioned method, the receiving the information is executed after the game-playing transaction.

In some embodiments involving the aforementioned method, the receiving the information is executed as a part of the game-playing transaction.

In some embodiments involving the aforementioned method, the one or more computing device processors are comprised in at least one of the user device, the one or more game-playing apparatuses, the second user device, one or more local computing apparatuses, or one or more remote computing apparatuses.

In some embodiments involving the aforementioned method, the one or more computing device processors are customized for performing specific operations associated with the game-playing transactions.

In some embodiments involving the aforementioned method, the one or more computing device processors are comprised in the one or more game-playing apparatuses.

In some embodiments involving the aforementioned method, the first communication interface is located between the user device and the one or more game-playing apparatuses, and the second communication interface is located between the second user device and the one or more game-playing apparatuses.

In some embodiments involving the aforementioned method, the information or the second information comprises identification information.

In some embodiments involving the aforementioned method, the second user device is determined to be in the approved location based on at least one of user device identification information, game-playing apparatus identification information, merchant information, merchant store information, or second location information.

In some embodiments involving the aforementioned method, the game-playing transaction comprises sending third information from the user device to the one or more game-playing apparatuses.

In some embodiments involving the aforementioned method, the first communication interface or the second communication interface comprises at least one of a Bluetooth-based interface, a near-field communication (NFC) interface, a code-based interface, a Wi-Fi interface, a cellular interface, a wireless interface, or a wired interface.

Some embodiments involving the aforementioned method further comprise modifying the second user device based on determining the second user device is the approved user device.

US 10,229,561 B2

63

64

In some embodiments involving the aforementioned method, processing the game-playing transaction, or enabling initiation or conduction of the game-playing transaction, is based on validating, using the one or more computing device processors, an age of a user associated with the user device, the one or more game-playing apparatuses, or the second user device.

In some embodiments involving the aforementioned method, the game information is comprised in at least one of the information or the second information.

In some embodiments involving the aforementioned method, at least one of the information or the second information is comprised in the game information.

In some embodiments involving the aforementioned method, the game-playing transaction comprises a gaming operation.

In some embodiments involving the aforementioned method, the game-playing transaction comprises a game-related operation.

In some embodiments involving the aforementioned method, the second user device comprises a local computing apparatus and a remote computing apparatus.

In some embodiments involving the aforementioned method, the one or more game-playing apparatuses comprises a local computing apparatus and a remote computing apparatus.

In some embodiments involving the aforementioned method, the game comprises a lottery game.

In some embodiments involving the aforementioned method, the game comprises a non-lottery game.

Some embodiments may comprise an apparatus for processing information associated with, or enabling initiation or conduction of, game-playing transactions, the apparatus comprising one or more software-customized processors configured for: receiving, from a user device and at one or more game-playing apparatuses configured for operations associated with game-playing transactions, information associated with a game-playing transaction, wherein the game-playing transaction is associated with a game, wherein the game is associated with or comprises game information, wherein the user device communicates with the one or more game-playing apparatuses; determining the information is at least partially consistent with or mappable to second information, the second information being received or accessed from a second user device different from the user device, the second user device being located in an approved location associated with the game; processing the information, or enabling initiation or conduction of the game-playing transaction, based on at least one of: receiving or accessing the second information and determining the information is at least partially consistent with or mappable to the second information, the second information being received or accessed from the second user device located in the approved location associated with the game, or determining a period of validity associated with the game-playing transaction or the game information has not expired, wherein the information associated with the game-playing transaction is received on a first communication interface, and wherein the second information is received or accessed on a second communication interface.

In some embodiments involving the apparatus, the second user device comprises a retail apparatus configured for at least one of receiving, processing, or transmitting the second information.

In some embodiments involving the apparatus, the one or more game-playing apparatuses comprises a remote server configured for the operations associated with the game-playing transaction.

In some embodiments involving the apparatus, the user device comprises a mobile telecommunication device configured for second operations associated with the game-playing transactions.

In some embodiments involving the apparatus, the one or more software-customized processors are specifically configured for processing, or enabling initiation or conduction of, the game-playing transaction.

In some embodiments involving the apparatus, the game comprises a lottery game.

In some embodiments involving the apparatus, the game comprises a non-lottery game.

While various embodiments in accordance with the disclosed principles have been described above, it should be understood that they have been presented by way of example only, and are not limiting. Thus, the breadth and scope of the invention(s) should not be limited by any of the above-described exemplary embodiments, but should be defined only in accordance with the claims and their equivalents issuing from this disclosure. Furthermore, the above advantages and features are provided in described embodiments, but shall not limit the application of such issued claims to processes and structures accomplishing any or all of the above advantages.

Additionally, the section headings herein are provided for consistency with the suggestions under 37 C.F.R. 1.77 or otherwise to provide organizational cues. These headings shall not limit or characterize the invention(s) set out in any claims that may issue from this disclosure. Specifically and by way of example, although the headings refer to a "Technical Field," such claims should not be limited by the language chosen under this heading to describe the so-called technical field. Further, a description of a technology in the "Background" is not to be construed as an admission that technology is prior art to any invention(s) in this disclosure. Neither is the "Summary" to be considered as a characterization of the invention(s) set forth in issued claims. Furthermore, any reference in this disclosure to "invention" in the singular should not be used to argue that there is only a single point of novelty in this disclosure. Multiple inventions may be set forth according to the limitations of the multiple claims issuing from this disclosure, and such claims accordingly define the invention(s), and their equivalents, that are protected thereby. In all instances, the scope of such claims shall be considered on their own merits in light of this disclosure, but should not be constrained by the headings herein.

What is claimed is:

1. A method for processing, or enabling initiation or conduction of, game-playing transactions, the method comprising:

receiving or sending information, associated with a game-playing transaction, between a user device and a game-playing apparatus, wherein the game-playing transaction is associated with a game, wherein the game is associated with or comprises game information;

determining, using one or more computing device processors, location information or identification information associated with the user device or the game-playing apparatus;

determining, using the one or more computing device processors, the user device or the game-playing apparatus comprises or is an approved user device or an

65                                    66

approved game-playing apparatus, wherein the approved user device or the approved game-playing apparatus is located in an approved location associated with the game;

processing the information or the game-playing transaction, or enabling initiation or conduction of the game-playing transaction, based on at least one of:

determining, using the one or more computing device processors, the user device or the game-playing apparatus comprises or is the approved user device or the approved game-playing apparatus based on determining, using the one or more computing device processors, the location information or the identification information is at least partially consistent with or mappable to second information or second identification information, or

determining, using the one or more computing device processors, a period of validity associated with the information or the game information has not expired,

wherein the game-playing transaction is conducted or is to be conducted on a first communication interface, and

wherein the information associated with the game-playing transaction is received or sent on the first communication interface or a second communication interface.

2. The method of claim 1, wherein the game-playing transaction comprises, is, or is comprised in at least one of a gaming transaction, a wagering transaction, a game initiation transaction, a game completing transaction, a pre-game transaction, a post-game transaction, an in-game transaction, a game-related transaction, a card-based transaction, a betting transaction, a location determining transaction, an identification transaction, an information processing transaction, a sports betting transaction, a user identification transaction, a crypto-based transaction, a blockchain-based transaction, a user device identifying transaction, a mobile device identifying transaction, a game-playing apparatus-related transaction, or a game-playing apparatus identifying transaction.

3. The method of claim 1, wherein at least one of: determining, using the one or more computing device processors, the user device or the game-playing apparatus comprises or is the approved user device or the approved game-playing apparatus based on determining, using the one or more computing device processors, the location information or the identification information is at least partially consistent with or mappable to the second information or the second identification information, or determining, using the one or more computing device processors, the period of validity associated with the information or the game information has not expired, comprises: determining, using the one or more computing device processors, the user device or the game-playing apparatus comprises or is the approved user device or the approved game-playing apparatus based on determining, using the one or more computing device processors, the identification information is at least partially consistent with or mappable to the second information or the second identification information.

4. The method of claim 1, wherein at least one of: determining, using the one or more computing device processors, the user device or the game-playing apparatus comprises or is the approved user device or the approved game-playing apparatus based on determining, using the one or more computing device processors, the location information or the identification information is at least partially consistent with or mappable to the second information or the second identification information, or determining, using the one or more computing device processors, the period of validity associated with the information or the game information has not expired, comprises: determining, using the one or more computing device processors, the period of validity associated with the information or the game information has not expired.

5. The method of claim 1, wherein the one or more computing device processors are comprised in at least one of the user device, the game-playing apparatus, or one or more local or remote computing apparatuses.

6. The method of claim 1, wherein the one or more computing device processors are software-customized for performing specialized operations associated with the game-playing transactions.

7. The method of claim 1, wherein an interaction between a gaming card and the user device causes receiving, at the game-playing apparatus, the information from the user device.

8. The method of claim 7, wherein the information is stored on the gaming card and is transmitted to or accessed by the user device when the gaming card interacts with the user device.

9. The method of claim 7, wherein the information is comprised in a code associated with the gaming card.

10. The method of claim 7, wherein the information is comprised in a code visible on a face of the gaming card.

11. The method of claim 9, wherein the code is or comprises an activation code.

12. The method of claim 11, wherein the gaming card further comprises a second code covered by a removable surface.

13. The method of claim 12, wherein the second code is or comprises a redemption code.

14. The method of claim 9, wherein the code comprises third identification information, and wherein the third identification information is associated with the gaming card.

15. The method of claim 7, wherein the gaming card comprises a lottery gaming card.

16. The method of claim 7, wherein the gaming card comprises a non-lottery gaming card.

17. The method of claim 7, wherein the interaction comprises at least one of a contact interaction, a swiping interaction, or a contactless interaction.

18. The method of claim 1, wherein the user device or the game-playing apparatus comprises, is, or is associated with, integrated with, or comprised in at least one of a pump, an ATM, a servicing station, a retail apparatus, an entity, one or more mobile computing devices, one or more non-mobile computing devices, one or more local computing apparatuses, or one or more remote computing apparatuses.

19. The method of claim 1, wherein the user device comprises a retail apparatus configured for receiving, processing, or transmitting the information associated with the game-playing transaction.

20. The method of claim 1, wherein the first communication interface is located between the user device and the game-playing apparatus.

21. The method of claim 1, wherein the second communication interface is located at least one of between the user device and the game-playing apparatus, or between the game-playing apparatus and a second game-playing apparatus.

22. The method of claim 1, wherein the first communication interface and the second communication interface are the same communication interface.

23. The method of claim 1, wherein the first communication interface and the second communication interface are different communication interfaces.

US 10,229,561 B2

67

**24.** The method of claim **1**, wherein the first communication interface or the second communication interface comprises at least one of a Bluetooth-based interface, a near-field communication (NFC) interface, a code-based interface, a Wi-Fi interface, a cellular interface, or a wired interface.

**25.** The method of claim **1**, wherein the game-playing apparatus comprises a customized gaming facilitator, wherein the customized gaming facilitator comprises a firewall, logging security, core logic, and customized transaction logic.

**26.** The method of claim **1**, wherein the game-playing apparatus comprises one or more communication exchange servers.

**27.** The method of claim **1**, wherein the information comprises the identification information associated with the user device or the game-playing apparatus.

**28.** The method of claim **27**, wherein the identification information associated with the user device or the game-playing apparatus comprises entity identification information for an entity associated with the user device or the game-playing apparatus.

**29.** The method of claim **1**, wherein the information or the second information comprises lottery number information associated with or loaded onto a gaming card.

**30.** The method of claim **1**, wherein in response to processing the information or the game-playing transaction, or enabling the initiation or the conduction of the game-playing transaction, transmitting third information to a gaming system.

**31.** The method of claim **30**, wherein the third information comprises a wagering request based on the information.

**32.** The method of claim **31**, wherein the wagering request comprises at least one of lottery number information associated with a gaming card interacting with the user device, the information, or the identification information associated with the user device or the game-playing apparatus.

**33.** The method of claim **32**, further comprising receiving winning user information or winning gaming card identification information, the winning user information or the winning gaming card identification information being associated with the game.

**34.** The method of claim **33**, further comprising sending an update to a database system, the update being based on the winning user information or the winning gaming card identification information.

**35.** The method of claim **1**, wherein the information comprises third identification information, wherein the third identification information is associated with a gaming card interacting with the user device.

**36.** The method of claim **1**, wherein receiving or sending the information is executed before the game-playing transaction.

**37.** The method of claim **1**, wherein receiving or sending the information is executed after the game-playing transaction.

**38.** The method of claim **1**, wherein receiving or sending the information is executed as part of or substantially simultaneously with the game-playing transaction.

**39.** The method of claim **1**, wherein the information comprises a request to activate a gaming card or gaming card identification information associated with the gaming card, wherein the gaming card interacts with the user device, thereby causing receiving or sending the information between the user device and the game-playing apparatus.

**40.** The method of claim **1**, wherein an interaction between a gaming card and the user device causes receiving,

68

at the game-playing apparatus, the information from the user device, and wherein the gaming card, or a package comprising the gaming card, comprises a hook slot or hole shaped or configured for enabling placement of the gaming card, or the package comprising the gaming card, onto a display hook.

**41.** The method of claim **1**, wherein an interaction between a gaming card and the user device causes receiving, at the game-playing apparatus, the information from the user device, and wherein the gaming card is associated with or comprises one or more game plays prior to the interaction between the gaming card and the user device.

**42.** The method of claim **41**, wherein the one or more game plays comprises one or more lottery numbers associated with one or more draw dates.

**43.** The method of claim **42**, wherein the one or more draw dates are associated with a single lottery gaming provider or at least two different lottery gaming providers, and wherein the one or more draw dates comprises at least one of a next draw date associated with the game or a future draw date associated with the game.

**44.** The method of claim **42**, wherein the one or more game plays are pre-configured or user-configurable such that the information received or sent between the user device and the game-playing apparatus comprises game play information associated with the one or more game plays.

**45.** The method of claim **1**, wherein an interaction between a gaming card and the user device causes receiving, at the game-playing apparatus, the information from the user device, and wherein the gaming card is comprised in a gaming card package that comprises a hook hole or slot shaped or configured for enabling placement of the gaming card package onto a display hook.

**46.** The method of claim **1**, wherein the game-playing apparatus comprises one or more game-playing apparatuses, and wherein the one or more computing device processors are comprised in the one or more game-playing apparatuses.

**47.** An apparatus for processing, or enabling initiation or conduction of, game-playing transactions, the apparatus comprising one or more computing device processors configured to:

receive or send information, associated with a game-playing transaction, between a user device and a game-playing apparatus, wherein the game-playing transaction is associated with a game, wherein the game is associated with or comprises game information;

determine location information or identification information associated with the user device or the game-playing apparatus;

determine the user device or the game-playing apparatus is associated with approved location information or approved identification information associated with the game, wherein the user device or the game-playing apparatus is located in an approved location associated with the game;

process the information or the game-playing transaction, or enable initiation or conduction of the game-playing transaction, based on at least one of:

determining the user device or the game-playing apparatus is associated with the approved location information or the approved identification information associated with the game based on determining the location information or the identification information is at least partially consistent with or mappable to second information or second identification information, or

US 10,229,561 B2

69 70

determining a period of validity associated with the information or the game information has not expired, wherein the game-playing transaction is conducted or is to be conducted on a first communication interface, and wherein the information associated with the game-playing transaction is received or sent on the first communication interface or a second communication interface.

**48**. The apparatus of claim **47**, wherein the game-playing transaction comprises, is, or is comprised in at least one of a gaming transaction, a wagering transaction, a game initiation transaction, a game completing transaction, a pre-game transaction, a post-game transaction, an in-game transaction, a game-related transaction, a betting transaction, a location determining transaction, an identification transaction, an information processing transaction, a sports betting transaction, a user identification transaction, a crypto-based transaction, a blockchain-based transaction, a user device identifying transaction, a mobile device identifying transaction, an apparatus-related transaction, a game-playing apparatus-related transaction, or a game-playing apparatus identifying transaction.

**49**. The apparatus of claim **47**, wherein at least one of: determining the user device or the game-playing apparatus is associated with the approved location information or the approved identification information associated with the game based on determining the location information or the identification information is at least partially consistent with or mappable to the second information or the second identification information, or determining the period of validity associated with the information or the game information has not expired, comprises: determining the user device or the game-playing apparatus is associated with the approved location information or the approved identification information associated with the game based on determining the location information or the identification information is at least partially consistent with or mappable to the second information or the second identification information.

**50**. The apparatus of claim **47**, wherein at least one of: determining the user device or the game-playing apparatus is associated with the approved location information or the approved identification information associated with the game based on determining the location information or the identification information is at least partially consistent with or mappable to the second information or the second identification information, or determining the period of validity associated with the information or the game information has not expired, comprises: determining the period of validity associated with the information or the game information has not expired.

**51**. The apparatus of claim **47**, wherein the apparatus is further configured to modify or configure the user device or the game-playing apparatus based on the determination that the user device or the game-playing apparatus is associated with the approved location information or the approved identification information associated with the game.

**52**. The apparatus of claim **47**, wherein the one or more computing device processors are software-customized for processing the information, or enabling the initiation or the conduction of the game-playing transaction.

**53**. The apparatus of claim **47**, wherein at least one of the user device or the game-playing apparatus comprises, is, or is associated with, integrated with, or comprised in at least one of a pump, an ATM, a servicing station, a retail apparatus, an entity, one or more mobile computing devices, one or more non-mobile computing devices, one or more local computing apparatuses, one or more remote computing apparatuses, or the apparatus.

**54**. The method of claim **47**, wherein an interaction between a gaming card and the user device causes receipt, at the apparatus or the game-playing apparatus, of the information from the user device.

**55**. The apparatus of claim **54**, wherein the gaming card, or a package comprising the gaming card, comprises a hook hole or slot shaped or configured for enabling placement of the gaming card, or the package comprising the gaming card, onto a display hook.

**56**. The apparatus of claim **47**, wherein at least one of the first communication interface or the second communication interface is located between the apparatus, or the game-playing apparatus, and the user device, and wherein the at least one of the first communication interface or the second communication interface comprises one or more intermediary computing devices enabling communication between the apparatus, or the game-playing apparatus, and the user device.

**57**. The apparatus of claim **47**, wherein a gaming card associated with the game comprises one or more lottery game play sets associated with one or more draws.

**58**. The apparatus of claim **57**, wherein the gaming card comprises a first code for activating the gaming card and a second code for redeeming an item or a prize associated with a game play associated with the one or more lottery game play sets.

**59**. A gaming apparatus configured to:

interact with a user device, the interaction causing information comprised in the gaming apparatus to be received, by at least one remote server configured for operations associated with game-playing transactions, or accessed, by the at least one remote server, from the user device, wherein the user device is located in an approved location associated with a game, wherein the user device is associated with approved identification information or approved location information, wherein the game is associated with or comprises game information,

wherein the at least one remote server is further configured to:

determine the information is at least partially consistent with or mappable to second information or identification information, the second information or the identification information being received, by the at least one remote server, or accessed, by the at least one remote server, from a computing device;

process the information, or enable initiation or conduction of a game-playing transaction based on or associated with the information, based on at least one of:

determining the information is at least partially consistent with or mappable to the second information or the identification information, wherein the information is received or accessed from the user device located in the approved location associated with the game, wherein the interaction between the user device and the gaming apparatus occurs in the approved location associated with the game, or determining a period of validity associated with the information or the game information has not expired,

wherein the information is received or accessed by the at least one remote server on a first communication interface between the user device and the at least one remote server, and

US 10,229,561 B2

71

72

wherein the second information is received or accessed by the at least one remote server on a second communication interface between the computing device and the at least one remote server.

**60**. The gaming apparatus of claim **59**, wherein the gaming apparatus is customized for the interaction with the user device.

**61**. The gaming apparatus of claim **59**, wherein the information comprises location information associated with the user device or second identification information, wherein the second identification information is associated with the user device.

**62**. The gaming apparatus of claim **61**, wherein the information further comprises gaming apparatus identification information associated with the gaming apparatus.

**63**. The gaming apparatus of claim **59**, wherein the information comprises gaming apparatus identification information associated with the gaming apparatus.

**64**. The gaming apparatus of claim **59**, wherein the information is not visible on the gaming apparatus in a first state of the gaming apparatus.

**65**. The gaming apparatus of claim **59**, wherein the information is covered by a removable surface in a first state of the gaming apparatus.

**66**. The gaming apparatus of claim **59**, wherein the information is comprised in a readable indicia located on a surface of the gaming apparatus.

**67**. The gaming apparatus of claim **59**, wherein the information is comprised in a code comprised in or on a surface of the gaming apparatus.

**68**. The gaming apparatus of claim **67**, wherein the code comprises a barcode.

**69**. The gaming apparatus of claim **59**, further comprising an activation code and a redemption code.

**70**. The gaming apparatus of claim **69**, wherein the activation code is visible on a first surface of the gaming apparatus, and wherein the redemption code is covered by a removable surface on a second surface of the gaming apparatus.

**71**. The gaming apparatus of claim **59**, further comprising a game board, wherein the game board comprises one or more game plays.

**72**. The gaming apparatus of claim **71**, wherein the one or more game plays are associated with at least two draws.

**73**. The gaming apparatus of claim **71**, wherein the one or more game plays are associated with a single draw.

**74**. The gaming apparatus of claim **71**, wherein each game play, comprised in the one or more game plays, comprises a randomly generated number set associated with the game.

**75**. The gaming apparatus of claim **71**, wherein each game play, comprised in the one or more game plays, comprises a user-defined number set associated with the game.

**76**. The gaming apparatus of claim **59**, wherein the game-playing transaction comprises, is, or is comprised in at least one of a gaming transaction, a wagering transaction, a game initiation transaction, a game completing transaction, a pre-game transaction, a post-game transaction, an in-game transaction, a game-related transaction, a card-based transaction, a betting transaction, a location determining transaction, an identification transaction, an information process-ing transaction, a sports betting transaction, a user identification transaction, a crypto-based transaction, a blockchain-based transaction, a user device identifying transaction, a mobile device identifying transaction, a game-facilitating apparatus-related transaction, a game-playing apparatus-related transaction, or a game-playing apparatus identifying transaction.

**77**. The gaming apparatus of claim **59**, wherein the information is comprised in a chip or a magnetic stripe comprised in or on the gaming apparatus.

**78**. The gaming apparatus of claim **59**, wherein the interaction comprises a contact-based interaction.

**79**. The gaming apparatus of claim **59**, wherein the interaction comprises a contactless interaction.

**80**. The gaming apparatus of claim **59**, wherein the gaming apparatus is or comprises a physical gaming instrument.

**81**. The gaming apparatus of claim **59**, wherein the gaming apparatus, or a package comprising the gaming apparatus, comprises a hook hole or slot, and wherein the hook hole or slot is configured or shaped for enabling placement of the gaming apparatus, or the package comprising the gaming apparatus, onto a display hook.

**82**. The gaming apparatus of claim **59**, wherein the gaming apparatus is or comprises a physical gaming card.

**83**. The gaming apparatus of claim **59**, wherein the gaming apparatus is or comprises an electronic gaming card displayable on a mobile device.

**84**. The gaming apparatus of claim **59**, wherein at least one of: determining the information is at least partially consistent with or mappable to the second information or the identification information, wherein the information is received or accessed from the user device located in the approved location associated with the game, wherein the interaction between the user device and the gaming apparatus occurs in the approved location associated with the game, or determining the period of validity associated with the information or the game information has not expired, comprises: determining the information is at least partially consistent with or mappable to the second information or the identification information, wherein the information is received or accessed from the user device located in the approved location associated with the game, wherein the interaction between the user device and the gaming apparatus occurs in the approved location associated with the game.

**85**. The gaming apparatus of claim **59**, wherein at least one of: determining the information is at least partially consistent with or mappable to the second information or the identification information, wherein the information is received or accessed from the user device located in the approved location associated with the game, wherein the interaction between the user device and the gaming apparatus occurs in the approved location associated with the game, or determining the period of validity associated with the information or the game information has not expired, comprises: determining the period of validity associated with the information or the game information has not expired.

\* \* \* \* \*

# EXHIBIT 5

US00D877812S

(12) **United States Design Patent**     (10) Patent No.:      **US D877,812 S**
Cage et al.                              (45) Date of Patent:  ** **Mar. 10, 2020**

(54) **QUICK TICKET FOR LOTTERY**

(71) Applicant: **Linq3 Technologies LLC**, Atlanta, GA (US)

(72) Inventors: **Daniel Cage**, Atlanta, GA (US); **Travis L. Smith**, Alpharetta, GA (US); **John Frederick Houseal, Jr.**, Atlanta, GA (US)

(73) Assignee: **Linq3 Technologies LLC**, Atlanta, GA (US)

(**) Term: **15 Years**

(21) Appl. No.: **29/660,720**

(22) Filed: **Aug. 22, 2018**

**Related U.S. Application Data**

(63) Continuation of application No. 16/010,398, filed on Jun. 15, 2018, now Pat. No. 10,229,561.

(51) **LOC (12) Cl.** .............................................. **21-02**
(52) **U.S. Cl.**
USPC ....................................................... **D21/377**
(58) **Field of Classification Search**
USPC ....................................................... D21/377
CPC . G07F 17/3286; G07F 17/329; G07F 17/3244
See application file for complete search history.

(56)            **References Cited**

U.S. PATENT DOCUMENTS

D665,463 S    *    8/2012  Johnson  ....................... D21/377

| 8,235,786 | B2 * | 8/2012 | Meyer | ................. | G07F 17/3244 |
| | | | | | 463/17 |
| 8,591,307 | B2 * | 11/2013 | Walker | ................. | G07F 17/329 |
| | | | | | 463/17 |
| 10,173,126 | B2 * | 1/2019 | Brouillard | ........... | G07F 17/3286 |

* cited by examiner

*Primary Examiner* — George D. Kirschbaum
(74) *Attorney, Agent, or Firm* — Landmark Intellectual Property Law, PLLC

(57)            **CLAIM**

The ornamental design for a quick ticket for lottery, as shown and described.

**DESCRIPTION**

FIG. **1** is a perspective view of a first embodiment of a quick ticket for lottery, in accordance with our design;
FIG. **2** is a front view of the quick ticket for lottery shown in FIG. **1**;
FIG. **3** is a back view of the quick ticket for lottery shown in FIG. **1**;
FIG. **4** is a left side view of the quick ticket for lottery shown in FIG. **1**;
FIG. **5** is a right side view of the quick ticket for lottery shown in FIG. **1**;
FIG. **6** is a top view of the quick ticket for lottery shown in FIG. **1**; and,
FIG. **7** is a bottom of the quick ticket for lottery shown in FIG. **1**.
The broken lines in the figures illustrate unclaimed portions of the quick ticket for lottery and form no part of the claimed design.

**1 Claim, 4 Drawing Sheets**





FIG. 1



**FIG. 2**



**FIG. 3**



FIG. 4          FIG. 5

FIG. 6

FIG. 7

# EXHIBIT 6

# PATENT ASSIGNMENT COVER SHEET

Electronic Version v1.1
Stylesheet Version v1.2

EPAS ID: PAT4218368

| SUBMISSION TYPE: | NEW ASSIGNMENT |
|---|---|
| NATURE OF CONVEYANCE: | ASSIGNMENT |

### CONVEYING PARTY DATA

| Name | Execution Date |
|---|---|
| GINO GIUNTI | 08/30/2016 |

### RECEIVING PARTY DATA

| Name: | BLACKHAWK NETWORK, INC. |
|---|---|
| Street Address: | 6220 STONERIDGE MALL ROAD |
| City: | PLEASANTON |
| State/Country: | CALIFORNIA |
| Postal Code: | 94588 |

### PROPERTY NUMBERS Total: 1

| Property Type | Number |
|---|---|
| Application Number: | 14679028 |

### CORRESPONDENCE DATA

**Fax Number:** (214)692-6255
***Correspondence will be sent to the e-mail address first; if that is unsuccessful, it will be sent using a fax number, if provided; if that is unsuccessful, it will be sent via US Mail.***
**Phone:** 214-692-6200
**Email:** patents@wickphillips.com
**Correspondent Name:** JERRY C. HARRIS, JR.
**Address Line 1:** 3131 MCKINNEY AVENUE, SUITE 100
**Address Line 4:** DALLAS, TEXAS 75204

| ATTORNEY DOCKET NUMBER: | 4556.23101 |
|---|---|
| NAME OF SUBMITTER: | JERRY C. HARRIS, JR. |
| SIGNATURE: | /Jerry C. Harris, Jr./ |
| DATE SIGNED: | 01/10/2017 |

**Total Attachments: 6**
source=ExecutedAssignment#page1.tif
source=ExecutedAssignment#page2.tif
source=ExecutedAssignment#page3.tif
source=ExecutedAssignment#page4.tif
source=ExecutedAssignment#page5.tif
source=ExecutedAssignment#page6.tif

## PATENT ASSIGNMENT AGREEMENT

This PATENT ASSIGNMENT AGREEMENT (**"Patent Assignment"**), dated as of August _20_, 2016 (the **"Effective Date"**), is made by Gino Giunti, as an individual, and Pentagon Solutions, Inc. (collectively referred to herein as **"Assignor"**), located at 212 Pentagon Blvd, Sault Ste. Marie, ON P6B 5J3, in favor of Blackhawk Network, Inc. (**"Assignee"**), located at 6220 Stoneridge Mall Road, Pleasanton, CA 94588, in connection with the assignment of certain assets of Assignor to Assignee.

WHEREAS, under the terms of this **Patent Assignment**, Assignor conveys, transfers and assigns to Assignee certain Assigned Patents (as defined herein), and has agreed to execute and deliver this **Patent Assignment** in a form recordable with United States authorities including, but not limited to, the US Patent and Trademark Office (USPTO), and other national and supranational governmental authorities.

WHEREAS, Assignee wishes to obtain all of Assignor's right, title and interest in and to the Assigned Patents (as defined herein).

NOW THEREFORE, Assignor agrees as follows:

      1.     <u>Assignment</u>. In good and valuable consideration described herein, the sufficiency is hereby acknowledged, Assignor hereby irrevocably conveys, transfers and assigns to Assignee, its successors and assigns, and Assignee hereby accepts, all of Assignor's right, title and interest in, to and under the **Assigned Patents** (defined below), of which Assignee warrants that he is the sole inventor and holder of all rights such that he can effectively convey and assign all rights to the Assigned Patents to Assignor. The consideration and milestone payments and terms are as follows:

        a.  After executing this Agreement, Assignor agrees to reasonably cooperate with the execution of necessary papers to complete the effective assignment of the '028 application and to provide all other cooperation needed to draft, revise, and prosecute the '028 application and the **Assigned Patents**.

        b.  Assignee agrees to pay Assignor one hundred thousand dollars USD ($100,000) to be paid upon the successful recordation of the assignment of valid rights to U.S. Patent Application No. 14/679,028 ("the '028 application") entitled "Methods for Selling Pre-Printed Online Lottery

Tickets", with a filing date of 04/06/2015, U.S. Provisional Application No. 62/104,844 (the "'844 application"), and the other **Assigned Patents**.

c.  Twenty five thousand dollars USD ($25,000) in addition will be paid to Assignor if and when the '028 application issues as a granted U.S. patent. Such payment to be applied as an advance credited toward royalties and royalties due, such royalty payments, when due, will be first applied against the amounts advanced by Assignee (e.g., royalties will be deducted from the amount advanced until such amount is exhausted)("**Royalty Advance**").

d.  Twenty five thousand dollars USD ($25,000) in addition will be paid to Assignor if and when a first commercial transaction is completed by Assignee or Assignee's contracted partners for such a transaction in a U.S. state where the transaction is as detailed in Figures 3-5 and 7-8 of the '028 application or the descriptions of those Figures in the '028 application (a "**Covered Transaction**"). A $25,000 payment is made one time for each new state when the first **Covered Transaction** is completed. Each such $25,000 payment is a **Royalty Advance**.

e.  Twenty five thousand dollars USD ($25,000) in addition will be paid to Assignor if and when a first commercial transaction is completed by Assignee or Assignee's contracted partners for such a transaction in a foreign country, other than the U.S. or Canada (Canada is royalty free), where the transaction is a **Covered Transaction**. A $25,000 payment is made one time for each new foreign country, other than the U.S. or Canada, when the first **Covered Transaction** is completed. Each such $25,000 payment is a **Royalty Advance**. The initial payment and royalty stays if there is a patent. If there is no patent in the county the product is launched, then it is a $25,000 initial payment that goes towards the $5M. There are no royalties in a country without a patent.

f.  One and a half cents per **Covered Transaction** USD ($0.015/**Covered Transaction**)("Royalties") up to (i) a maximum cumulative Covered Transaction payment of five million dollars USD ($5,000,000) or (ii) ten (10) years from the first Covered Transaction, excluding in Canada ("Fee Term"), first applying the credit of sections c – e above. Royalties are not due on transactions not following the transaction detailed in Figures 3-5 and 7-8 of the '028 application.

g.  After the first of either (i) the five million dollar maximum payment; or (ii) the ten (10) year Fee Term has been reached, there are no other fees due to Assignor by Assignee and Assignee is the owner of all **Asserted Patents** with no further payment obligations to Assignee.

2.     Assigned Patents.  The **Assigned Patents** include the '028 and '844 applications and all patents that issue from or claim priority to such patent applications, and all continuations, continuations-in-part, divisionals, extensions, substitutions, reissues, re-examinations, foreign equivalents, and renewals, of any of the foregoing, and any patents or patent applications from which any of them claim priority or that claim priority from any of them.  For all **Assigned Patents**, Assignee solely controls the prosecution and filing strategy without obligation, express or implied.

3.     The **Patent Assignment** includes:

    a.  All rights, privileges and protections of any kind whatsoever of Assignor accruing under any of the **Assigned Patents**.  The **Assigned Patents** include all rights provided under the applicable law of any jurisdiction, by international treaties and conventions and otherwise throughout the world, including, but not limited to, the right to file foreign patent applications;

    b.  All rights, privileges and protections of any kind whatsoever of Assignor under any licenses, agreements or contract rights with respect to any of the **Assigned Patents** granted or that could be granted by Assignor to any third party, including any and all royalties, fees, income, payments and other proceeds now or hereafter due or payable to Assignor under or in connection with the Assigned Patents, other than those due according to this **Patent Assignment**; and

    c.  All rights to any and all claims and causes of action, with respect to any of the **Assigned Patents**, whether accruing before, on or after the Effective Date, including all rights to and claims for damages, restitution and injunctive and other legal and equitable relief for past, present and future infringement, misappropriation, violation, misuse, breach or default, with the right but no obligation to petition or sue for, or otherwise seek, such legal and equitable relief and to collect, or otherwise recover, any such damages.

4.     Royalty Patent.  A **Royalty Patent** includes the U.S. patent that issues from the '028 application and all continuation and divisional patents issuing from a

continuation or divisional application of the '028 application. A **Royalty Patent** also includes any **Assigned Patent** where Gino Giunti is the sole inventor.

5.    <u>Recordation and Further Actions</u>. Assignor shall execute and deliver to Assignee, a short form patent assignment which will be provided to Assignor upon execution of the **Patent Assignment**. Assignor authorizes the Commissioner for Patents for the USPTO and the appropriate officers of the USPTO and all other jurisdictions in which any of the Assigned Patents may be recorded, registered or pending, to record and register this Assignment upon request by Assignee. From time to time after the Effective Date, Assignor shall execute any and all documents, including assignments, transfers and related powers of attorney, and take all other further actions as may be necessary or reasonably requested by Assignee to effect, record, perfect or enforce the transfers set forth in this **Patent Assignment** and ensure that all of Assignor's right, title and interest in and to the Assigned Patents and all registrations and recordations thereof, are properly assigned to Assignee, its successors and assigns in accordance with this **Patent Assignment**.

6.    <u>Cooperation</u>. Mr. Giunti agrees to cooperate and, if asked, to testify in connection with any administrative or legal proceedings affecting any right, title, interest or benefit of Assignee in, to or under the **Assigned Patents** and perform any other acts as Assignee may deem reasonably necessary or desirable to carry out the intent of this **Patent Assignment**. Assignee shall reimburse Assignor for all costs reasonably/actually incurred by Assignor in the performance of its obligations under this Section 6.

7.    <u>Representations and Warranties</u>. Assignor hereby represents and warrants to Assignee that, as of the Effective Date:

       a.   All required filings and fees related to the **Assigned Patents** have been timely filed with and paid to the USPTO and other relevant governmental authorities and authorized registrars, and all **Assigned Patents** are otherwise in good standing. Assignor has provided Assignee with true and complete copies of all file histories, documents, certificates, office actions, correspondence and other materials related to the filing and prosecution of each of the **Assigned Patents**;

b.  To the Assignor's knowledge, the **Assigned Patents** are valid and enforceable by Assignor in all applicable jurisdictions, and are not subject to any threat or claim to the contrary. Assignor owns all right, title and interest in and to the **Assigned Patents**, and the inventions and improvements disclosed and claimed therein, free and clear of liens, security interests and other encumbrances. Assignor is in full compliance with all legal requirements applicable to the **Assigned Patents** and Assignor's ownership and use thereof; and

c.  Assignor possesses, and has the full right, power and authority to assign and transfer to Assignee all right, title and interest in and to the **Assigned Patents**.

d.  If Assignor breaches Sections 5a – 5c, Assignee may terminate the agreement, where Assignee would then reassign the Assigned Patents to Assignor and Assignor shall return and repay all fees paid by Assignee.

8.  General.
a.  Entire Agreement. This **Patent Assignment**, together with other agreements incorporated therein by reference and all related exhibits, constitute the sole and entire agreement of the parties with respect to the subject matter contained herein, and supersedes all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter.

b.  Successors and Assigns. This **Patent Assignment** shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

c.  Governing Law. All matters arising out of or relating to this **Patent Assignment** shall be governed by and construed in accordance with the laws of the United States and the internal laws of the State of California, Alameda County, without giving effect to any choice or conflict of law provision or rule.

d.  Counterparts. This **Patent Assignment** may be executed in counterparts, each of which shall be deemed an original, but all of which together shall

be deemed to be one and the same agreement. A signed copy of this **Patent Assignment** delivered by facsimile, e-mail or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this **Patent Assignment**.

IN WITNESS WHEREOF, Assignor and Assignee have duly executed and delivered this **Patent Assignment** as of the Effective Date.

Assignor

By: _____
Name: Gino Giunti

Date: _Aug. 8 / 16_

Assignor

By: _____
Name: David Tate
Blackhawk Network, Inc.

Date: _____

NOTARIZATION:

**EXHIBIT 7**

# QUICKTICKET — 0924691

**Application number**
0924691

**Type(s)**
Word

**Category**
Prohibited Mark; Official Mark

**Section 9 information**
Subparagraph 9(1)(n)(iii)

**CIPO status**
ADVERTISED

**Filed**
2017-06-21

**Advertised**
2017-07-19

**Responsible Authority**
ONTARO LOTTERY AND
GAMING CORPORATION 4120
Yonge Street Suite 500 Toronto
ONTARIO M2P2B8

**Index headings**
QUICKTICKET

QUICK TICKET

**Classification data**
**Disclaimer**
The classification data is provided for information and searching
purposes only. CIPO does not warrant the accuracy of the classes
assigned to the trademark. This data has no legal value of any kind.

1 - Chemicals and adhesives
2 - Paints, varnishes and lacquers
3 - Bleaching, cleaning preparations and non-medicated cosmetics
4 - Industrial oils, greases and fuels
5 - Pharmaceuticals and herbicides
6 - Common metals
7 - Machinery
8 - Hand tools
9 - Electrical, scientific and teaching apparatus and software
10 - Medical and veterinary devices
11 - Environmental control items
12 - Vehicles
13 - Guns and ammunitions
14 - Precious and semi-precious metals, and jewellery
15 - Musical instruments
16 - Paper and printed goods
17 - Rubber and rubber goods
18 - Leather and artificial leather goods
19 - Non-metallic building materials
20 - Furniture, mirrors, articles not included in other classes
21 - Household goods and glass
22 - Ropes and fibres
23 - Yarns and threads
24 - Textiles and textile goods
25 - Clothing, footwear, headgear
26 - Sewing and decorative items including slide fasteners
27 - Floor coverings
28 - Games, toys and playthings, sporting articles
29 - Meats and processed foods
30 - Staple foods
31 - Agricultural, horticultural and forestry
32 - Beer and non-alcoholic beverages
33 - Wines and spirits
34 - Smoker's articles
35 - Advertising, marketing, promotional and business
36 - Insurance and financial
37 - Building construction and repair
38 - Telecommunications
39 - Transportation and storage
40 - Treatment of materials
41 - Education and entertainment
42 - Computer and scientific
43 - Accommodation, food and drink
44 - Medical and veterinary, beauty, agricultural and forestry
45 - Personal and legal

## Action History

| Action | Action date | Due date | Comments |
|---|---|---|---|
| Filed | 2017-06-21 | | |
| Created | 2017-06-28 | | |
| Formalized | 2017-06-28 | | |
| Correspondence Created | 2017-06-28 | | Avis de réception / Filing Notice |
| Accepted For Publication | 2017-07-12 | | |
| Advertised | 2017-07-19 | | Vol.64 Issue 3273 |

# EXHIBIT 8

Office de la Propriété Intellectuelle du Canada

Un organisme d'Industrie Canada

Canadian Intellectual Property Office

An agency of Industry Canada

CA 2855434 A1 2016/01/03

(21) 2 855 434

(12) **DEMANDE DE BREVET CANADIEN CANADIAN PATENT APPLICATION**

(13) **A1**

(22) Date de dépôt/Filing Date: 2014/07/03

(41) Mise à la disp. pub./Open to Public Insp.: 2016/01/03

(51) Cl.Int./Int.Cl. *G07C 15/00* (2006.01), *A63F 3/06* (2006.01), *B42D 25/27* (2014.01)

(71) Demandeur/Applicant:
ONTARIO LOTTERY AND GAMING CORPORATION, CA

(72) Inventeur/Inventor:
GIUNTI, GINO, CA

(74) Agent: GOWLING LAFLEUR HENDERSON LLP

(54) Titre : SYSTEMES DE BILLETS DE LOTERIE PREIMPRIMES ET METHODES
(54) Title:  PRE-PRINTED LOTTERY TICKETS SYSTEMS AND METHODS





(57) Abrégé/Abstract:
Pre-printed lottery tickets allow a consumer to purchase a lottery ticket for a subsequently occurring draw. The pre-printed lottery ticket may be purchased as any other product and the point of sale terminal does not require specialized hardware such as a lottery ticket terminal.


*http://opic.gc.ca* · Ottawa-Hull K1A 0C9 · *http://cipo.gc.ca*
OPIC · CIPO 191


OPIC    CIPO

## ABSTRACT

Pre-printed lottery tickets allow a consumer to purchase a lottery ticket for a subsequently occurring draw.  The pre-printed lottery ticket may be purchased as any other product and the point of sale terminal does not require specialized hardware such as a lottery ticket terminal.

**WHAT IS CLAIMED IS:**

1. A method of generating a lottery ticket for a random draw comprising:

 receiving at a lottery administration system unique identification information from a pre-printed lottery ticket;

 determining at the lottery administration system draw information for a subsequent draw being held;

 associating at the lottery administration system the determined draw information with the unique identification information;

 receiving at the lottery administration system payment confirmation; and

 transmitting from the lottery administration draw details after the payment confirmation is received.

2. The method of claim 1, wherein receiving the unique identification information comprises receiving the unique identification information over a secure communication channel from a point of sale (POS) system.

3. The method of claim 1 or 2, further comprising receiving product information of the pre-printed lottery ticket along with the unique identification information.

4. The method of claim 1 or 2, further comprising retrieving product information of the pre-printed lottery ticket using the received unique identification information.

5. The method of claim 3 or 4, wherein the product information indicates one or more of:

 a game type associated with the pre-printed lottery ticket;

 a wager amount associated with the pre-printed lottery ticket; and

 a number of wagers associated with the pre-printed lottery ticket.

6. The method of any one of claims 1 to 5, further comprising:

 validating the received unique identification information.

7. The method of claim 6, wherein validating the received unique identification information comprises varying that the unique identification information corresponds to unique identification information associated with a pre-printed lottery ticket.

8. The method of claim 7, wherein validating the received unique identification information further comprises varying that the unique identification information corresponds to unique identification information associated with one of a plurality of pre-printed lottery tickets distributed to the vendor of the pre-printed lottery ticket.

9. The method of any one of claims 1 to 8, wherein determining the draw information comprises generating at least one random number for the subsequent draw.

10. The method of any one of claims 1 to 8, wherein determining the draw information comprises:

   retrieving at least one random number from a list of previously generated random numbers; and
   removing the retrieved at least one random number from the list of previously generated random numbers.

11. The method of any one of claims 1 to 10, wherein associating the determined draw information with the unique identification information comprises storing the associated draw information and unique identification information in a database of the lottery administration system.

12. The method of any one of claims 1 to 11, wherein transmitting the draw details comprises:

   generating at the lottery administration system an image containing at least the draw details; and
   transmitting the generated image.

12

13. The method of any one of claims 1 to 12, wherein the subsequent draw being held is a next occurring draw being held.

14. A method of providing a lottery ticket for a random draw comprising:

scanning at a point-of-sale (POS) terminal a pre-printed lottery ticket to obtain unique identification information from the pre-printed lottery ticket;

transmitting the unique identification information from the POS terminal to a lottery administration system;

receiving at the POS terminal payment confirmation;

transmitting payment confirmation from the POS terminal to the lottery administration system;

receiving at the POS terminal from the lottery administration system draw details associated with the pre-printed lottery ticket; and

printing the draw details on a receipt.

15. The method of claim 14, wherein the lottery administration system transmits the draw details in accordance with the method of any one of claims 1 to 13.

16. A lottery administration system comprising:

at least one communication interface for communicating with other computing systems;

at least one processing unit for executing instructions; and

at least one memory unit for storing instructions, which when executed by the at least one processing unit configure the lottery administration system to provide a method according to any one of claims 1 to 13.

17. A point-of-sale (POS) terminal comprising:

at least one communication interface for communicating with other computing systems;

at least one scanning component;

at least one processing unit for executing instructions; and

13

at least one memory unit for storing instructions, which when executed by the at least one processing unit configure the POS terminal to provide a method according to claim 14.

18. A lottery system comprising:

a lottery administration system according to claim 16; and

a plurality of POS terminals according to claim 17 in communication with the lottery administration system.

## PRE-PRINTED LOTTERY TICKETS SYSTEMS AND METHODS

### TECHNICAL FIELD

The current disclosure relates to lottery systems and in particular to the use of pre-printed lottery tickets in random draw lotteries.

5   ### BACKGROUND

Broadly there are two types of lotteries.  The first is instant win lotteries where a printed ticket provides all of the lottery information.  This tickets typically have a play area covered by scratch off material.  The tickets can be purchased from a retailer, and the scratch off material removed to reveal whether the ticket is a winner.  The second type

10   of lottery is a draw-based lottery, where a player makes a wager on a subsequently occurring event.  For example, a player may guess at numbers that will be drawn. The selected numbers, or randomly selected numbers if the player does not have a preference for the numbers, are printed on a ticket and provided to the player.  Once the event occurs, for example the numbers are drawn or generated, the ticket may be a

15   winner depending on if one or more of the selected numbers were drawn or generated.

Tickets for future draws are typically printed on special ticket paper by a printing device approved by the lottery administering body.  The use of specialized hardware increases the cost for deploying purchasing locations.  Further, the use of specialized hardware can complicate the purchase process.  For example, a player at a grocery store may

20   need to make two purchases, one for their groceries and one for the lottery draw ticket.

It would be desirable to have an additional and/or alternative method of purchasing a lottery ticket for a draw.

### BRIEF DESCRIPTION OF THE DRAWINGS

Embodiments are described herein with references to the appended drawings, in which:

25   Figure 1 depicts a pre-printed lottery ticket and purchase receipt;

Figure 2 depicts components of a lottery system; and

Figure 3 depicts a process for providing a ticket for a random draw;

1

Figure 4 depicts a further process for providing a ticket for a random draw; and

Figure 5 depicts additional or alternative pre-printed lottery tickets.

## DETAILED DESCRIPTION

Currently, online lottery products are purchased at a lottery terminal or similar hardware.
5    When an online lottery ticket, such as a ticket to a draw taking place at a later time, is
purchased, a ticket is generated and printed.  A system is described further herein that
provides the ability to include online lottery products that can be placed in a customer's
shopping cart and paid for during the normal checkout process without the use of
specialized hardware, such as lottery terminals, ticket printer or customized payment
10   devices, at the point of purchase.  Since no specialized hardware is required, it is
possible to purchase the online lottery products at any point of purchase. For example,
at a grocery store, the online lottery tickets may be purchased at each check-out lane
without requiring lottery terminals at each lane and as such, the incorporation of the
purchasing into multiple lanes may be cost effective. In addition to the ability to
15   purchase online lottery tickets at a point of sale without additional specialized lottery
terminals, the systems and methods allow the online lottery ticket to be displayed and
purchased as a regular in-store product providing additional opportunities for purchasing
an online lottery ticket.

The online lottery ticket is manufactured and distributed as pre-printed lottery tickets
20   that do not have a draw date or wager (i.e. lottery numbers) assigned or associated to
the pre-printed ticket.  The pre-printed tickets would each have a unique bar code that
identifies the particular pre-printed ticket and may also have a generic UPC bar code
that would identify the lottery product.  One bar code could contain both pieces of
information. The pre-printed tickets are provided to retailers and are displayed to the
25   consumer.

Until purchased and activated, the pre-printed tickets have no value, nor do they have
any wager or draw date assigned.  They cannot be used for validation or redemption
purposes prior to purchase.  Once scanned by the retailer's POS and paid for by the
customer,  the lottery system will generate wagers for the pre-printed ticket and assign

2

the next available draw date.  This information is printed on the customers shopping receipt.  Although the draw information is printed on the customer's receipt, it is only information and the pre-printed lottery ticket is the legal instrument for validation and prize redemption.

5    Secure communications between the retailers POS system and the lottery system facilitate the successful completion of the above transaction and activation of the pre-printed ticket.  As well, there may be a series of acknowledgments between systems to ensure the generation of the draw information and association of the draw information with the pre-printed ticket is performed as well as to handle any technical or other
10   issues that may arise.  Once activated, the pre-printed ticket may be subject to the same policies and procedures as standard online lottery tickets generated from specialized lottery terminals.

Since the wager and draw date information is not printed on the pre-printed ticket, these details may be made available through other means including but not limited to the
15   printed receipt, existing lottery terminals or self-serve ticket checkers, online websites or mobile applications.

A variation of the above is to produce pre-printed tickets with pre-printed wagers on the ticket.  In such a case,  when the pre-printed ticket is purchased the lottery system may simply assign the pre-printed ticket and associated wager information to the next draw
20   date only and activated.

Further, the pre-printed tickets may include different number of wagers.  For example, a single pre-printed lottery ticket may be associated with purchasing 1, 2, 3 or more wagers.  When the pre-printed tickets are associated with a plurality of wagers, each wager may be for the same or different online lottery games.

25   The ability to purchase an online lottery ticket at a point of sale check-out, as described herein, requires no additional hardware in lane and no special thermal or lottery paper or printer.  The legal ticket, namely the pre-printed ticket, does not contain the draw date and is only associated with a draw when activated by purchasing. Given there is no

3

value to the pre-printed ticket before activation, they can be distributed in locations that provide the most visibility and convenience for the customer with limited risk that the pre-printed ticket will be stolen. The pre-printed ticket is treated like an off the shelf commodity when checking out and should not impede the speed at checkout. The

5    solution is extremely convenient for the customer with no additional interaction with the cashier required.  Further, limited knowledge or expertise is required by the cashier and no additional point of sale hardware is required.  The solution may be easily scalable and can provide a cost effective solution to enable all checkout locations in all retail locations to sell online lottery tickets. The Store POS terminal may need little or no

10   scrutiny by lottery regulators as it does not carry sensitive transaction information and is not involved in the generation of the lottery transaction, and instead simply provides information of the pre-printed lottery ticket to the lottery system for activation.

The pre-printed tickets may be manufactured and shipped to retail locations. Retailers may manage inventory and display the pre-printed tickets in, for example, checkout

15   lanes, at counters and throughout the store where the product is most visible to customers. Customers can select a lottery product at any time with no additional interaction with a lottery retailer and drop the pre-printed lottery ticket(s) into their shopping cart. During the checkout process, the pre-printed ticket is scanned by the cashier in the retailer's POS as they would scan any other product being purchased.

20   The pre-printed ticket may require one, possibly two scans dependent on the bar code standard used and the technical abilities of the retailer's POS system. Upon scanning of the ticket the retailer's POS will be updated with the product description and cost. The retailer's POS will communicate the transaction type, such as purchase or cancel, and the pre-printed ticket details, such as product information and/or a unique identifier, to

25   the lottery system though a secure communications channel.

Upon receiving information for activating a pre-printed ticket being purchased, the lottery system may initiate a pre-printed ticket wager by  validating the pre-printed ticket details,  generating the appropriate lottery wager information, for example generating an appropriate number of random numbers for the draw. The generated wager information

30   may then be associated with  unique identifier of the pre-printed ticket and the pre-

4

printed ticket activated for the next available draw. Confirmation of the activation, as well as the lottery numbers and draw information, for example when the draw is being held, may be withheld from the retailer's POS until payment confirmation is received by the lottery system. The cashier continues to scan the customer's purchases until the cart is empty. The cashier may then process payment as the normal course of action. Prior to the retailer's POS closing the sale and printing the receipt, the retailers POS system may communicate the payment confirmation and details to the lottery system. Once payment confirmation is received the lottery system may in turn communicate the lottery numbers and draw information to the retailers POS.  This information may be communicated in the form of an image.  The lottery numbers and draw date assigned to the pre-printed lottery ticket may be printed on the customer's store receipt.   The printed receipt with the lottery information is for informational purposes only, and the pre-printed ticket would be required in order to redeem a winning ticket.

Rather than transmitting the pre-printed ticket information first, followed by confirmation of payment, it is possible to transmit the pre-printed ticket information to the lottery system only once the payment has been confirmed.

During the checkout process, age verification, if required, is done by the cashier. Where self-serve check-out kiosks are available, the retailer's POS may suspend the terminal operation until the age of the customer can be verified by store personnel or other means such as swiping of an identification card in co-operation with other bio-metric data.   The transaction can then be approved or voided depending upon the determined age.

Purchased pre-printed tickets may be returned and cancelled, assuming the associated draw has not occurred.  Tickets can be cancelled at two points in time, either during checkout, and prior to payment or after the basket has been paid for.  Prior to payment a customer may change their mind and wish to have the pre-printed ticket removed from their basket.  The transaction may be voided in the retailer's POS terminal as with the purchase of other products.  Additionally, if the pre-printed ticket information has already been communicated to the lottery system, another transaction may be performed

5

indicating that the purchase of the pre-printed ticket was cancelled. The lottery system will cancel the pre-printed ticket and wager and draw information. Confirmation of the cancellation may be sent back to the POS terminal. The customer's receipt may show the inclusion and return of the pre-printed ticket but no draw or wager information will be
5   shown on the receipt.

After the basket has been paid for and the pre-printed ticket has been activated, the customer may return and cancel the pre-printed ticket, for example at the retailer's customer service counter.  Normal retailer return procedures may apply.  The cashier may   scan the pre-printed ticket barcode(s) into the POS. The retailer's POS will
10   communicate the transaction type, i.e. cancellation, and pre-printed ticket details, such as product information and/or unique identifier, to the lottery system though a secure communications channel. The lottery system will locate the associated wager and cancel the transaction. The lottery system may send a confirmation to the retailer's POS along with the cancellation details, such as the pre-printed ticket identifier and/or
15   cancellation date / time.  The cancellation details may be returned in the form of an image. Cancellation information may be printed at the bottom of the customers return receipt.

Figure 1 depicts a pre-printed lottery ticket and purchase receipt.  A pre-printed ticket 100 may be placed at various locations in a retail environment.  The pre-printed ticket
20   100 may have a main ticket portion 102 and a display portion 104 separably connected to the main ticket portion 102, for example by perforated or scored lines. The display portion 104 may include a hanging cut-out 106 in order to facilitate the display of the pre-printed ticket 100. The main ticket portion 102 includes advertising and purchase information, such as the cost of the pre-printed ticket 108 and the product the pre-
25   printed ticket is for 110.  Additionally, the main ticket portion 102 may include barcode information 112, which may be in the form of one or more barcodes although only one is depicted. Although the specific physical characteristics of the pre-printed ticket are depicted in Figure 1, it will be appreciated that the pre-printed tickets may take many different physical shapes.

6

Figure 1 also depicts the receipt 114 provided to the customer after the transaction is completed. The receipt is similar to commonly provided receipts and includes an itemized list of purchased items 116. The list 116 includes an indication 118 of the purchase of the pre-printed ticket. The receipt may also include draw and wager

5   information 120 provided by the lottery system when the pre-printed ticket was activated. The draw and wager information 120, may include an indication of the draw date as well as the wager numbers. The draw and wager information associated with a pre-printed ticket may be checked by a consumer by other means, such as through a lottery system mobile application or online site.

10   Figure 2 depicts components of a lottery system and point of sale environment. As depicted, the environment 200 for purchasing a pre-printed lottery ticket includes a retailer's point of sale terminal 202 and a lottery system 220 connected to each other through one or more communication networks 218. The communication between retail POS terminals and the lottery system may be secured using various encryption

15   techniques.

The retailer's POS terminal 202 may include a central processing unit (CPU) 204, memory unit 206 and I/O interface(s) 208 for communicating with devices external to the POS terminal. As depicted, a barcode scanner 210 may be connected for scanning in barcode information, such as UPC information, and pre-printed ticket 100 information.

20   The retailer POS terminal may also be connected to a printer 212 for printing a receipt of the transaction. The POS terminal 202 includes instructions 214 stored in the memory unit, which when executed by the processor unit 204 configure the POS terminal 202 to provide pre-printed draw-based lottery ticketing functionality 216. The functionality 216 may provide the functionality for communicating scanned in barcode

25   information of pre-printed lottery tickets with the lottery system, and receiving confirmation of the pre-printed ticket's activation, as described above.

The lottery system 220 may include a central processing unit (CPU) 222, memory unit 226 and I/O interface(s) 224 for communicating with devices external to the lottery system 220. Instructions 228 stored in the memory unit 226, when executed by the

7

processing unit 222 configure the lottery system to provide pre-printed draw-based lottery ticket activation and cancellation functionality 230. The functionality 230 may receive and verify pre-printed lottery ticket information from a plurality of different retailers. The verification of the pre-printed lottery ticket information may involve

5 checking that the received information corresponds to an actual ticket, verifying one or more check-digits, and/or verifying that the preprinted lottery ticket was distributed to the retailer. The pre-printed ticket information used in verifying the received information may be stored in a pre-printed ticket information database 232. The functionality 230 may also generate draw and wager information and associate the pre-printed ticket

10 information in a draw information database 234. The draw information database 234 may be used in verifying subsequent tickets, including the pre-printed lottery tickets, as winning tickets following the draw event.

Figure 3 depicts a process for providing a ticket for a random draw. The process 300 assumes a consumer is purchasing a number of items including a pre-printed lottery

15 ticket. A pre-printed lottery ticket is scanned (302) at a POS terminal 202 and unique identification information of the pre-printed ticket is communicated (304) to a lottery system 220, which verifies the ticket information and determines draw and wager information (306), if the wager information is not already associated with the ticket information. Additional items being purchased may be scanned (308) by the POS

20 terminal, and once all of the items being purchased are scanned, payment may be made (310), for example using cash credit or debit,. After payment is received, the POS terminal 216 may communicate the payment conformation (312) to the lottery system 220, which can activate the pre-printed lottery ticket (314) for the subsequent draw. The draw and wager information may be returned to the POS terminal (316) and

25 printed on the customer's receipt (318). Once activated, the pre-printed ticket serves as a lottery ticket and may be verified as a regular lottery ticket purchased from a lottery terminal.

Figure 4 depicts a further process for providing a ticket for a random draw. The process 400 is similar to the process 300, however the unique ID is cached is transmitted with

30 payment confirmation. A pre-printed lottery ticket is scanned (402) at a POS terminal

8

202 and unique identification information of the pre-printed ticket is cached at the POS terminal (404) to a lottery system 220. Additional items being purchased may be scanned (406) by the POS terminal, and once all of the items being purchased are scanned, payment may be made (408), for example using cash credit or debit,.  After

5  payment is received, the POS terminal 216 may communicate the payment conformation (410) and the cached unique identification information of the pre-printed lottery ticket to the lottery system 220.  The lottery system may receive and verify the ticket information and determine draw and wager information, if the wager information is not already associated with the ticket information., which can activate the pre-printed

10  lottery ticket (412) for the subsequent draw.  The draw and wager information may be returned to the POS terminal (414) and printed on the customer's receipt (416). Once activated, the pre-printed ticket serves as a lottery ticket and may be verified as a regular lottery ticket purchased from a lottery terminal.

Figure 5 depicts additional or alternative pre-printed lottery tickets. As depicted, pre-

15  printed lottery ticket 502 is for three plays or wagers, which may be indicated by additional play information 504 and/or may be reflected by the price 506 of the pre-printed ticket.  The pre-printed lottery ticket 502 is depicted as providing separate wagers for two products 508a, 508b.  Wager and draw information will be generated and activated for a subsequent 649 draw and a subsequent Lotto Max draw.  The

20  information for the draw and wager information that needs to be generated may be stored by the lottery system and associated with unique information that can be stored in the barcode 510.

Pre-printed lottery ticket 512 is depicted as being for a single product and wager.  However, unlike the other pre-printed lottery tickets described above, the pre-printed

25  lottery ticket 512 is already associated with wager information 518 which may be printed on the ticket to allow selection of preferred numbers by a consumer.  Accordingly, the pre-printed ticket 512 includes a purchase amount indication 514 and product or game information, as well as the wager information, which is depicted as being the numbers of the draw.  When the bar-code 518 of the pre-printed ticket is scanned, the unique ID

30  information may be used to activate the pre-printed ticket with the subsequent draw.

9

The wager information does not need to be generated since it is already generated and associated with the pre-printed lottery ticket, for example at the time of manufacture or printing.

Pre-printed lottery ticket 522 depicts a pre-printed ticket that combines multiple plays
5    with pre-generated wager information.  The ticket 522 includes an indication of the number of plays or wagers, which may be provided by play information 526 and/or reflected in price information 524.  The ticket may include an indication of the game or product the wager is for 528 as well as an indication of the wager information 530a, 530b for the multiple wagers associated with the ticket.  The barcode 534 includes the
10   unique identification information which may be used to activate the wagers for the subsequent draw.





**Figure 1**



**Figure 2**



**Figure 3**



**Figure 4**

502



512



522



**Figure 5**